W.S. Wilson Leung – 190939
   Wleung@mpbf.com
Thomas P. Mazzucco - 139758
   TMazzucco@mpbf.com
James A. Lassart – 40913
   JLassart@mpbf.com
Christopher R. Ulrich - 271288
   CUlrich@mpbf.com
Mariah S. Cooks – 333361
   MCooks@mpbf.com
Matthew J. Frauenfeld - 336056
   MFrauenfeld@mpbf.com
**MURPHY, PEARSON, BRADLEY & FEENEY**
550 California Street, Floor 14
San Francisco, CA 94104-1001
Telephone:     (415) 788-1900
Facsimile:     (415) 393-8087

Attorneys for Plaintiff
**SHERIFF CHRISTINA CORPUS**

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIFF CHRISTINA CORPUS, | Case No.: 25-CV-05962-VC |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | Hearing Date: August 7, 2025 |
| DAVID CANEPA, President and Member of the San Mateo County Board of Supervisors, NOELIA CORZO, Vice-President and Member of the San Mateo County Board of Supervisors, JACKIE SPEIER, Member of the San Mateo County Board of Supervisors, RAY MUELLER, Member of the San Mateo County Board of Supervisors, LISA GAUTHIER, Member of the San Mateo County Board of Supervisors, and DOES 1-10, | Hearing Time: 10:00 am |
| | Court: Hon. Vince Chhabria, Courtroom 4 |
| Defendants. | |

TO DEFENDANTS AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE

THAT on August 7, 2025, at 10:00 am, at the United States District Court for the Northern District

of California, before the Honorable Vince Chhabria, United States District Judge, in Courtroom 4 on the 17th floor of 450 Golden Gate Avenue, San Francisco, California, Plaintiff Christina Corpus will, and hereby does, move for an order granting preliminary injunctive relief.

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff seeks to preliminarily enjoin Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER from continuing to seek Plaintiff's removal from her elected office as Sheriff of San Mateo County, pursuant to Article IV, § 412.5 of the San Mateo County Charter.

This motion is based on Plaintiff's Notice of Motion and Motion for Preliminary Injunction, Memorandum of Law in Support of Motion for Preliminary Injunction, and the Declaration of W.S. Wilson Leung in Support of Motion for Preliminary Injunction and attached exhibits, and all papers and records on file with the Clerk or that may be submitted prior to or at the time of the hearing, and any further evidence that may be offered.

DATED: July 23, 2025                    Respectfully submitted,

MURPHY, PEARSON, BRADLEY & FEENEY

By:   /s/ W.S. Wilson Leung
      W.S. Wilson Leung
      Thomas P. Mazzucco
      James A. Lassart
      Christopher R. Ulrich
      Matthew J. Frauenfeld
      Mariah S. Cooks
      Attorneys for SHERIFF CHRISTINA CORPUS

W.S. Wilson Leung – 190939
  Wleung@mpbf.com
Thomas P. Mazzucco - 139758
  TMazzucco@mpbf.com
James A. Lassart – 40913
  JLassart@mpbf.com
Christopher R. Ulrich - 271288
  CUlrich@mpbf.com
Mariah S. Cooks – 333361
  MCooks@mpbf.com
Matthew J. Frauenfeld - 336056
  MFrauenfeld@mpbf.com
**MURPHY, PEARSON, BRADLEY & FEENEY**
550 California Street, Floor 14
San Francisco, CA 94104-1001
Telephone:    (415) 788-1900
Facsimile:    (415) 393-8087

Attorneys for Plaintiff
**SHERIFF CHRISTINA CORPUS**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIFF CHRISTINA CORPUS, | Case No.: 25-CV-05962-VC |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| DAVID CANEPA, President and Member of the San Mateo County Board of Supervisors, NOELIA CORZO, Vice-President and Member of the San Mateo County Board of Supervisors, JACKIE SPEIER, Member of the San Mateo County Board of Supervisors, RAY MUELLER, Member of the San Mateo County Board of Supervisors, LISA GAUTHIER, Member of the San Mateo County Board of Supervisors, and DOES 1-10, | |
| Defendants. | |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 2

II.     FACTUAL BACKGROUND .............................................................................. 2

    A.      Sheriff Corpus's Election. ...................................................................... 2

    B.      Resentment Leads to the Cordell Report. ............................................... 3

    C.      Defendants Seek New Powers to Remove Sheriff Corpus. .................... 4

    D.      Defendants NOELIA CORZO and RAY MUELLER Betray Their Bias.............. 5

    E.      The Cordell Report and the Board Created a Toxic Environment. ....................... 6

    F.      Measure A Passes and § 412.5 is Created. ............................................. 7

    G.      Defendants Retreat from the Cordell Report and Shift to the Keker Report .......... 7

    H.      Defendants' Removal Procedures. .......................................................... 8

        1.      The Pre-Removal Conference. .................................................... 9

        2.      The Removal Hearing. ................................................................ 9

        3.      Final Decision by Defendants. .................................................. 10

    I.      June 11, 2025 Pre-Removal Conference. .............................................. 11

    J.      Sheriff Corpus Appeals. ....................................................................... 13

    K.      The Civil Grand Jury Proceeding Against Sheriff Corpus. .................. 14

    L.      Futility in San Mateo County Superior Court. ..................................... 15

III.    DISCUSSION .................................................................................................. 17

    A.      Generally Applicable Legal Principles. ................................................ 17

    B.      Likelihood of Success on the Merits. .................................................... 18

        1.      Due Process: Sheriff Corpus Has a Protected Liberty Interest. ............... 18

        2.      Defendants Have Violated and Will Continue to Violate Sheriff Corpus's Right to Procedural Due Process. ............................ 22

        3.      Defendants Have Violated and Will Continue to Violate Sheriff Corpus's Right to Substantive Due Process. ............................ 25

        4.      Defendants Violate the Prohibition Against Ex Post Facto Punishment. 25

        5.      Defendants Violate the Prohibition Against Bills of Attainder. .............. 26

    C.      Irreparable Harm. .................................................................................. 28

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3      D.      Balance of Equities and Public Interest. ................................................................. 29

4  IV.      CONCLUSION .............................................................................................................. 30

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROGER GROSS' SPECIAL
MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO C.C.P. §425.26

# TABLE OF AUTHORITIES

Page

### CASES

*Airport Auth. of Wahoe Cnty.*
   69 F.3d 321 (9th Cir. 1995)..................................................................................22

*Alliance for the Wild Rockies* v. *Cottrell*
   632 F.3d 1127 (9th Cir. 2011)........................................................................18, 28

*Boddie* v. *Connecticut*
   401 U.S. 371 (1971).................................................................................22, 24

*Briley* v. *City of West Covina*
   66 Cal.App.5th 119 (2021) ..............................................................................16

*Burgess* v. *Salmon*
   97 U.S. 381 (1878)........................................................................................26

*Chaudhry* v. *Aragon*
   68 F.4th 1161 (9th Cir. 2023) ..........................................................................19

*Coachella Valley Mosquito & Vector Control Dist.* v. *PERB*
   35 Cal.4th 1072 (2005) ..................................................................................16

*Coalition to Defendant Affirmative Action* v. *Brown*
   674 F.3d 1128 (9th Cir. 2012)..........................................................................17

*De Veau* v. *Braisted*
   363 U.S. 144 (1960)......................................................................................26

*Doe #35* v. *Labrador*
   679 F. Supp. 3d 1019 (D. Idaho 2023)................................................................26

*Ex parte Young*
   209 U.S. 123 (1908)......................................................................................17

*Green* v. *Mansour*
   474 U.S. 64 (1985)........................................................................................18

*Hyland* v. *Wonder*
   972 F.2d 1129 (9th Cir. 1992)..........................................................................19

*Jamul Action Comm.* v. *Simermeyer*
   974 F.3d 984 (9th Cir. 2020)............................................................................17

*KCSFV I, LLC* v. *Florin County Water Dist.*
   64 Cal.App.5th 1015 (2021) ............................................................................16

*Marsh* v. *Cnty. of San Diego*
   680 F.3d 1148 (9th Cir. 2012)..........................................................................25

*Mathews* v. *Eldridge*
   424 U.S. 319 (1976)......................................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page**

*Matthews* v. *Harney Cnty.*
  819 F.2d 889 (9th Cir. 1987)...................................................................................19

*Nixon* v. *Adm'r of Gen. Servs.*
  433 U.S. 425 (1977)..............................................................................................27

*Rochin v. California*
  342 U.S. 165 (1952)..............................................................................................25

*Sandefur* v. *Lewis*
  937 F. Supp. 890 (D. Az. 1996)............................................................................18

*Schweiker v. McClure*
  456 U.S. 188 (1982)..............................................................................................22

*Scott* v. *Roberts*
  612 F.3d 1279 (11th Cir. 2010).............................................................................29

*SeaRiver Mar. Fin. Holdings, Inc.* v. *Mineta*
  309 F.3d 662 (9th Cir. 2002).................................................................................27

*Speiser* v. *Randall*
  357 U.S. 513 (1958)..............................................................................................23

*United States* v. *City of Seattle*
  474 F. Supp. 3d 1181 (W.D. Wash. 2020)...........................................................18

*Velez* v. *Levy*
  401 F.3d 75 (2d Cir. 2005)....................................................................................19

*Wenger* v. *Monroe*
  282 F.3d 1068 (9th Cir. 2002)...............................................................................19

*West* v. *Atkins*
  487 U.S. 42 (1988)................................................................................................18

*Winter* v. *Natural Res. Def. Council*
  555 U.S. 7 (2008)..................................................................................................18

*Zepeda Rivas* v. *Jennings*
  445 F. Supp.3d 36 (N.D. Cal. 2020).....................................................................29

*Zinerman* v. *Burch*
  494 U.S. 113 (1990)..............................................................................................18

### STATUTES

Elections Code
  § 11000 *et seq.* ...........................................................................................4, 24, 30

Government Code
  § 3060...................................................................................................4, 14, 24, 25

# TABLE OF AUTHORITIES
(continued)

**Page**

Government Code
§ 3070................................................................................................15, 24, 27

Government Code
§§ 3300–3313.................................................................................................13

United States Code
Title 18, Section 1983....................................................................................18, 19

## OTHER AUTHORITIES

San Mateo County Charter
Article IV, § 412.5 .........................................................2, 7, 8, 9, 13, 15, 18, 24, 26, 27, 30

# I.    **INTRODUCTION**

Plaintiff Christina Corpus, the duly elected Sheriff of San Mateo County, seeks a preliminary injunction to prevent Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER – the current members of the five-member San Mateo County Board of Supervisors – from continuing to seek her removal from office pursuant to the unconstitutional process they created specifically to target her. As a result of Defendants' actions, not only is Sheriff Corpus facing removal by a biased tribunal applying unconstitutional means, she has been and continues to be subjected to ongoing stigma, harassment, and even threats. Only the immediate issuance of injunctive relief enjoining Defendants from continuing to pursue removal can protect Sheriff Corpus's constitutional rights from being further violated.

