EXHIBIT 22



550 California Street, 14th Floor
San Francisco, CA 94104
Telephone  415.788.1900
www.mpbf.com

June 27, 2025

MURPHY, PEARSON, BRADLEY & FEENEY
550 California Street, 14th Floor
San Francisco, CA 94104
(415) 788-1900 | www.mpbf.com

***VIA EMAIL & CERTIFIED MAIL***
Sukhmani S. Purewal
Assistant Clerk of the Board
spurewal@smcgov.org

Sherry Golestan
Deputy Clerk of the Board
sgolestan@smcgov.org

San Mateo County Board of Supervisors

**Re: Appeal of Final Notice of Decision to Remove Sheriff Christina Corpus
Charter Section 412.5 Removal Procedures – Request for Removal Hearing**

Dear Ms. Purewal and Ms. Golestan:

We write on behalf of our client, Sheriff Christina Corpus, to timely submit her formal appeal of the Final Notice of Decision to Remove, issued by the San Mateo County Board of Supervisors on June 24, 2025, pursuant to Charter Section 412.5 and the "Sheriff Removal Procedures" adopted by the Board (the "Removal Procedures"). This letter constitutes Sheriff Corpus's request for a Removal Hearing as provided under Section 4 of the Removal Procedures.

**I. Factual and Legal Grounds for Appeal**

Sheriff Corpus respectfully appeals the Final Notice of Decision on the following grounds:

   1. **Denial of Due Process – Disqualification of Biased Decisionmakers**

Sheriff Corpus was denied due process when members of the San Mateo County Board of Supervisors who had publicly accused her of dishonesty and misconduct participated in issuing the Notice of Removal and now serve as final decisionmakers under the adopted procedures. This is not merely a matter of appearance; the facts reflect an "unacceptable probability of actual bias."

At least two members of the Board—Supervisors Corzo and Mueller—repeatedly made public, statements evincing their belief that the Sheriff is dishonest, unfit for office, and should resign, well before any hearing or formal process commenced. These statements reflect prejudgment and bias, rendering the Board's vote constitutionally infirm. (See *Petrovich Development Co., LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963; *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 484; *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351.)

In *Petrovich Development Co., LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, the court held that a city councilmember's prehearing advocacy and coordination with opponents to a project—evidenced by emails and talking points—rendered him biased and disqualified him from participating in the quasi-adjudicative decision. The Court explained that such conduct "go[es] beyond mere membership in an organization ... and instead [is] akin to advocating on behalf of an appellant." The trial court correctly concluded that "Councilmember Schenirer was no longer a neutral, unbiased decisionmaker" and ordered him recused.

The same is true here. Supervisors Corzo and Mueller made public statements alleging that Sheriff Corpus was dishonest and unfit for office. These statements, made in the context of their role as public accusers, preclude them from subsequently acting as neutral adjudicators. As in *Petrovich*, their participation in the vote to remove Sheriff Corpus fatally taints the process.

### 2. Denial of Due Process – Structurally Flawed Removal Procedures

Under the Removal Procedures adopted by the Board, the Board functions as both accuser, factfinder, and judge without any meaningful objective, independent check on its unfettered authority. These Removal Procedures are, thus, structurally deficient and fail to comply with basic tenets of due process. (See *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.)] Specifically, under the Board's Removal Procedures:

(1) the Chief Probation Officer conducts an initial Pre-Removal Conference and provides a recommendation relating to removal, but the Board has plenary authority simply to disregard the Chief Probation Officer's recommendation (*see* Removal Procedures I.3(D));

(2) in any appeal of a Final Notice of Decision, the Board ultimately gets unilaterally to handpick the Hearing Officer, given that Board picks all three potential Hearing Officers, against whom the Sheriff is afforded only one strike (*see* Removal Procedures II.1 (B));

(3) although the Removal Procedures state a "preference" that the Hearing Officer be a "retired judge," this preference is entirely precatory and there is no reassurance that the potential Hearing Officers chosen by the Board will be objective or independent (*see* Removal Procedures I.4(6));

(4) although the Removal Procedures provide that the County bears the burden of proof by a preponderance standard to justify the removal of the Sheriff (*see* Removal Procedures III.2), this standard is too low given that the Sheriff is an elected public official;

(5) the Board has ultimate authority over the Hearing Officer's Advisory Opinion and can reject it and still seek the removal of the Sheriff even if the Hearing Officer finds that the case against the Sheriff has not been met (see Removal Procedures I.4(8)).

The Removal Procedures adopted by the Board are nothing more than the thinnest window dressing that do little to hide the Board's predetermined decision to remove the Sheriff. The Removal Procedures vest all decision making authority with the Board, from picking the Hearing Officer to, ultimately, empowering the Board to disregard any finding that the County failed to meet its burden of proof and remove the Sheriff anyway. The Board has betrayed its determination to remove the Sheriff and the thin show-trial it plans to stage fail utterly to meet even the faintest requirements of due process.