# II.    **FACTUAL BACKGROUND**

## A.    **Sheriff Corpus's Election.**

Plaintiff Christina Corpus was elected Sheriff of San Mateo County in June 2022 and assumed office on January 3, 2023. She was the first woman and the first Latina elected Sheriff in San Mateo and campaigned on a platform of reform. For instance, she promised to increase diversity in the Sheriff's Office, to provide the community with greater visibility and input into the Office's operations, to focus on the mental health of Office employees and the community, and to emphasize the use of de-escalation techniques by deputies when dealing with the community. *See, e.g.*, "San Mateo County Elects First Latina Sheriff in California with Promises of Reform," *San Jose Mercury News*, June 10, 2022 (Ex. 1 to the Declaration of W.S. Wilson Leung ("Leung Dec.")); "History Made: 2 Latinas Elected to Run Sheriff's Departments in the Bay Area," *NBC Bay Area*, June 16, 2022 (Leung Dec. Ex. 2). In office, Sheriff Corpus began carrying out the reforms for which voters elected her. *See* "San Mateo County Sheriff's Office FY 2023-2024 Performance Measures" (Leung Dec. Ex. 3) at 4 (noting in FY 2023-24, the work furlough program that provided incarcerated persons opportunities to leave correctional facility for work, school, or treatment programs surpassed its goals); 6 (noting diversity efforts); 7 (noting child care and wellness resources for Office employees); 8 (detailing "30X30" program to increase female employees to 30%); 9 (announcing pending launch of the "New and Improved Transparency Portal").

After taking office, Sheriff Corpus made appointments to her command staff as well as to the

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |

1    management of the civilian staff of the Sheriff's Office. Among these appointments, she appointed

2    Victor Aenlle to several civilian supervisory positions. Mr. Aenlle was a successful local businessman

3    with a Ph.D. who had also been a reserve deputy for roughly 17 years. He had been a friend of Sheriff

4    Corpus for almost two decades, he and his daughter had worked for her campaign, he was part of her

5    transition team, and he shared Sheriff Corpus's dedication to 21st century policing best practices. *See*

6    Transcript of June 11, 2025 Pre-Removal Conference (Leung Dec. Ex. 4) at 26-28.

7        Mr. Aenlle also became the focus of the ire of current and former Sheriff's Office employees.

8    **B.    Resentment Leads to the Cordell Report.**

9        San Mateo County Executive Michael Callagy led the charge against Mr. Aenlle – and, later,

10   against Sheriff Corpus. During her transition, in or about October 2022, Mr. Callagy confronted Sheriff-

11   elect Corpus, declared he had heard rumors that she and Mr. Aenlle were romantically involved, and

12   demanded that Mr. Aenlle be terminated from the transition team. *See* Investigation Report of LaDoris

13   Cordell ("Cordell Report," Leung Dec. Ex. 5) at 8; Ex. 4: Transcript of June 11, 2025 Pre-Removal

14   Conference at 28. Sheriff Corpus denied the allegations, *see* Ex. 4: Transcript of June 11, 2025 Pre-

15   Removal Conference at 26; Ex. 5: Cordell Report at 8, but rumors of an affair with Mr. Aenlle continued

16   to plague her.

17       On July 10, 2024, unbeknownst to Sheriff Corpus, San Mateo County Counsel John Nibbelin

18   hired retired California state court judge LaDoris Cordell to "conduct a fact-finding investigation into

19   complaints and concerns that current and former members of the Sheriff's Office have about Victor

20   Aenlle." *See* Ex: 5: Cordell Report at 1. When it was issued on November 11, 2024, however, Judge

21   Cordell's report had expanded beyond Mr. Aenlle and found that Sheriff Corpus had engaged in

22   corruption and misconduct, almost entirely linked to her rumored romantic relationship with Mr. Aenlle.

23   *See id.* at 11-21 (alleging that Sheriff Corpus and Mr. Aenlle had a relationship "beyond mere friendship"

24   that created a conflict of interest); 25-40 (alleging that Sheriff Corpus approved instances when Mr.

25   Aenlle "exceeded" or "abused" his authority); 40-60 (alleging that Sheriff Corpus, her Executive Team,

26   and Mr. Aenlle engaged in retaliation and intimidation); 88-89 (alleging that Sheriff Corpus and Mr.

27   Aenlle improperly issued honorary badges and identifications to civilians); 90-91 (alleging that Sheriff

28   Corpus uttered and texted "racial and homophobic slurs" in the workplace).

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |

Sheriff Corpus denied the allegations in the Cordell Report, but despite the Report being entirely one-sided and largely based on unsworn and unmemorialized hearsay and rumors provided by anonymous sources, *see id*. at 11-91, Defendants CANEPA, CORZO, and MUELLER[1] embraced it in a campaign to defame Sheriff Corpus and remove her from office.

**C.      The Board Seeks New Power to Remove Sheriff Corpus.**

On November 12, 2024, County Executive Callagy made the Cordell Report available on the County's web site and publicized its availability via email. *See* November 12, 2024 email sent under Mr. Callagy's name (Leung Dec. Ex. 6) (stating "you'll find access to the independent report created by Judge LaDoris Cordell regarding allegations involving the Sheriff's Office"). Defendants CANEPA, CORZO, and MUELLER, along with then-Board of Supervisors members Warren Slocum and Dave Pine, also attached the Cordell Report to the public agenda for the Board's November 13, 2024 special meeting. At this meeting, these five Board members adopted a resolution that, *inter alia*: (1) called for Sheriff Corpus to resign; (2) released the Cordell Report to the San Mateo District Attorney's Office and the San Mateo Civil Grand Jury; and (3) "direct[ed] staff to prepare an ordinance to place before the San Mateo County voters an amendment to the San Mateo County Charter to allow removal of the elected Sheriff by the Board of Supervisors upon a finding of good cause." November 13, 2024 Minutes of Board of Supervisors Meeting at 2 (Leung Dec. Ex. 7).

Six days later, during the Board's November 19, 2024 meeting, these five Board members voted unanimously to adopt an ordinance (later numbered 4899 and appearing on the ballot as "Measure A"), calling for a special election on March 4, 2025, for the sole purpose of amending the San Mateo County Charter to empower the Board to remove Sheriff Corpus. *See* November 19, 2024 Minutes of Board of Supervisors Meeting at 3 (Leung Dec. Ex. 8). Notably, the Board members sought to create this new power for themselves to remove Sheriff Corpus despite already being able to pursue her removal via a recall election pursuant to Article II of the California state constitution and California Elections Code § 11000, and via the Civil Grand Jury, pursuant to California Government Code § 3060.

---

[1] Defendants JACKIE SPEIER and LISA GAUTHIER did not take office as members of the San Mateo Board of Supervisors until 2025.

**D.      Defendants NOELIA CORZO and RAY MUELLER Betray Their Bias.**

At Board meetings on November 19 and December 3, 2024, Defendants CORZO and MUELLER made defamatory statements on the record indicating that they had already judged Sheriff Corpus guilty of corruption and condemned her for being dishonest and untrustworthy, undermining public safety, and terrorizing Sheriff Office employees. CORZO, for instance, stated:

a.   "There is clear evidence. There is documentation proving the corruption that is happening right now in the sheriff's office." Transcript of November 19, 2024 Board of Supervisors Meeting (Leung Dec. Ex. 9) at 35, lines 5-8;

b.   "And right now we have a sheriff that does not hesitate to lie to the media, to lie to our community, to divide the Latino community as we saw from a public comment earlier today based on lies." *Id*. at 9, lines 11-14;

c.   "And right now what's happening at our sheriff's office is impacting and negatively impacting public safety." *Id*. at 6, lines 1-3;

d.   "They [Sheriff's Office employees] are still working under our current sheriff and her former employee, and they are in fear. And it is our board's duty to protect them and our community at large." *Id*. at 34, lines 23-26;

e.   "But at the core of this issue is the reality that our current sheriff does not understand, follow, or respect not just county policy, but basic ethics and – around conflict of – conflicts of interest and much more." Transcript of December 3, 2024 Board of Supervisors Meeting (Leung Dec. Ex. 10) at 53, lines 12-16;

f.   "I want people to know that I have zero confidence in anything coming out of her [Sheriff Corpus's] mouth being truthful. And saying that about a law enforcement officer is really concerning." *Id*. at 56, lines 16-19;

g.   "But I do believe that our sheriff must resign. And if she doesn't and we have to move forward with this election in March, she will be responsible for the millions of dollars that it will cost our county taxpayers to hold that special election." *Id*. at 11, lines 20-25;

h.   "And her [Sheriff Corpus] admitting that to me is part of my decision making here because it is very clear to me that she is incapable of holding Victor Aenlle accountable or putting anyone else's interests before his and ultimately hers." *Id*. at 54, lines 9-13.