### 3. Denial of Due Process -- Lack of Notice, Evidentiary Safeguards, and a Fair Record

The Final Notice of Decision relied on an unsworn, untested report compiled without affording Sheriff Corpus an opportunity to present evidence, confront witnesses, or participate in an evidentiary process. No competent administrative record supports the charges or the finding of "cause." The procedure violated fundamental requirements of fair hearing. (See *Mathews v. Eldridge* (1976) 424 U.S. 319, 333; *People v. Ramirez* (1979) 25 Cal.3d 260, 269.)

This defect is illustrated by the June 17, 2025 recommendation letter submitted by Chief Probation Officer John Keene, who presided over the Pre-Removal Conference. That letter confirms that:

- The proceedings were non-evidentiary;

- The Sheriff's representatives were invited but not required to propose alternative resolutions; the letter ignores the Sheriff's attempts to negotiate with county counsel to reach a resolution;

- The Chief Probation Officer recognized that the allegations contained in the Notice of Intent were vague

- The Chief Probation Officer stated, "I found portions of their presentation compelling; covering a diverse range of topics that they felt were relevant to the matter at hand."

- The Chief Probation Officer accepted the allegations in the Notice of Intent as true without conducting any fact-finding or issuing findings of fact;

- No sworn testimony, cross-examination, or record of evidence was produced against the Sheriff.

Despite this, the Chief Probation Officer still "recommend[ed] that the proposed removal of the Sheriff … be upheld and sustained."

The recommendation contains no findings of fact, no citation to evidence, and no basis upon which the Board or a reviewing court could evaluate the decision.

This violates the rule articulated in *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, where the California Supreme Court held:

"Among other things, the availability of an adequate review record serves to instill public confidence in the administrative process. It is difficult to comprehend how a reviewing court can determine whether an agency's decision is supported by the evidence if there are no findings or an inadequate explanation of the basis for the decision." (*Id.* at p. 514.) (see also *Greene v. McElroy* (1959) 360 U.S. 474, 496.)

Similarly in *Greene v. McElroy*, the United States Supreme Court held to evaluate the reasonableness of action requires fact findings. (*Id*.) The absence of any findings bridging the evidence and outcome—as required by *Topanga* and *Greene*—underscores the due process deficiencies and confirms that the Board's Final Notice cannot be sustained on judicial review. The removal process lacks the procedural safeguards necessary for a fair and lawful administrative adjudication under state and federal law.

### 4.  Violation of the Public Safety Officers Procedural Bill of Rights Act (POBAR)

The process denied Sheriff Corpus numerous rights guaranteed by POBAR (Gov. Code §§ 3300–3313), including the right to an administrative appeal before a neutral decision-maker empowered to issue a binding ruling. The pre-removal conference was deficient, and the final vote by the same biased body initiating the charges compounds the error. (See *Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433.)

### 5.  Retroactive Application – Ex Post Facto Violation

Section 412.5 was enacted on April 18, 2025, yet the Board seeks to apply it to alleged conduct that occurred in 2024, long before section 412.5's enactment. This violates the Ex Post Facto Clauses of the U.S. and California Constitutions, which prohibit retroactive laws that impose new penalties or increase the burden of punishment for past conduct. (*Calder v. Bull* (1798) 3 U.S. 386, 390; *People v. Frazer* (2005) 21 Cal.4th 737, 754.)

Although styled as civil, removal under Section 412.5 is punitive in effect. As the Court of Appeal explained in *Hipsher v. Los Angeles County Employees Retirement Assn.* (2020) 58 Cal.App.5th 671, 688, the Ex Post Facto Clause may apply to civil legislation "where the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." Removal from office is clearly punitive. The styling of the procedures in reference to POBAR scheme, in which termination from a position is unquestionably punitive, reaffirms that section 412.5 is punitive and thus void under the

Due process requires that "individual laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (*Greene v. McElroy* (1959) 360 U.S. 474, 496.) Here, it was impossible for Sheriff Corpus to have notice of a law that had existed yet.

**6.    Unconstitutional Bill of Attainder**

Section 412.5 and its immediate enforcement against Sheriff Corpus—following extensive public statements and debate explicitly focused on her—constitute an unconstitutional bill of attainder. Section 412.5 by its own terms, sunset at the end of 2028, when Sheriff Corpus's term ends. Thus, the measure and implementing procedures are structured to impose punishment on a named official without due process, in violation of Article I, Section 9 of the U.S. Constitution and Article I, Section 16 of the California Constitution. (See *United States v. Lovett* (1946) 328 U.S. 303; *Nixon v. Administrator of General Services* (1977) 433 U.S. 425.)