Defendant MUELLER, likewise, made statements indicating he too had already determined that Sheriff Corpus was corrupt and should be removed. For instance:

a.   "The homophobic slurs text that she [Sheriff Corpus] went to great length to deny to the one – the night – the day we presented the report. We have the phone now and we verified she sent that text." Ex. 9: Transcript of November 19, 2024 Board of Supervisors Meeting at 40, lines 10-15;

b.   "It continues to strengthen as we go through all of the evidence presented. The strength of that 400-page report [the Cordell Report] is standing up." *Id*. at 40, lines 16-18;

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |
|---|---|

c.  "I no longer believe she [Sheriff Corpus] is fit to serve this county." *Id*. at 40-41, lines 24-25, 1;

d.  "But I have to say to you I'm in that same boat. And unfortunately, the case against the sheriff continues to get stronger." *Id*. at 40, lines 5-6;

e.  "So today's proposed charter amendment gives a voice to voters in response to the crisis to public safety created by disfunction in the San Mateo County Sheriff's Office as set forth in Judge Cordell's 400-page report." *Id*. at 2, lines 22-25;

f.  "I've served on the city council for ten years where you hire your police chief, and I think that's the method in the majority of cities in San Mateo County, they hire their police chief. And if they got a human resources report like this [Cordell Report] , pretty sure most city councils would fire that police chief." *Id*. at 49, lines 10-16;

g.  "So much so now that it's risen to the level that all of the sworn union personnel have voted and are unanimous. They're calling for her [Sheriff Corpus] to resign. The captains have called for her to resign. The only sworn personnel in the office who's still supporting her on record is the second undersheriff she's had." *Id*. at 3, lines 18-24.

**E.      The Cordell Report and the Board Create a Toxic Environment.**

Elements of the local news media seized upon the untested allegations in the Cordell Report and called for Sheriff Corpus's ouster. For instance, the (San Mateo) *Daily Journal* wrote:

> It appears that getting rid of a sheriff is going to be a lot more difficult than electing one. No matter the difficulties, San Mateo Sheriff Christina Corpus has to go. As demonstrated unequivocally by the 400-page investigative report produced by retired Judge LaDoris Cordell, Corpus and her principal partner, Victor Aenlle, have engaged in a pattern of corruption, self-interest, official misconduct and bad judgment that is nearly unprecedented in this county.

"Just How Will Corpus Go?", *Daily Journal*, November 14, 2025 (Leung Dec. Ex.11).

Similarly, the *Palo Alto Daily Post* editorialized:

> The corruption by San Mateo County Sheriff Christina Corpus poses a clear and present danger, and needs to end immediately….Corpus and Anelle [*sic*] constantly threatened and intimated sheriff's office employees, including the deputies who put their lives on the line for the public every day, according to an independent report commissioned by the Board of County Supervisors. At the same time, the report said Corpus and Anelle [*sic*] carried on an affair, in violation of county anti-nepotism rules.

"Yes on Measure A: Remove Corpus ASAP," *Palo Alto Daily Post*, February 10, 2025 (Leung Dec. Ex. 12).

In addition to hostile media coverage, Sheriff Corpus was also threatened by an inmate, James

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |

Taylor, who was in custody in San Mateo County's Maguire Correctional Facility and appears to have been aware of the controversy generated about Sheriff Corpus. On or about October 29, 2024, Taylor submitted a written grievance form, stating, "I want to do something severe to Christina Corpus. I'm tired of the blatant lies she devises, and she is an incompetent first class cunt!" Taylor Grievance Form (Leung Dec. Ex. 13). When an investigator subsequently interviewed Taylor, Taylor claimed he had "no intention of acting on the threats" and explained "he had read in the newspaper that Sheriff Corpus discussed safety but that she had lied." November 5, 2024 Incident Report at 3 (Leung Dec. Ex. 14).

Then on February 18, 2025, the medical staff at Maguire Correctional Facility notified a deputy that Taylor had, again, threatened Sheriff Corpus. *See* February 18, 2025 Incident Report (Leung Dec. Ex. 15) at 2. The deputy interviewed Taylor, who stated that he "would assault Sheriff Corpus by hitting her" in the head with a utility cart or a tray rack. *Id.* This time, Taylor explained that he was angry with Sheriff Corpus because he believed she was "'against the LGBTQ+ community'" and repeatedly mentioned she was "against homosexuals." *Id.* Notably, one of the allegations in the Cordell Report was that Sheriff Corpus made "racial and homophobic slurs." The medical staff at Maguire Correctional Facility was so concerned about Taylor's threat that they sent a "Tarasoff Notification" to Sheriff Corpus, advising that Taylor had "threatened to kill" her. *See* Tarasoff Notification (Leung Dec. Ex. 16).

**F.    Measure A Passes and § 412.5 is Created.**

On March 4, 2025, Defendants' Measure A was approved, though, due to low-voter turnout, only by roughly 20% of registered voters in San Mateo County. *See* March 4, 2025 Measure A Special Elections Results (Leung Dec. Ex. 17).

Measure A's passage amended Article IV of the San Mateo County Charter by creating § 412.5, which empowered the Board of Supervisors to remove the Sheriff for cause by a four-fifths vote. *See* § 412.5 (in pre-election ordinance form, Leung Dec. Ex. 18). Section 412.5(c) empowered Defendants to create the procedures under which they could remove Sheriff Corpus. Tellingly, under § 412.5(e)'s sunset provision, absent further extension by voters, Defendants' authority to remove the Sheriff will expire after December 31, 2028 – when Sheriff Corpus's term ends.

**G.    Defendants Retreat from the Cordell Report and Shift to the Keker Report**

Despite relying on the Cordell Report initially to push for the removal of Sheriff Corpus and to

justify Measure A, following the March 4, 2025 election, Defendants stopped relying on it. Rather, following the creation of § 412.5, Defendants retained several different law firms for the purpose of conducting further investigation of Sheriff Corpus. The last of these law firms that Defendants used was Keker, Van Nest, & Peters ("Keker"), which produced a roughly 64-page report with approximately 600 additional pages of exhibits by early June 2025 (the "Keker Report," Leung Dec. Ex. 19).

The Keker Report differed from the Cordell Report because it did not suggest that Sheriff Corpus had a romantic relationship with Mr. Aenlle, but rather, characterized their relationship as a "close personal relationship." The Keker Report also abandoned the allegation that Sheriff Corpus made "racial and homophobic" comments and focused less on Mr. Aenlle. Otherwise, the Keker Report largely mirrored the Cordell Report, with some new but no more credible allegations, mostly based on unsworn and untested conclusory and hearsay statements of various witnesses, alleging in a lengthy narrative that Sheriff Corpus: (1) had a close personal relationship with Mr. Aenlle that led her to favor and protect Mr. Aenlle to the detriment of the Sheriff's Office; (2) acted unlawfully by authorizing the arrest of Deputy Carlos Tapia for timecard fraud and withholding material information from the investigator who conducted the criminal investigation of Tapia; (3) took retaliatory employment action against Deputy Javier Acosta, Assistant Sheriff Sean Monaghan, Captain John Philip, Lieutenant Jonathan Sebring, and Sergent Jimmy Chan; and (4) interfered with and mismanaged the Sheriff Office's Professional Standards Bureau (*i.e.*, internal affairs). *See* Ex. 19: Keker Report at 6-59[2].

**H.    Defendants' Removal Procedures.**

On June 6, 2025, Defendants formally adopted the Keker Report as the basis for which to remove Sheriff Corpus, which was then served on Sheriff Corpus's counsel as the foundation of its "Notice of Intent to Remove." Included in the Notice of Intent to Remove were the procedures Defendants adopted, per § 412.5(c), for Sheriff Corpus's removal (the "Removal Procedures," Leung Dec. Ex. 20).

The Removal Procedures promulgated by Defendants provide no meaningful limiting principles on their authority to remove Sheriff Corpus, nor do they provide Sheriff Corpus with a meaningful opportunity to be heard. Under the Removal Procedures, Sheriff Corpus is entitled to two hearings: (1) a "Pre-Removal Conference" and (2) a "Removal Hearing."

---

[2] Citations to the Keker Report use the Report's internal page numbering in the upper left corner.

### 1.      The Pre-Removal Conference.

The "Pre-Removal Conference" is to be presided over by someone handpicked by Defendants, *i.e.*, San Mateo County's Chief Probation Officer or, if the Chief Probation Officer is unavailable, the Coroner, or, if the Coroner is unavailable, by someone else selected by Defendant CANEPA, President of the Board. *See* Ex. 20: Removal Procedures I.3(A). There is little guidance as to how the Pre-Removal Conference is be conducted and indication what evidentiary standard should apply. Rather, I.3(C) of the Removal Procedures merely provides that, "The individual presiding over the Pre-Removal Conference shall consider the information presented at the Pre-Removal Conference and issue a recommendation, in writing, to the Board regarding whether to remove the Sheriff."

Even more troubling, not only are there no evidentiary standards set for the Pre-Removal Conference, the recommendation that is supposed to result from it has no meaningful impact because the Removal Procedures allow Defendants simply to ignore it and proceed however they wish by a four-fifths vote: "Upon receipt of the recommendation from the Pre-Removal Conference, the Board shall, as soon as practicable thereafter, render its decision (subject to an appeal via Removal Hearing, as set forth below) to either sustain or reject the recommendation." *Id*. I.3(D).