**7.    Use of Vague and Overbroad Legal Standards**

The charges of "neglect of duty" and "obstruction" are not defined in Section 412.5 or the Board's procedures and were applied without objective findings. Their use fails to provide constitutionally required notice and invites arbitrary enforcement. (*Grayned v. City of Rockford* (1972) 408 U.S. 104.) along with the failure to define with section 412.5 the burden of proof, the rules of evidence, or standard of review.

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108–109.)

The lack of clarity on these terms invited and did result in the arbitrary and discriminatory enforcement of these provisions, both by the Keker firm and later Chief Probation Officer Keener. Keene's recommendation lacked any findings of fact despite stating he found some of Sheriff Corpus's arguments compelling. To affirm the recommendation of the Notice of Intent without narrowing the issues or stating findings to support his conclusion is a classic example of arbitrary and discriminatory decision making.

8. **Denial of Access to Material Evidence – Redacted Cordell Report and Related Documents**

Sheriff Corpus has repeatedly requested access to the full, unredacted version of the investigative report prepared by Judge LaDoris Cordell, as well as related documents including the County's engagement agreement with Judge Cordell. These requests remain unresolved and are the subject of an ongoing lawsuit—*Corpus v. San Mateo County Board of Supervisors et al.*, Case No. 25-CIV-02539—alleging unlawful withholding of public records under the California Public Records Act. Nonetheless, both the Board and Chief Probation Officer Keene relied heavily on the Cordell report in initiating and approving the Sheriff's removal. Denying Sheriff Corpus access to the very materials used to justify her removal violates due process.  Denying the Sheriff access to material relied upon to justify her removal is a serious due process violation. (*Greene v. McElroy* (1959) 360 U.S. 474, 496.) In *Greene v. McElroy* (1959) 360 U.S. 474, 496, the Court held that when the government's action depends on factual determinations, it must disclose the evidence it relies upon to the affected individual, so that person has a fair chance to refute it. This requirement is especially critical when the evidence comes from witness testimony, as such accounts may be unreliable or influenced by bias, hostility, or other improper motives.

The use of undisclosed materials as the foundation for adverse governmental action undermines fundamental fairness and transparency.

## II. Request for Closed Hearing

Pursuant to Section 4(5) of the Sheriff Removal Procedures, Sheriff Corpus hereby requests that the Removal Hearing be conducted in closed session, to protect the confidentiality of personnel-related records and avoid public dissemination of materials exempt from disclosure under Penal Code § 832.7 and the California Public Records Act (Gov. Code § 6254(f)).

## III. Proposed Hearing Officers

Pursuant to Section 4(6), we submit the following list of qualified retired jurists with expertise in administrative and public safety law as proposed neutral hearing officers:

- Hon. Ming W. Chin (Ret.) – Former Associate Justice, California Supreme Court

- Hon. James McBride (Ret.) – Former Presiding Judge, San Francisco County Superior Court

- Hon. Charlotte Walter-Woolard (Ret.) – Former Judge, San Francisco Superior Court

- Hon. Tani Cantil-Sakauye (Ret.) – Former Chief Justice, California Supreme Court

Each is experienced, independent, and well-suited to conduct a fair Removal Hearing in accordance with governing law and constitutional standards.

**IV. Incorporation of Ex Parte Application and Writ Petition**

Sheriff Corpus hereby incorporates by reference all factual assertions and legal arguments set forth in her verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief. Attached as She also incorporates her June 27, 2025, Ex Parte Application for Order to Show Cause and Temporary Restraining Order, filed in the same action, *Corpus v. San Mateo County Board of Supervisors et al.*, Case No. 25-CIV-04319, currently pending in San Mateo County Superior Court. These filings include, but are not limited to, constitutional and statutory challenges to Section 412.5, claims of structural bias and prejudgment, and violations of the California Public Records Act and Public Safety Officers Procedural Bill of Rights Act. True and correct copies of both the petition and the application are attached hereto for reference.

**IV. Preservation of Rights**

This appeal is submitted without waiver of any rights. Sheriff Corpus expressly reserves the right to seek judicial review under Code of Civil Procedure §§ 1085 and 1094.5, and to assert all constitutional and statutory protections through declaratory or injunctive relief in the Superior Court or any other appropriate forum. Indeed, given the broad and non-specific language of both the Final Notice of Decision to Remove and the letter of the Chief Probation Officer, the Sheriff hereby objects to any and all allegations contained therein.

Please confirm receipt of this appeal and notify us of next steps regarding the scheduling and selection of the hearing officer.

Sincerely,

MURPHY, PEARSON, BRADLEY & FEENEY

By: /s/Matthew J. Frauenfeld

Thomas P. Mazzucco
James A. Lassart
W.S. Wilson Leung
Christopher R. Ulrich
Mariah S. Cooks
Matthew J. Frauenfeld

Attorneys for Sheriff Christina Corpus

cc: Sheriff Christina Corpus
cc: John D. Nibbelin, County Attorney
cc: Keker, Van Nest & Peters LLP