Following the Pre-Removal Conference, should Defendants decide to proceed with the removal of Sheriff Corpus, they must then provide Sheriff Corpus with a "Final Notice of Decision to Remove," which is supposed to provide "[t]he specific ground(s) enumerated in Section 412.5 that the Board has determined constitutes the ground(s) to remove Sheriff." *Id*. I.4(1). Sheriff Corpus can then appeal the removal decision by requesting a "Removal Hearing" before a "Hearing Officer." *See id*. I.4(2).

### 2.      The Removal Hearing.

Although superficially, the Removal Hearing provides greater procedural safeguards than the Pre-Removal Conference, upon any inspection, the Removal Hearing is no less defective theater than the Pre-Removal Conference.

First, as with the Pre-Removal Conference, Defendants have unilateral authority to handpick the Hearing Officer who presides over the Removal Hearing. Sections I.4(6) and II.1(A) of the Removal Procedures provide that the Board is to propose a list of at least three potential neutral Hearing Officers to Sheriff Corpus and the County (represented by Keker), who each are entitled alternatively to strike a

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |

potential Hearing Officer until only one remains. The one remaining potential Hearing Officer "shall be the Hearing Officer to preside over the Removal Hearing." *Id.* II.1(B). By unilaterally determining the universe of potential hearing officers, Defendants have guaranteed that the Hearing Officer will be someone of their choosing.

Second, the Removal Procedures require Sheriff Corpus, when seeking a Removal Hearing, to "provide written notice" that "must include in the request for a Removal Hearing a detailed statement of the facts and grounds for appealing the Final Notice of Decision; and that the Sheriff will be barred from raising any bases for appeal not contained therein." *Id.* I.4(3); *see* I.4(5)(A). This requirement for Sheriff Corpus to provide, in the first instance, a detailed statement of the facts and grounds for her Removal Hearing under pain of preclusion unfairly places the burden of proof on her, contrary to the burden of proof set forth in the Removal Procedures themselves. *See id.* III.1(B). This burden-shifting is particularly problematic given that: (1) the allegations against Sheriff Corpus are presented not as discrete itemized counts but as a long, non-specific, 64-page narrative; and (2) Sheriff Corpus denies the allegations and so is required affirmatively, in the first instance, to prove negatives before the County has to meet its burden of proof.

Third, although the Removal Procedures provide some procedural safeguards for the Removal Hearing (*e.g.*, right to present evidence, right to subpoena, right to impeach, *see id.* III.2(A)) as well as require the County to bear the burden of proving cause for removal by a preponderance of the evidence, *see id.* III.1(B), III.3, these safeguards ultimately mean nothing because Defendants retain for themselves absolute and final authority to remove Sheriff Corpus. The Hearing Officer is limited only to providing an "advisory opinion" to Defendants following the presentation of evidence at the Removal Hearing. *See id.* I.4(8) and III.3. Ultimately, Defendants are free, with a four-fifths vote, to reject the advisory opinion of the Hearing Officer, and "the Board's decision will be final and binding." *Id.* I.4(8).

### 3. Final Decision by Defendants.

The Hearing Officer is required to complete the Removal Hearing within "30 to 60 calendar days" of being notified of his/her "selection to serve as the Hearing Officer." *Id.* III.1(A). Following the Removal Hearing, the Hearing Officer is required to provide the advisory opinion to the Board in 45 days. *See id.* III.3(A). Once Defendants receive the advisory opinion, they have up to 30 days "to

- 10 -

independently review" it and the "administrative record." *Id*. IV.1(A). Without any further fact-finding, Defendants then exercise plenary authority to decide whether a preponderance of the evidence supports cause for the removal of Sheriff Corpus. *See id*. IV.2(A) and (B). If Defendants choose to find cause for removal by a four-fifths vote, it must then prepare a "Final Decision After Removal Hearing," which, if approved by another four-fifths vote, will remove Sheriff Corpus, "effective immediately," and which will be "final." *Id*. IV.2(C).

## I.    June 11, 2025 Pre-Removal Conference.

Defendants served their Final Notice of Intent to Remove on June 6, 2025, and set June 11, 2025 for the Pre-Removal Conference. Sheriff Corpus petitioned the San Mateo County Superior Court to enjoin the removal proceeding, but the court declined to get involved. *See* Subsection L, *infra*. Thus, on June 11, 2025, Sheriff Corpus participated in the Pre-Removal Conference, presided over by San Mateo County Chief Probation Officer John Keene.

At the Pre-Removal Conference, Mr. Keene had no specific questions for Sheriff Corpus, but rather, simply directed her to tell him anything she wanted him to consider in response to the Keker Report's narrative. *See* Ex. 4: Transcript of June 11, 2025 Pre-Removal Conference at 1-2. Sheriff Corpus's counsel noted that the allegations were vague and asked for a summary of the charges, but neither Mr. Keene nor the attorney assisting him provided any clarification. *See id*. at 2-3. Despite not being advised of the relevant issues nor being asked specific questions, over the next several hours, Sheriff Corpus nevertheless endeavored to provide Mr. Keene with information for his consideration.

In brief, and in relevant part, Sheriff Corpus:

a.  discussed her desire to "bring 21st century policing and . . . justice to people that we are in charge of rehabilitating and taking care of." *Id*. at 8;

b.  explained that senior deputies leaked information, including personnel matters, and felt "emboldened because they feel that they can go to the County Executive [Mike Callagy]," which has "made it really hard for me to hold anyone accountable. When I try to hold people accountable . . . retaliation is immediately . . . thrown out there." *Id*. at 9; *see id*. at 9-10, 18;

c.  explained that some employees resented her for "trying to shove woke shit down people's throats," *id*. at 12, and she has not had the support of other County officials, with one going so far as warning that the County would not indemnify her if she were sued for her personnel decisions, *see id*. at 13;

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |

d.  denied a romantic relationship with Mr. Aenlle and explained she hired him to help manage the civilian employees of the Sheriff's Office, consistent with modern policing practices, because he was experienced in business, held a doctorate, and served as a reserve deputy and so was familiar with the Office, and because she had known him and his family for 18 years. *See id.* at 26-28;

e.  explained she authorized the arrest of Deputy Carlos Tapia for timecard fraud only after Assistant Sheriff Matthew Fox had: (i) investigated the matter, (ii) conferred with Assistant District Attorney Shin-Mee Chang about the matter, and (iii) signed a declaration attesting to probable cause, *see id.* at 34-38;

f.  explained she reassigned Sergeant Jimmy Chan from the Professional Standards Bureau to the San Francisco Airport, and moved Captain Brian Philip to supervise Corrections (*i.e.*, jails), because of staffing needs, *see id.* at 39-41 (Chan); *see id.* at 43-44 (Philip);

g.  explained she authorized an investigation of Deputy Javier Acosta because a former female intern accused him of inappropriate conduct, though Sheriff Corpus could not explain this matter fully due to concerns relating to Acosta's privacy rights, *see id.* at 38-39; and

h.  explained she hired Ryan Monaghan from outside the San Mateo Sheriff's Office to serve on her command staff based on the recommendation of Michael Callagy, but removed Monaghan simply because she lost confidence and trust in him, and because he failed effectively to carry out her reform agenda, *see id.* 44-47.

Sheriff Corpus denied retaliating against Tapia, Chan, Philip, Acosta, and Monaghan. *See id.* 34-47.

Nine days later, Mr. Keene's recommendation (the "Keene Recommendation," Leung Dec. Ex. 21), dated July 17, 2025, was issued. The Keene Recommendation provided no clarification about the allegations against Sheriff Corpus, nor did it make any specific factual findings. Rather, the one-page recommendation faulted Sheriff Corpus for not suggesting a resolution to the effort to remove her and proceeded to rubber-stamp seeking her removal:

On June 11, 2025, I appeared at the Pre-Removal Conference . . . and the Sheriff and her representatives responded to the Notice of Intent. During the conference, I found portions of their presentation compelling; covering a diverse range of topics that they felt were relevant to the matter at hand. However, when asked to present a possible alternative resolution other than what is proposed in the Notice of Intent, none was provided. After considering the content of their presentation during the Pre-Removal Conference, and in accordance with the Removal Procedures, I found that the Sheriff's conduct, as described in the Notice of Intent, violated the for cause provisions in County Charter Section 412.5(b) as articulated in the Notice of Intent. Please consider this letter to serve as formal notice of my recommendation that the proposed removal of the Sheriff from her position as Sheriff of the County of San Mateo be upheld and sustained.

> In accordance with the Removal Procedures, it is my recommendation that the Board of Supervisors approve and adopt the Notice of Intent and move forward with the proposed removal action.

On June 24, 2025, Defendants voted to approve Mr. Keene's recommendation and issued a Final Notice of Decision to Remove to Sheriff Corpus, advising her of their intent to remove her from office. *See* Leung Dec. ¶23.

**J.    Sheriff Corpus Appeals.**

On June 27, 2025, in accordance with the Removal Procedures, after receipt of Defendants' Final Notice of Decision to Remove, Sheriff Corpus filed her appeal and sought a Removal Hearing. In her appeal, she objected based on: (1) the explicit bias of Defendants CORZO and MUELLER; (2) the structurally flawed Removal Procedures that failed to provide any meaningful due process; (3) the lack of sufficient notice, evidentiary standards, and fact-finding in the Pre-Removal Conference; (4) the denial of her rights as a peace officer under California law (*i.e.*, Gov. Code §§ 3300–3313), including her right to an administrative appeal before a neutral decision-maker empowered to issue a binding ruling; (5) the violation of the *ex post facto* prohibitions in the California and the United States Constitutions; (6) the violation of the prohibitions against bills of attainder in the California and the United States Constitutions; (7) the vagueness and lack of specific definitions in the allegations against her; and (8) the continued denial of an unredacted copy of the Cordell Report and related documents. *See* June 27, 2025 Sheriff Corpus Appeal (Leung Dec. Ex.22). Sheriff Corpus also generally objected to "any and all allegations contained" in the Final Notice of Decision to Remove. *See id.* at 7.

Sheriff Corpus also proposed four retired state court judges as potential hearing officers. *See id.* at 6. Defendants declined, however, to include any of them and instead, presented their own slate. Of Defendants' picks, Sheriff Corpus and the County agreed to select retired Santa Clara Superior Court Judge James Emerson as the Hearing Officer.

Judge Emerson has scheduled the Removal Hearing for August 18-29, 2025, with preparations for the Removal Hearing already well underway. The parties exchanged exhibit and witness lists, and held a case management conference on July 14, 2025. The parties also made other submissions on July 21, 2025, and another case management conference is scheduled for July 25, 2025. *See* Leung Dec. ¶ 39.

**K.      The Civil Grand Jury Proceeding Against Sheriff Corpus.**

Sheriff Corpus, however, is facing removal from her office not just under § 412.5. On November 13, 2024, Defendants CANEPA, CORZO, and MUELLER, along with then-Board members Warren Slocum and Dave Pine, sent the Cordell Report to the San Mateo County District Attorney's Office for criminal investigation and to the San Mateo County Civil Grand Jury for removal under California state law. *See* Ex. 7: Minutes of November 13, 2024 Board meeting at 2.

Typically, a California Civil Grand Jury is managed by the office of County Counsel. However, given that San Mateo's County Counsel was already pursuing Sheriff Corpus's removal under § 412.5, County Counsel John Nibbelin declared his office conflicted and recused from the Civil Grand Jury proceeding. As a result – despite significant conflicts that are the subject of pending state court litigation – District Attorney Stephen Wagstaffe and his office took over management of the Civil Grand Jury and pursued a second, parallel effort to remove Sheriff Corpus pursuant to California Government Code § 3060. Thus, while defending against removal under § 412.5, Sheriff Corpus also has been required to defend herself before the Civil Grand Jury, testifying before the Civil Grand Jury twice, on June 20 and 23, 2025. *See* Leung Dec. ¶40.

On June 27, 2025, the Civil Grand Jury returned a four-count[3] "Accusation" (Leung Dec. Ex. 23), seeking Sheriff Corpus's removal. These four counts essentially reflect some of the allegations set forth in the Keker Report but provide greater specificity:

> COUNT ONE: That on and between January 7, 2023 and November 13, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by committing acts that created a conflict of interest, to wit: using her position to hire and/or supervise and/or seek pay raises for Victor Aenlle with whom she had a close personal relationship that she failed to disclose, in violation of County of San Mateo's Charter Article V section 510.

> COUNT TWO: That on or about September 20, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090 and/or Labor Code section 1102.5, to wit: terminating Assistant Sheriff Ryan Monaghan's employment for participating in Judge Cordell's investigation into complaints against Victor Aenlle by members of the Sheriff's Office.

---

[3] The Accusation appears to be misnumbered: the last count is numbered eight, when there are only seven counts. In addition, three of the seven counts are stricken with the word "No" written in the margin.

COUNT THREE: That on and between September 1, 2024 and November 12, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090 and/or Labor Code section 1102.5, to wit: transferring Captain Brian Philip from the Professional Standards Bureau to Corrections for refusing to serve a deficient internal affairs notice and/or ordering Captain Brian Philip to arrest Deputy Carlos Tapia.

COUNT SIX: That on or about November 12, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090, to wit: arresting Deputy Carlos Tapia in retaliation for (1) engaging in heated labor negotiations with Sheriff Corpus on August 15, 2024; and/or (2) submitting a declaration in support of a complaint filed by the Deputy Sheriff's Association against Sheriff Corpus with the Public Employee Relations Board; and/or (3) publicly announcing a no confidence vote against Victor Aenlle by the Deputy Sheriff's Association and Organization of Sheriff's Sergeants in September of 2024.

The initial appearance to answer the Civil Grand Jury Accusation took place on July 15, 2025, before San Mateo County Superior Court Judge Stephanie Garratt. On July 21, 2025, Sheriff Corpus appeared before Judge Mark McCannon, who will be presiding over the case through trial. *See* Leung Dec. ¶40. Litigation and trial on the Civil Grand Jury's Accusation will be conducted like a criminal case. *See* Cal. Government Code § 3070.

**L.    Futility in San Mateo County Superior Court.**

As noted *supra*, Sheriff Corpus sought to prevent Defendants from seeking her removal under § 412.5 based on a variety of state and federal constitutional and statutory grounds in San Mateo County Superior Court, but the state court has declined to get involved.

On June 9, 2025, counsel for Sheriff Corpus appeared on Judge Nicole Healy's *ex parte* calendar seeking to enjoin the removal process before the June 11, 2025 Pre-Removal Conference. Judge Healy, after briefly hearing arguments from the parties, denied the request in an oral order, holding that the claim was unripe because (rather circularly) the Pre-Removal Conference had not yet occurred.[4] *See* Leung Dec. ¶41. Subsequently, the parties submitted competing proposed written orders for Judge

---

[4] Judge Healy specifically rejected the argument that harm to Sheriff Corpus's reputation failed to make the case before her ripe. This conclusion is inconsistent with the "stigma plus" doctrine discussed *infra*. Sheriff Corpus also was not afforded an opportunity to argue the administrative exhaustion issue first raised by the County.

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |
| --- | --- |

Healy's consideration, but her department advised the parties that Sheriff Corpus's matter had been reassigned to Judge Shapirshteyn. *See id*. ¶ 42.

On June 27, 2025 – after the June 11, 2025 Pre-Removal Conference, the issuance of the Keene Recommendation, and Defendants' issuance of their Final Notice of Decision to Remove – Sheriff Corpus again sought to enjoin further continuation of the removal proceeding, this time directing its petition to Judge Shapirshteyn. *See id*. ¶ 43. The parties appeared on Judge Shapirshteyn's *ex parte* calendar that day, but – without seeing the parties and without hearing any argument – Judge Shapirshteyn summarily signed the County's proposed order, denying Sheriff Corpus's *ex parte* application for injunctive relief due to her putative failure to "exhaust[] administrative remedies." June 27, 2025 Order (Leung Dec. Ex. 24).

On July 1, 2025, Sheriff Corpus sought reconsideration from Judge Shapirshteyn, based on California state law – *e,g.*, *Briley* v. *City of West Covina*, 66 Cal.App.5th 119 (2021); *KCSFV I, LLC* v. *Florin County Water Dist.*, 64 Cal.App.5th 1015 (2021); *Coachella Valley Mosquito & Vector Control Dist.* v. *PERB*, 35 Cal.4th 1072 (2005) – holding that administrative exhaustion is not required for claims challenging the constitutional sufficiency of the administrative processes themselves, as well as moved to shorten time for reconsideration. *See* Leung Dec. ¶ 44. Judge Shapirshteyn was not available that week, however, so Sheriff Corpus sought to present the *ex parte* motion to shorten time to Judge Don Franchi, whom Judge Shapirshteyn designated to cover her calendar, given that a motion for reconsideration under California law ordinarily must be made within 10 days. *See id*. Judge Franci's department, however, advised without further explanation that he could not hear Sheriff Corpus's application. *See id*.; Email thread from July 1-7, 2025 (Leung Dec. Ex. 25) at 5 (July 2, 2025, 9:01 am email from Department 15 stating, "Judge Franci cannot hear this ex parte application.")

Later on July 2, 2025, counsel for Sheriff Corpus received notification that its motion for reconsideration to Judge Shapirshteyn had been rejected for filing, with the instruction, "you must reach out to depart 11 [Judge Shapirshteyn's department] for a hearing date prior to resubmission of the documents." Leung Dec. ¶ 45; Filing Rejection Notification (Leung Dec. Ex. 26).

Thus, on July 3, 2025, Sheriff Corpus's counsel emailed Judge Shapirshteyn's department seeking the "earliest available hearing date" for the motion for consideration. *See* Leung Dec. ¶ 46; Ex.

25: Email thread from July 1-7, 2025 at 1-2 (July 3, 2025, 11:51 am email from Matthew Frauenfeld to Department 11). Four days later, on July 7, 2025, Judge Shapirshteyn's department responded that "[t]he first available hearing date on Department 11's Complex L&M calendar is 3/12/26 at 3:00 pm. I have set the Motion on that date." Ex. 25: Email thread from July 1-7, 2025 at 1 (July 7, 2025, 4:31 pm email from Department 11).

Because 2026 was too late to affect Sheriff Corpus's Removal Hearing, Sheriff Corpus's counsel appeared on Judge Shapirshteyn's next available *ex parte* calendar, July 10, 2025, to submit her motion for reconsideration and its related *ex parte* application to shorten time. Leung Dec. ¶47. At this appearance, Judge Shapirshteyn asked the parties to brief why Sheriff Corpus's *ex parte* application to shorten time should not be dismissed for lack of jurisdiction. *See id*. The parties submitted their briefs the next morning, prior to appearing again before Judge Shapirshteyn. At this appearance, Judge Shapirshteyn denied Sheriff Corpus's *ex parte* application to shorten time, but set the hearing on the motion for reconsideration for August 14, 2025, *see id*. ¶48, four days before the start of the § 412.5 Removal Hearing.

### III.    DISCUSSION

**A.    Generally Applicable Legal Principles.**

The Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), held that state officers may be sued in their official capacities for prospective declaratory or injunctive relief for their alleged violations of federal law. *See Coalition to Defendant Affirmative Action* v. *Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). "For *Ex parte Young* to apply, a plaintiff must point to threatened or ongoing unlawful conduct by a particular governmental officer." *Jamul Action Comm.* v. *Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020).

Injunctive relief under *Ex parte Young* is a crucial tool to protect federal rights. "[T]he availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause," as "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green* v. *Mansour*, 474 U.S. 64, 68 (1985).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter* v. *Natural Res. Def.*

1    *Council*, 555 U.S. 7, 20 (2008); see *United States* v. *City of Seattle*, 474 F. Supp. 3d 1181, 1185 (W.D.

2    Wash. 2020). If a plaintiff shows a "likelihood of irreparable injury and that the injunction is in the public

3    interest," a "preliminary injunction is appropriate where a plaintiff demonstrates that serious questions

4    going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance*

5    *for the Wild Rockies* v. *Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

6         Additionally, Title 18, United States Code, Section 1983, provides another crucial means of

7    vindicating federal rights against the unlawful actions of state officials. "To state a claim under § 1983,

8    a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States,

9    and must show that the alleged deprivation was committed by a person acting under color of state law."

10    *West* v. *Atkins*, 487 U.S. 42, 48 (1988).

11         Defendants, acting under color of state law as Supervisors of San Mateo County, have been

12    pursuing Sheriff Corpus's removal from elected office in violation of her federal constitutional rights.

13    The Court should immediately issue a preliminary injunction enjoining Defendants from continuing with

14    their lawless actions to prevent further violations of Sheriff Corpus's rights.

**B.    Likelihood of Success on the Merits.**

16         First, Sheriff Corpus is likely to succeed on the merits. Defendants' effort to remove her from

17    office under § 412.5 has been tainted by bias from its inception and continues to be mere theater that

18    violates both procedural due process and substantive due process, as well as the constitutional

19    prohibitions against *ex post facto* punishment and bills of attainder.

**1.    Due Process: Sheriff Corpus Has a Protected Liberty Interest.**

21         To bring a due process claim under § 1983, a plaintiff must "show that the state deprived her of

22    a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Sandefur*

23    v. *Lewis*, 937 F. Supp. 890, 894 (D. Az. 1996) (*quoting Zinerman* v. *Burch*, 494 U.S. 113, 125 (1990)).

24    A plaintiff has a liberty interest against defamatory state action, *i.e.*, "if the charge [brought by the state]

25    impairs a reputation for honesty or morality." *Matthews* v. *Harney Cnty.*, 819 F.2d 889, 892 (9th Cir.

26    1987). Such liberty interests are actionable under § 1983 via a due process claim if the plaintiff was

27    subjected to "stigma plus:" "(1) the public disclosure of a stigmatizing statement by a state actor; (2) the

28    accuracy of which is contested; (3) plus the denial of some more tangible interest." *Chaudhry* v. *Aragon*,

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |
|---|---|

68 F.4th 1161, 1171 (9th Cir. 2023).

"Stigma plus" is met when "the state makes a charge against a plaintiff that might seriously damage his standing and associations in the community." *Wenger* v. *Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002); *see Hyland* v. *Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (holding that "the stigma imposed must be severe and genuinely debilitating . . . the stigma must seriously damage reputation or significantly foreclose his freedom to take advantage of other employment opportunities."). Notably, the Second Circuit has held that an elected official removed for cause has a liberty interest subject to protection under procedural due process and may seek relief under § 1983. *See Velez* v. *Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (reversing grant of summary judgment and holding that elected school board member challenging her removal for cause had a liberty interest actionable under § 1983 for procedural due process).

Defendants have gone well beyond inflicting "stigma plus" in their attacks on Sheriff Corpus. They have very publicly and repeatedly accused Sheriff Corpus not simply of engaging in corruption and misconduct, but also of threatening the very safety of the community and terrifying employees of the Sheriff's Office.

First, various state actors have publicly disclosed stigmatizing statements against Sheriff Corpus. For instance, Defendant CORZO in a Board meeting has declared that Sheriff Corpus has "lied to the media" and "divided the Latino community," Ex. 9: Nov. 19, 2024 Transcript at 9, lines 11-14, is "negatively impacting public safety," *id*. at 6, lines 1-3, and that Sheriff Corpus's employees are not just merely "in fear" of her, *id*. at 34, lines 23-26, but in "[a]*ctual* fear[,] [a]ctual *validated* fear," *id*. at 36, lines 12-13 (emphasis added). Defendant MUELLER echoed CORZO and pronounced that Sheriff Corpus has created nothing less than a "crisis to public safety." *Id*. at 2, lines 22-25.

Similarly, the Cordell Report that the County promoted lamented that,

> As the first female/Latina Sheriff of San Mateo County, Christina Corpus could have taken the Sheriff's Office in a new and positive direction. Sadly, she has done no such thing. . . . Lies, secrecy, intimidation, retaliation, conflicts of interest, and abuses of authority are the hallmarks of the Corpus administration. This investigator takes no pleasure in recommending that Sheriff Corpus step down and that Victor Aenlle's employment with the Sheriff's Office be terminated immediately. Nothing short of new leadership can save this organization.

Ex. 5: Cordell Report at 92.

Likewise, even if the County has not officially released the Keker Report[5], it has teased its contents. County Executive Michael Callagy's official web site, in an entry dated June 24, 2025, trumpeted:

> The County of San Mateo Board of Supervisors voted 5-0 today to accept a recommendation to proceed with removing Sheriff Christina Corpus from office.. . . .The Notice of Intent to Remove, which reflected the results of a comprehensive investigation prepared by the law firm Keker, Van Nest & Peters LLP and which is supported by 524 pages of documentary evidence and 42 witness interviews, concluded that the sheriff engaged in multiple acts of misconduct that, if true, would support removal from office based on causes set forth in Section 412.5(B)(1) of the San Mateo County Charter (violation of law related to the performance of the sheriff's duties); 412.5(B)(2) of the Charter (flagrant and repeated neglect of the sheriff's duties); and 412.5(B)(5) of the Charter (obstruction of an investigation into the conduct of the sheriff).

"San Mateo County Supervisors Accept Recommendation to Remove Sheriff Christina Corpus from Office," San Mateo County Executive Web Site, June 24, 2025 (Leung Dec. Ex. 27). Local news media amplified Mr. Callagy's account of the Keker Report's allegations, blending them with the allegations of the Cordell Report, even though the Cordell Report has theoretically been superseded by the Keker Report. *See* "San Mateo County Supervisors Take Historic Vote to Remove Sheriff," KQED, June 24, 2025 (Leung Dec. Ex. 28) ("*Besides Cordell's extensive report*, the county *also* relied on an investigation prepared by the law firm Keker, Van Nest & Peters, which used 524 pages of documentary evidence and 42 witness interviews. That report concluded that Corpus violated the law 'related to the performance of the sheriff's duties … flagrant and repeated neglect of the sheriff's duties … and obstruction of an investigation into the conduct of the sheriff.'") (emphasis added).

Second, Sheriff Corpus denies the allegations made against her. Period.

Third, because of the allegations against her, Sheriff Corpus has suffered public condemnation, harassment, and threats, and is facing removal from office through a fundamentally unlawful process. As noted already, the local news media have parroted Defendants' attacks against Sheriff Corpus and

---

[5] The Keker Report is supposed to be confidential. However, on June 27, 2025, both parties lodged copies of it with the San Mateo County Superior Court in connection with litigation before Judge Shapirshteyn, and Plaintiff's copy of the Keker Report, as well as other documents, were publicly filed by the Superior Court. Local news media reported on these unintentionally publicized documents as early as July 2, 2025.

MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION    CASE NO.: 25-CV-05962-VC

have sometimes gone even further. *See supra* Subsection E (Ex. 11: "Just How Will Corpus Go?", *Daily Journal*, November 14, 2025; Ex. 12: "Yes on Measure A: Remove Corpus ASAP," *Palo Alto Daily Post*, February 10, 2025). More recently, the (San Mateo) *Daily Journal* called Sheriff Corpus a "leper" lamenting that:

> With each depressing week, any remaining support for the utterly tarnished tenure of embattled San Mateo County Sheriff Christina Corpus has long since evaporated in a dismal cascade of rejections. She has become the county's leading executive leper, shunned and abandoned by all except her few remaining confidants and, of course, her attorneys who are being paid regardless of Corpus's plunging popularity index.

"A County Leper Still Refuses to Leave her Post," *Daily Journal*, July 9, 2025 (Leung Dec. Ex. 29).

These news articles, however, are tame compared to the more inflammatory statements about Sheriff Corpus in online commentary. For instance, comments posted in response to a July 2, 2025 article in the *Palo Alto Daily Post* suggested protesting at Sheriff Corpus's home, where she lives with her children. *See* Comments to "Confidential Documents in Sheriff Corpus Case Posted on Court Website," *Palo Alto Daily Post*, July 2, 2025 (Leung Dec. Ex. 30) at 6. Indeed, the hostility whipped up against Sheriff Corpus has become so heated that even the San Mateo Deputy Sheriff's Association – the union that was a principal backer of Measure A, *see* "Early Results Show Ballot Measure to Oust Sheriff Appears Headed to Landslide Victory," the *Almanac*, March 4, 2025 (Leung Dec. Ex. 31) – felt the need to caution its members against protesting at her home, albeit not for altruistic reasons:

> We are aware of several calls online for protests at Sheriff Corpus' residence. While we support protesting an individual who is corrupt, abusive, and retaliatory, we discourage any members from engaging in a protest at her house. Sheriff Corpus has been trying to create a false narrative where she is the victim and where she is being threatened by the unions. We believe that a demonstration at her residence would only further that narrative.

San Mateo Deputy Sheriff's Association web site (Leung Dec. Ex. 32) (captured on or about July 11, 2025).

Moreover, despite being the subject of a Tarasoff Notification, James Taylor, the inmate who threatened Sheriff Corpus, somehow was released, and law enforcement officers had to scramble to get an arrest warrant for him. *See* March 2025 Wanted Flyers for James Taylor (Leung Dec. Ex. 33). Taylor was arrested on or about March 20, 2025. *See* Change in Warrant Status Printout (Leung Dec. Ex. 34).

Defendants' actions in seeking to remove Sheriff Corpus have gone well beyond merely criticizing her for any alleged incompetence or inability, or even alleging misconduct and corruption. Rather, Defendants have found their Muse in a mob, in the disgruntled employees and former employees of the Sheriff's Office who are angered at Sheriff Corpus's disruption of their comfortable status quo, and whose vehemence Defendants have been channeling. As a result, Sheriff Corpus has been harassed, maligned, and subjected to threats to her safety, all in the effort to drive her from elected office. Defendants have inflicted stigma plus on Sheriff Corpus and her liberty interest in her reputation is protected by the due process clause of the Fourteenth Amendment. *See Velez*, 401 F.3d at 89.

### 2. Defendants Have Violated and Will Continue to Violate Sheriff Corpus's Right to Procedural Due Process.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted); *see Boddie* v. *Connecticut*, 401 U.S. 371, 378-79 (1971). Defendants' effort to remove Sheriff Corpus has violated and continues to violate procedural due process.

First, as noted above, since November 2024, Defendants CORZO and MUELLER have repeatedly made public statements concluding that Sheriff Corpus has engaged in corruption and must be removed. As two of the five members of the Board of Supervisors who will be deciding Sheriff Corpus's fate, CORZO and MUELLER are hopelessly biased and their involvement in Sheriff Corpus's removal to date has *already* violated her right to due process. *See Clements* v. *Airport Auth. of Wahoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995) ("[A] biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal.") (internal quotation marks and citations omitted); *see also Schweiker v. McClure,* 456 U.S. 188, 195 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities."). Any potential juror being considered for even a civil trial who made statements prejudging the outcome of a case as CORZO and MUELLER have done would quickly be stricken for cause. CORZO and MUELLER cannot be allowed serve as jurors for the much weightier matter relating to Sheriff Corpus, and their continued involvement in Sheriff Corpus's removal in any capacity – even merely conferring with the other Defendants – will result in further violations of Sheriff Corpus's due process rights.

Second, the allegations of misconduct brought by Defendants are unlawfully vague. Rather than present Sheriff Corpus with a specific list of allegations, as the Civil Grand Jury Accusation does, Defendants instead have simply taken the 64-page narrative of the Keker Report and presented its allegations *en masse*, without specificity, against Sheriff Corpus.

Third, the Removal Procedures require Sheriff Corpus to provide specific facts and grounds on which she intends to rely for her Removal Hearing, and failure to provide such facts and grounds precludes claims based on those facts and grounds. This requirement effectively shifts the burden of proof, contrary to the Removal Procedures, onto Sheriff Corpus. In order to present her claims at the Removal Hearing, she is required, *in the first instance*, to muster evidence that disprove the allegations before the County has to carry its burden of proving the allegations. She is placed in the impossible position of first proving a negative before she can hold the County to its burden, in contravention of due process. *See Speiser* v. *Randall*, 357 U.S. 513, 524 (1958) (observing that states can regulate burden of proof and persuasion, "unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," and noting that "[i]n civil cases too this Court has struck down state statutes unfairly shifting the burden of proof") (internal quotation marks and citations omitted).

Fourth, the Removal Procedures allow Defendants to handpick the Hearing Officer for the Removal Hearing by determining all the potential candidates. Although Sheriff Corpus is given the opportunity to strike potential Hearing Officers, the inevitable outcome is that someone unilaterally selected by Defendants will preside as the Hearing Officer.

Fifth, the Removal Procedures provide no meaningful limitation on the authority of Defendants to remove Sheriff Corpus. Defendants' Removal Procedures empower them to remove Sheriff Corpus regardless of what evidence is adduced at the Removal Hearing, regardless of what the Hearing Officer finds. *The Hearing Officer could find that the County has failed to meet its burden of establishing cause for removal, and Defendants could ignore such a finding and still remove Sheriff Corpus anyway.* Nothing that occurs prior to Defendants' final decision matters, and so long as Defendants pay lip service to the preponderance of evidence standard they have set for themselves, they can do whatever they desire in the removal action that they initiated, under the process they created, subject to no further review.

Sixth, even ignoring the express bias of Defendants CORZO and MUELLER, and even assuming that Defendants will honor in good faith the burden of proof by a preponderance of the evidence that they have set for themselves, the Removal Procedures fail to provide sufficient legal protections for Sheriff Corpus. Undoing the will of voters and removing a duly elected official must require greater procedural safeguards than four votes applying a preponderance standard based on a record not bound by any rule of evidence. *See Boddie*, 401 U.S. at 378 ("What the Constitution does require is an opportunity granted at a meaningful time and in a meaningful manner for *a hearing appropriate to the nature of the case*.") (cleaned up) (emphasis added); Ex. 20: Removal Procedures III.2(C) ("The Removal Hearing shall be informal and need not be conducted according to technical rules relating to evidence and witnesses.").

Indeed, before the creation of § 412.5 in March of this year, California law already provided at least two ways to remove an elected official: (1) via a recall election, *see* California Constitution Art. II; Cal. Elections Code § 11000; and (2) via the Civil Grand Jury. Focusing on the Civil Grand Jury path because it more closely resembles a removal hearing, once a Civil Grand Jury returns an accusation setting forth the alleged misconduct of an elected official with the specificity of a criminal indictment, the elected official then has a right to a jury trial applying the reasonable doubt standard before a state court judge. *See* Cal. Government Code § 3070 (providing removal trial by Civil Grand Jury "shall be by a jury, and conducted in all respects in the same manner as the trial of an indictment"); *see also* "San Mateo Co. Sheriff Corpus Accused of Misconduct by Civil Grand Jury," *ABC7News*, June 30, 2025 (Leung Dec. Ex. 35) ("If the case proceeds to trial, [DA] Wagstaffe said a unanimous jury would need to find at least one allegation to be true beyond a reasonable doubt for Corpus to be removed from office."). In contrast, the Removal Procedures created by Defendants to wield specifically against Sheriff Corpus are simply insufficient when compared to removal via the Civil Grand Jury. The Removal Procedures Defendants have created are merely window dressing to hide an end-run around the legal protections that California has established governing the removal of elected officials.

In sum, the participation of biased Board members has already violated Sheriff Corpus's due process rights and will continue to violate them. Thus, at minimum, Defendants CORZO and MUELLER should immediately be enjoined from participating in Sheriff Corpus's removal. Even setting aside this

fatal defect, however, the entire removal proceeding apparatus set up by Defendants is a sham, provides no meaningful opportunity to be heard, and, *on its face*, violates procedural due process. All Defendants, thus, should be enjoined from further pursuing Sheriff Corpus's removal under § 412.5.

### 3. Defendants Have Violated and Will Continue to Violate Sheriff Corpus's Right to Substantive Due Process.

"To violate substantive due process, the alleged conduct must 'shock[] the conscience' and 'offend the community's sense of fair play and decency." *Marsh* v. *Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (quoting *Rochin v. California,* 342 U.S. 165, 172–73 (1952)). Defendants have violated Sheriff Corpus's right to substantive due process.

In their zeal to remove Sheriff Corpus from office, Defendants have set up Removal Procedures that are meaningless, and this flaw is particularly palpable when compared to the process applicable to removal under California Government Code § 3060. Regardless of the evidence adduced at the Removal Hearing, Defendants have ultimate and final authority to remove Sheriff Corpus, even if Defendants' handpicked Hearing Officer finds that the County fails to meet its burden of proof. This by itself shocks the conscience and offends any sense of fair play and decency.

In addition, it is also shocking that Defendants CORZO and MUELLER have participated and continue to participate in the removal effort against Sheriff Corpus. Defendants CORZO and MUELLER have repeatedly and publicly declared that Sheriff Corpus is corrupt and should be removed. Their bias is undeniable and they should never have been involved in any capacity in Sheriff Corpus's removal.

Moreover, in addition to their own effort to remove Sheriff Corpus, Defendants have also enlisted the aid of District Attorney Wagstaffe to pursue Sheriff Corpus's removal via the Civil Grand Jury. Thus, Sheriff Corpus presently has to defend against not only Defendants' § 412.5 removal action but also against the trial triggered by the Civil Grand Jury Accusation. This piling-on offends the very notion of decency and fair play guaranteed by substantive due process.

### 4. Defendants Violate the Prohibition Against Ex Post Facto Punishment.

In addition to violating Sheriff Corpus's right to procedural and substantive due process, Defendants also violate the constitutional prohibition against *ex post facto* punishment by seeking to remove Sherif Corpus for alleged misconduct that occurred prior to the March 4, 2025 amendment of

| MEMO OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | CASE NO.: 25-CV-05962-VC |
| --- | --- |

1   the San Mateo County Charter that first empowered Defendants to seek her removal. Prior to March 4,

2   2025, none of the alleged misconduct for which Defendants now seek to remove Sheriff Corpus could

3   have been used to remove her.

4       "The *Ex Post Facto* Clause prohibits retroactive punishment for acts which could not be punished

5   at the time they were committed. To fall within the *ex post facto* prohibition, 'the law must be

6   retrospective, that is, it must apply to events occurring before its enactment; and second, it must

7   disadvantage the offender affected by it.'" *Doe #35* v. *Labrador*, 679 F. Supp. 3d 1019, 1039 (D. Idaho

8   2023) (quoting *Neal v. Shimoda*, 131 F.3d 818, 825 (9th Cir. 1997)) (additional citation omitted).

9       Generally, the *ex post facto* prohibition applies to criminal laws, but "the *ex post facto* effect of

10  a law cannot be evaded by giving a civil form to that which is essentially criminal." *Burgess* v. *Salmon*,

11  97 U.S. 381, 385 (1878). "The mark of an *ex post facto* law is the imposition of what can fairly be

12  designated punishment for past acts. The question in each case where unpleasant consequences are

13  brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that

14  individual for past activity, or whether the restriction of the individual comes about as a relevant incident

15  to a regulation of a present situation, such as the proper qualifications for a profession." *De Veau* v.

16  *Braisted*, 363 U.S. 144, 160 (1960).

17      Although not explicitly criminal in nature, the effort to remove Sheriff Corpus is clearly punitive.

18  Defendants have said so: they are seeking Sheriff Corpus's removal from elected office specifically

19  because they believe she engaged in corruption and misconduct. Section 412.5 is specifically intended

20  to target Sheriff Corpus and empowers Defendants to remove her. Thus, Defendants' effort to remove

21  Sheriff Corpus is punitive in nature and subject to *ex post facto* scrutiny.

22      *Ex post facto* scrutiny proves fatal for the removal effort. All the alleged misconduct set forth in

23  the Keker Report pre-dates March 4, 2025, when § 412.5 was created. Thus, none of the alleged

24  misconduct in issue would have subjected Sheriff Corpus to removal at the time she allegedly committed

25  it. Accordingly, Defendants' current effort to remove her violates the *ex post facto* prohibition of the

26  Constitution.

27      **5.    Defendants Violate the Prohibition Against Bills of Attainder.**

28  "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an

- 26 -

1  identifiable individual without provision of the protections of a judicial trial.'" *SeaRiver Mar. Fin.*

2  *Holdings, Inc.* v. *Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (*quoting Nixon* v. *Adm'r of Gen. Servs.*, 433

3  U.S. 425, 468 (1977)). "Three key features brand a statute a bill of attainder: that the statute (1) specifies

4  the affected persons, and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Mar. Fin.*

5  *Holdings, Inc.* v. *Mineta*, 309 F.3d 662, 668 (9th Cir. 2002).

6  Given these principles, the § 412.5 removal proceeding brought by Defendants against Sheriff

7  Corpus violates the constitutional prohibition against bills of attainder.

8  First, although § 412.5 does not identify Sheriff Corpus by name, it is clear that it was

9  promulgated specifically to target her. It identifies her by her office, and – by its own terms – sunsets on

10  December 31, 2028, *exactly when Sheriff Corpus's term ends*. Defendant MUELLER also confirmed the

11  intent of § 412.5 specifically on December 3, 2024, when he stated, "the grant of power in the charter

12  amendment is *specific to this immediate crisis*. . . ." Ex. 9: Transcript of November 19, 2024 Board

13  meeting, at 3, lines 22-26 (emphasis added).

14  Second, removing Sheriff Corpus from her elected office is clearly punitive. Defendants are

15  seeking her removal as punishment for their belief that she engaged in corruption and misconduct.

16  Third, as noted above, the Removal Proceeding under § 412.5 lacks any meaningful procedural

17  safeguards typically afforded in a judicial trial. It provides much less protection than California

18  Government Code § 3070, which requires the removal of an elected official via the Civil Grand Jury to

19  employ the same protections as a criminal trial. In addition, the same Defendants who initiated the

20  removal proceedings in the first place will also be serving as the final jury, with absolute and unchecked

21  authority to decide whether to remove Sheriff Corpus, no matter what happens at the upcoming Removal

22  Hearing. Moreover, as noted already, Defendants CORZO and MUELLER have, since at least November

23  2024, before any fact-finding occurred and relying solely on the flawed Cordell Report that now appears

24  to have been relegated, already prejudged that Sheriff Corpus is corrupt and should be removed. Their

25  involvement in the § 412.5 removal proceeding undermines any safeguards of a judicial trial.

26  Because § 412.5 targets Sheriff Corpus only, and because it punishes her without the safeguards

27  of a judicial trial, the pending Removal Hearing under § 412.5 violates the prohibition against bills of

28  attainder in the Constitution.

*****

For all of the foregoing reasons, Sheriff Corpus has established that she is likely to prevail on the merits. Defendants have violated, and continue to violate, her rights to procedural and substantive due process, as well as the constitutional prohibitions against *ex post facto* punishment and bills of attainder.

**C.    Irreparable Harm.**

Sheriff Corpus has already suffered harm to her constitutional rights, and in the absence of injunctive relief, Defendants will continue to inflict further harm upon her by dragging her through an unfair, unlawful, and defamatory removal process that has hurt her reputation, led to harassment and threats, and will likely result in her removal from elected office.

As noted, the participation of Defendants CORZO and MUELLER since the very inception of the effort to remove Sheriff Corpus has violated Sheriff Corpus's due process right to an unbiased tribunal. Every decision relating to removal in which either CORZO and MUELLER was involved was unconstitutional and a harm inflicted upon Sheriff Corpus.

In addition, being subjected to a removal process that fails to provide due process and that violates the constitutional prohibitions against *ex post facto* punishment and bills of attainder, is further harm to Sheriff Corpus. For Sheriff Corpus, the process is the harm.

Moreover, in addition to the harm arising from the violation of her constitutional rights, Sheriff Corpus has also suffered greatly from the removal effort to date. She has already been subjected to public opprobrium, calls to protest her at her home, and even threats to her safety. Even authority as the elected Sheriff has been undermined, with routine personnel decisions she makes now reflexively condemned as "retaliation." *See* Ex. 4: Transcript of June 11, 2025 Pre-Removal Conference at 9 (Sheriff Corpus explaining that recalcitrant employees are "emboldened because they feel that they can go to the County Executive [Michael Callagy]," which has "made it really hard for me to hold anyone accountable. When I try to hold people accountable . . . retaliation is immediately . . . thrown out there."); *see, e.g.*, "Sergeants Union in San Mateo County said Retaliation was 'Shockingly Obvious,'" *Daily Journal*, July 18, 2025 (Leung Dec. Ex. 36) ("The sergeant's union is calling out Sheriff Christina Corpus and her decision to place Sgt. Joe Fava on administrative leave, describing the move as blatant retaliation to witnesses speaking against her.").

These outcomes to date already constitute irreparable harm and are ongoing. And, of course, should the removal proceeding reach its sadly predictable conclusion, Defendants will remove Sheriff Corpus from her elected office – as Defendants CORZO and MUELLER have already stated they would do – making the harm suffered by Sheriff Corpus even more irreparable.

**D.    Balance of Equities and Public Interest.**

The last two prongs of the inquiry to determine whether a preliminary injunction should issue – balance of equities and public interest – "are largely the same" and can be considered together. *Scott* v. *Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010); *see*, *e.g.*, *Zepeda Rivas* v. *Jennings*, 445 F. Supp.3d 36, 40 (N.D. Cal. 2020) (considering balance of hardship and public interest together).

The balance of equities and the public interest both favor Sheriff Corpus. She has faced not just defamation about her honesty and character, but harassment and threats to her safety. Her authority as the elected Sheriff has been undermined, and even the tranquility of her and her children in their home has been threatened by calls of protests. She is also facing removal from elected office by a biased tribunal, which – given the allegations of dishonesty and corruption – will permanently impact her ability not just to seek another elected office but to resume a career in law enforcement. Moreover, as an official elected into office by the voters of San Mateo County, Sheriff Corpus's removal proceeding should be conducted in a measured and lawful manner with adequate procedural safeguards and consistent with established laws, not via some *ad hoc* rigged pseudo-trial under the complete control of Defendants.

In contrast, Defendants will suffer no detriment if they are enjoined. They have already prevailed upon DA Wagstaffe to seek Sheriff Corpus's removal via the Civil Grand Jury. Thus, pursuing Sheriff Corpus's removal under § 412.5 is simply gratuitous. Indeed, the only reasons for Defendants to pursue Sheriff Corpus's removal via § 412.5 are to guarantee that they wield complete, final, and unreviewable authority over the outcome, and to make defending against removal even more onerous for Sheriff Corpus. Thus, the balance of equities and the public interest both weigh heavily against Defendants.

//

//

//

//

1

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should immediately issue a preliminary injunction enjoining Defendants NOELIA CORZO and RAY MUELLER from any further involvement in the § 412.5 removal effort against Sheriff Corpus due to their express bias. The Court should also immediately issue a preliminary injunction against Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER barring them from continuing to pursue the removal of Sheriff Corpus under § 412.5 and the unlawful Removal Procedures they have promulgated. Sheriff Corpus has committed no misconduct of any kind, and she should receive the benefit of trial by an impartial jury which accrued to her from the County's own decision to seek her removal via Civil Grand Jury. Swapping out that neutral deliberative body for a hearing conducted by Defendants who have publicly committed to her ouster is both unfair and unconstitutional.

DATED: July 23, 2025                    Respectfully submitted,

MURPHY, PEARSON, BRADLEY & FEENEY


By:    /s/ W.S. Wilson Leung
       W.S. Wilson Leung
       Thomas P. Mazzucco
       James A. Lassart
       Christopher R. Ulrich
       Matthew J. Frauenfeld
       Mariah S. Cooks
       Attorneys for SHERIFF CHRISTINA CORPUS

- 30 -