1  W.S. Wilson Leung – 190939
       Wleung@mpbf.com
2  Thomas P. Mazzucco - 139758
       TMazzucco@mpbf.com
3  James A. Lassart – 40913
       JLassart@mpbf.com
4  Christopher R. Ulrich - 271288
       CUlrich@mpbf.com
5  Mariah S. Cooks – 333361
       MCooks@mpbf.com
6  Matthew J. Frauenfeld - 336056
       MFrauenfeld@mpbf.com

7

8  **MURPHY, PEARSON, BRADLEY & FEENEY**
   550 California Street, Floor 14
   San Francisco, CA 94104-1001
9  Telephone:    (415) 788-1900
   Facsimile:    (415) 393-8087

10

11  Attorneys for Plaintiff
    **SHERIFF CHRISTINA CORPUS**

12

13                  **UNITED STATES DISTRICT COURT**

14              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                     **SAN FRANCISCO DIVISION**

16

| | |
|---|---|
| SHERIFF CHRISTINA CORPUS, | Case No.: 25-CV-05962-VC |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (*EX PARTE YOUNG*, 209 U.S. 123 (1908), and 42 U.S.C. § 1983)** |
| v. | |
| DAVID CANEPA, President and Member of the San Mateo County Board of Supervisors, NOELIA CORZO, Vice-President and Member of the San Mateo County Board of Supervisors, JACKIE SPEIER, Member of the San Mateo County Board of Supervisors, RAY MUELLER, Member of the San Mateo County Board of Supervisors, LISA GAUTHIER, Member of the San Mateo County Board of Supervisors, and DOES 1-10, | Date:    TBD<br>Time:    TBD<br>Judge:   Hon. Vince Chhabria |
| Defendants. | |

## I.    INTRODUCTION

1.    Plaintiff Christina Corpus, the duly elected Sheriff of San Mateo County, brings this

action to enjoin Defendants from removing her from office via a process that, on its face, violates her federal constitutional rights to procedural and substantive due process, as well as the constitutional prohibitions against *ex post facto* punishment and bills of attainder.

2.      Elected in June 2022 and taking office on January 3, 2023, Sheriff Corpus was the first woman and first Latina to serve as Sheriff in San Mateo County. She sought to reform the Sheriff's Office by bringing its practices and policies in line with the President's Task Force on 21st Century Policing best practices and increasing diversity to reflect the communities of San Mateo County. Some members of the Sheriff's Office, however, resisted these changes and, championed by Michael Callagy, County Executive of San Mateo, caused Defendants DAVID CANEPA, NOELIA CORZO, and RAY MUELLER – three of the current members of the five-member San Mateo County Board of Supervisors – in November 2024 to call for the amendment of the San Mateo County Charter to empower the Board to remove Sheriff Corpus from office, reversing the will of San Mateo's voters.

3.      Following passage of this amendment on March 4, 2025, Defendants CANEPA, CORZO, and MUELLER, along with Defendants JACKIE SPEIER and LISA GAUTHIER, who became new Board members in 2025, promulgated procedures governing the removal of Sheriff Corpus. Yet, while these procedures theoretically provide Sheriff Corpus with two opportunities to be heard, they offer no actual meaningful opportunity to do so and provide no actual limitations on Defendants' ability to remove her. In the theater Defendants have created, they are ultimately empowered to remove her no matter what evidence is adduced at either of the hearings and no matter what the findings of the hearing officers may be. And given that Defendants CORZO and MUELLER, months prior to the commencement of the current removal proceeding, already publicly attacked Sheriff Corpus's character and declared their determination to remove her, their involvement in the removal process has tainted, and will continue to taint, the entire removal process. Defendants' effort to remove Sheriff Corpus that formally began on June 6, 2025 is nothing more than a mockery of due process and violative of the United States Constitution.

4.      Because the harm to Sheriff Corpus from Defendants' continuing violations of federal law irreparably harms her, and because the balance of equities and the public interest favor keeping Sheriff Corpus in office, Sheriff Corpus seeks the immediate issuance of an injunction barring all

Defendants from continuing to seek her removal from office under the procedures they promulgated pursuant to § 412.5 of the San Mateo County Charter, as well as barring Defendants CORZO and MUELLER from participating in *any* effort as Board members to remove Sheriff Corpus due to their express and disqualifying bias. *Ex parte Young*, 209 U.S. 123 (1908) and 18 U.S.C. § 1983.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction under 28 U.S.C. § 1331. This Court has further remedial authority under the Declaratory Judgment Act. 28 U.S.C. § 2201(a) and 2202, *et seq*.

6.    Venue properly lies within the Northern District of California because Plaintiff and all Defendants reside in the Northern District of California and a substantial part of the acts or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(1) and (2).

## III.    INTRADISTRICT ASSIGNMENT

7.    Assignment of this matter to the San Francisco Division of the Northern District of California is proper pursuant to Civil Local Rule 3-2(c)-(d) because a substantial part of the acts or omissions giving rise to this action occurred in San Mateo County.

## IV.    PARTIES

8.    Plaintiff Christina Corpus is the elected Sheriff of San Mateo County.

9.    Defendant DAVID CANEPA is a member of the five-member San Mateo County Board of Supervisors and serves as the Board's President. He is sued in his official capacity.

10.    Defendant NOELIA CORZO is a member of the San Mateo County Board of Supervisors and serves as the Board's Vice-President. She is sued in her official capacity.

11.    Defendant JACKIE SPEIER is a member of the San Mateo County Board of Supervisors. She is sued in her official capacity.

12.    Defendant RAY MUELLER is a member of the San Mateo County Board of Supervisors. He is sued in his official capacity.

13.    Defendant LISA GAUTHIER is a member of the San Mateo County Board of Supervisors. She is sued in her official capacity.

14.    DOE 1 through DOE 10 are sued under fictitious names. Plaintiff does not now know the true names or capacities of DOE 1 through DOE 10, who are responsible for the alleged violations, but

pray that the same may be alleged in this Complaint when ascertained.

## V.    FACTUAL ALLEGATIONS

**A.    The Election of Christina Corpus**

15.    In June 2022, after more than 20 years as a deputy sheriff in San Mateo County, Plaintiff Christina Corpus was elected Sheriff of San Mateo. Hers was a historic victory. Not only did she defeat a well-financed incumbent outright in the primary election with 57% of the votes cast, she was also the first woman and first Latina elected Sheriff in San Mateo. *See* "San Mateo County Elects First Latina Sheriff in California with Promises of Reform," *San Jose Mercury News*, June 10, 2022; "History Made: 2 Latinas Elected to Run Sheriff's Departments in the Bay Area," *NBC Bay Area*, June 16, 2022.

16.    Sheriff Corpus ran on a platform of reform and transparency. For instance, she advocated for greater community input into the operation of the Sheriff's Office, particularly adding representatives from the underrepresented northern, southern, and coastal regions of San Mateo County onto the Sheriff's Community Advisory Board. *See* "Christina Corpus: Changing the Culture of Law Enforcement Through Community-Based Policing and Transparency," *Redwood City Pulse*, April 28, 2022. She promised to end the Sheriff's Office's practice of voluntarily releasing immigrant detainees to Immigration and Customs Enforcement, instead, seeking to review ICE requests on a case-by-case basis and providing ICE with only those immigrants who "pose a clear and imminent threat to our community's safety." *Id.* She was concerned about the morale of rank-and-file members of the Sheriff's Office, emphasized the need to focus on the mental health of both deputies and the community, and sought to build better relationships with the community by recruiting more people of color to the Sheriff's Office and focusing on de-escalation techniques. *See id.*

17.    Sheriff Corpus assumed office on January 3, 2023, and began her transition. Typical for any newly-elected Sheriff, per her authority under the San Mateo County Charter, she made new appointments to her command staff, as well as to the management of the Sheriff's Office's civilian staff, selecting individuals for these positions of trust in whom she had confidence and who she believed were aligned with her policy goals. These positions of trust were unclassified, at-will positions not covered by California civil service protections.

18.    Consistent with her campaign promises, she directed her command staff to promulgate

1  training for deputies relating to dealing with individuals with mental health issues and funded

2  participation in the "Sojourn Project," which sent deputies and other Sheriff's Office employees to travel

3  to America's Deep South to experience the Civil Rights Movement. She also prioritized equity and

4  diversity in recruiting, such as the "30X30" program, which aimed to have 30% of Sheriff's Office

5  employees be women by 2023. *See San Mateo County Sheriff's Office FY 2023-2024 Performance*

6  *Measures*. Sheriff Corpus also sought out Dr. Lauren Gardner of John Hopkins University to train over

7  500 employees to recognize and have better outcomes with individuals on the autism spectrum and with

8  dementia.

9  **B.      Resentment to Sheriff Corpus's Reforms**

10      19.    Sheriff Corpus's staffing changes and efforts at reform generated resentment among

11  certain individuals within the Sheriff's Office. *See* ECF 29-1 (Report of Judge LaDoris Cordell ("Cordell

12  Report")) at 1 (attached without exhibits to the Declaration of W.S. Wilson Leung ("Leung Dec.") as

13  Ex. 1). Within months of taking office, Sheriff Corpus became the target of a whisper campaign accusing

14  her of corruption and seeking to undermine her.

15      20.    The principal focus of this whisper campaign was Victor Aenlle, a successful local

16  businessman with a Ph.D. and a long-serving reserve deputy with 17 years of institutional knowledge,

17  who also volunteered on Sheriff Corpus's campaign and with whom she had been friends for almost two

18  decades. Seeking a trusted staff member, Sheriff Corpus appointed Mr. Aenlle to aid in her transition

19  and, later, to supervise the civilian staff of the Sheriff's Office. Senior deputies resented Mr. Aenlle and

20  made him and Sheriff Corpus the targets of rumors.

21      21.    These rumors surfaced by roughly October 2022, when County Executive Michael

22  Callagy confronted then-Sheriff-elect Corpus, claimed he heard rumors about her and Mr. Aenlle, and

23  demanded to know if she had a romantic relationship with Mr. Aenlle. She denied this allegation, but

24  the rumors persisted.

25      22.    To get an objective view of the operations of the Sheriff's Office, Sheriff Corpus retained

26  a public safety consultancy, the Meliora Public Safety Consulting Assessment Team, to conduct an

27  outside review of the Sheriff's Office and to make any recommendations for improvement. In an almost

28  700-page report dated July 1, 2024, the Meliora team provided 298 recommendations relating

---

specifically to the various bureaus and units of the Sheriff's Office, such as the Professional Standards Bureau (handling internal affairs), the K9 Unit, Hospital Security, Bomb Squad, and the Technology Services Unit, as well as the detention centers in San Mateo County operated by the Sheriff's Office. *See* ECF 29-2 ("Meliora Report") at 2 (attached without exhibits to Leung Dec. as Ex. 2). For the Sheriff's own office, the Meliora Report made four recommendations, including, notably, one recommendation to "[a]dd one FTE civilian Director (Captain equivalent) with prior experience in overseeing both Records and Property and Evidence Bureaus and realign the bureaus and units reflected in proposed Org Chart." *Id.* at 27. This recommendation aligned with the role for which Sheriff Corpus had hired Mr. Aenlle, and for which Sheriff Corpus was accused of somehow acting corruptly.

**C.    *Casus Belli*: the Cordell Report**

23.    Unbeknownst to Sheriff Corpus, shortly after issuance of the Meliora Report, on July 10, 2024, John Nibbelin, the County Counsel of San Mateo, retained retired California state court judge LaDoris Cordell to investigate the Sheriff's Office. *See* ECF 29-1 (Cordell Report) at 1. Judge Cordell's scope was originally to "conduct a fact-finding investigation into complaints and concerns that current and former members of the Sheriff's Office have about Victor Aenlle." However, Judge Cordell's work expanded to target Sheriff Corpus directly. *See id.*

24.    By the time Judge Cordell issued her report on November 11, 2024, it had metastasized into a 400-page compendium not only claiming that Mr. Aenlle engaged in misconduct, but also accusing Sheriff Corpus of corruption, *to wit*: (1) Allegation 1: she and Mr. Aenlle had a relationship "beyond mere friendship" that created a conflict of interest, *id*. at 11-21; (2) Allegation 3: Mr. Aenlle "exceeded" or "abused" his authority and she "approved" it, *id*. at 25-40; (3) Allegation 4: she, her Executive Team, and Mr. Aenlle engaged in retaliation and intimidation, *see id*. at 40-60; (4) Allegation 14: she and Mr. Aenlle improperly issued honorary badges and identifications to civilians, *see id*. at 88-89; and (5) Allegation 15: she uttered and texted "racial and homophobic slurs" in the workplace, *id*. at 90-91.

25.    The Cordell Report lamented that "[a]s the first female/Latina Sheriff of San Mateo County, Christina Corpus could have taken the Sheriff's Office in a new and positive direction. Sadly, she has done no such thing. . . .Lies, secrecy, intimidation, retaliation, conflicts of interest, and abuses of authority are the hallmarks of the Corpus administration. This investigator takes no pleasure in

1  recommending that Sheriff Corpus step down and that Victor Aenlle's employment with the Sheriff's

2  Office be terminated immediately. Nothing short of new leadership can save this organization." *Id*. at

3  92.

4        26.    The Cordell Report was entirely one-sided and relied largely on anonymous sources

5  providing unsworn and unrecorded hearsay and rumors, *see id*. at 11-91, but Defendants DAVID

6  CANEPA, NOELIA CORZO, and RAY MUELLER seized upon it as the *casus belli* to remove Sheriff

7  Corpus from her elected office. County Executive Callagy directed that a redacted version of the Cordell

8  Report be published on his official San Mateo County web site as well as directed the sending of an

9  email publicizing it. *See* ECF 29-3 (November 12, 2024 email sent under Callagy's name) (attached to

10  the Leung Dec. as Ex. 3).

11  **D.    Defendants Seek Authority to Remove Sheriff Corpus**

12        27.    On November 12, 2024, Defendants DAVID CANEPA, NOELIA CORZO, and RAY

13  MUELLER, along with then-Board members Warren Slocum and Dave Pine, officially released the

14  Cordell Report with redactions and attached it to the agenda for the Board's November 13, 2024, special

15  meeting.[1] Defendants CANEPA, CORZO, and MUELLER, and then-Board members Slocum and Pine,

16  later adopted a resolution at the November 13, 2024 meeting that, among other things, called for Sheriff

17  Corpus to resign, released the Cordell Report to the San Mateo District Attorney's Office and the San

18  Mateo Civil Grand Jury, and "direct[ed] staff to prepare an ordinance to place before the San Mateo

19  County voters an amendment to the San Mateo County Charter to allow removal of the Sheriff by the

20  Board of Supervisors upon a finding of good cause." ECF 29-4 (November 13, 2024 Minutes of San

21  Mateo County Board of Supervisors) at 2 (attached to Leung Dec. as Ex. 4).

22        28.    During its November 19, 2024, meeting, Defendants DAVID CANEPA, NOELIA

23  CORZO, and RAY MUELLER, along with then-Board members Warren Slocum and Dave Pine, voted

24  unanimously to adopt an ordinance (later numbered 4899), calling for a special election on March 4,

25  2025, for the sole purpose of amending the San Mateo County Charter to empower the Board to remove

26  Sheriff Corpus. The proposed amendment was named "Measure A."

27

28  [1] Defendants JACKIE SPEIER and LISA GAUTHIER did not take office as members of the San Mateo County Board of Supervisors until 2025.

29.    During its December 3, 2024, meeting, at the second reading of ordinance number 4899, Defendants NOELIA CORZO and RAY MUELLER, along with then-Board members Warren Slocum and Dave Pine, voted unanimously to proceed with the Measure A special election. Defendant DAVID CANEPA was not present at this meeting.

**E.    Defendants NOELIA CORZO and RAY MUELLER Betray Their Bias**

30.    At the Board of Supervisors meetings on November 19, 2024, and December 3, 2024, as the Board considered whether to amend the County Charter to give itself the authority to remove Sheriff Corpus, Defendant NOELIA CORZO made defamatory statements on the record indicating that she had already determined that Sheriff Corpus engaged in misconduct and must be removed from office. For instance:

    a.    "There is clear evidence. There is documentation proving the corruption that is happening right now in the sheriff's office." ECF-29-5 (Transcript of November 19, 2024 Board of Supervisors meeting) at 35, lines 5-8 (attached to the Leung Dec. as Ex. 5).

    b.    "And right now we have a sheriff that does not hesitate to lie to the media, to lie to our community, to divide the Latino community as we saw from a public comment earlier today based on lies." *Id.* at 9, lines 11-14.

    c.    "I've said it to her [Sheriff Corpus] directly. I've said it at this dais before. She needs to step down. That is the right thing to do." *Id.* at 39, lines 1-3.

    d.    [Regarding the need for Sheriff Corpus to be removed] "Because people are being harmed and they are in fear. And not just fear for no reason. Actual fear. Actual validated fear." *Id.* at 36, lines 12-13.

    e.    "In time, the truth always comes out. The truth always comes out. And it is this county and this board of supervisors who will have to clean her [Sheriff Corpus's] mess." *Id.* at 37, lines 1-3.

    f.    "And right now what's happening at our sheriff's office is impacting and negatively impacting public safety." *Id.* at 6, lines 1-3.

    g.    "They [deputies who complained about Sheriff Corpus] are still working under our current sheriff and her former employee, and they are in fear. And it is our board's duty

to protect them and our community at large." *Id*. at 34, lines 23-26.

h.  [Relating to the Cordell investigation] "I have never in my seven years as an elected official seen an investigation, first of all, that has 15 allegations that are being investigated. I want people to understand how rare that is. That is not normal. And I think it speaks to the level of severity of what is happening in our sheriff's office. Twelve of the fifteen allegations were sustained." ECF 29-6 (Transcript of December 3, 2024 Board of Supervisors meeting) at 7, lines 2-9 (attached to the Leung Dec. as Ex. 6).

i.  "But at the core of this issue is the reality that our current sheriff does not understand, follow, or respect not just county policy, but basic ethics and – around conflict of – conflicts of interest and much more." *Id*. at 53, lines 12-16.

j.  "I want people to know that I have zero confidence in anything coming out of her [Sheriff Corpus's] mouth being truthful. And saying that about a law enforcement officer is really concerning." *Id*. at 56, lines 16-19.

k.  "But I do believe that our sheriff must resign. And if she doesn't and we have to move forward with this election in March, she will be responsible for the millions of dollars that it will cost our county taxpayers to hold that special election." *Id*. at 11, lines 20-25.

l.  "And her [Sheriff Corpus] admitting that to me is part of my decision making here because it is very clear to me that she is incapable of holding Victor Aenlle accountable or putting anyone else's interests before his and ultimately hers." *Id*. at 54, lines 9-13.

31.  Defendant RAY MUELLER likewise made defamatory statements at these Board meetings evincing his predetermination that Sheriff Corpus engaged in misconduct and should be removed from office. For instance:

a.  "The homophobic slurs text that she [Sheriff Corpus] went to great length to deny to the one – the night – the day we presented the report. We have the phone now and we verified she sent that text." ECF 29-5 (Transcript of November 19, 2024 Board of Supervisors meeting) at 40, lines 10-15.

b.  "It continues to strengthen as we go through all of the evidence presented. The strength of that 400-page report [the Cordell Report] is standing up." *Id*. at 40, lines 16-18.

    c.    "I no longer believe she [Sheriff Corpus] is fit to serve this county." *Id.* at 40-41, lines 24-25, 1).

    d.    "But I have to say to you I'm in that same boat. And unfortunately, the case against the sheriff continues to get stronger." *Id.* at 40, lines 5-6.

    e.    "So today's proposed charter amendment gives a voice to voters in response to the crisis to public safety created by disfunction in the San Mateo County Sheriff's Office as set forth in Judge Cordell's 400-page report." *Id.* at 2, lines 22-25.

    f.    "The proposed charter amendment – if those conditions – excuse me. Additionally, the grant of power in the charter amendment is specific to this immediate crisis as set forth –" *Id.* at 3, lines 22-26.

    g.    "So much so now that it's risen to the level that all of the sworn union personnel have voted and are unanimous. They're calling for her [Sheriff Corpus] to resign. The captains have called for her to resign. The only sworn personnel in the office who's still supporting her on record is the second undersheriff she's had." ECF 29-6 (Transcript of December 3, 2024 Board of Supervisors meeting) at 3, lines 18-24.

## F.    Hostility Generated Against Sheriff Corpus

32.    As a result of the public release of the one-sided Cordell Report, there was a rush to judgment and Sheriff Corpus was exposed to hostile and hyperbolic media coverage. For instance, one writer for the (San Mateo) *Daily Journal* opined on November 14, 2024: "It appears that getting rid of a sheriff is going to be a lot more difficult than electing one. No matter the difficulties, San Mateo Sheriff Christine Corpus has to go. As demonstrated unequivocally by the 400-page investigative report produced by retired Judge LaDoris Cordell, Corpus and her principal partner, Victor Aenlle, have engaged in a pattern of corruption, self-interest, official misconduct and bad judgment that is nearly unprecedented in this county." "Just How Will Corpus Go?", *Daily Journal*, November 14, 2025.

33.    The *Palo Alto Daily News* likewise published an editorial on February 10, 2025, stating: "The corruption by San Mateo County Sheriff Christina Corpus poses a clear and present danger, and needs to end immediately. . . .Corpus and Aenlle constantly threatened and intimated sheriff's office employees, including the deputies who put their lives on the line for the public every day, according to

1    an independent report commissioned by the Board of County Supervisors. At the same time, the report

2    said Corpus and Anelle [sic] carried on an affair, in violation of county anti-nepotism rules." "Yes on

3    Measure A: Remove Corpus ASAP," *Palo Alto Daily Post*, February 10, 2025.

4        34.    More troubling, the toxic environment created by the Cordell Report generated more than

5    just hostility in the media. On or about October 29, 2024, James Taylor, an inmate housed at the Maguire

6    Correctional Facility in San Mateo County, submitted a written grievance form, stating, "I want to do

7    something severe to Christina Corpus. I'm tired of the blatant lies she devises, and she is an incompetent

8    first class cunt!" ECF 29-7 (Taylor Grievance Form) (attached to the Leung Dec. as Ex. 7). When an

9    investigator subsequently interviewed Taylor, Taylor claimed that he had "no intention of acting on the

10   threats." ECF 29-8 (November 5, 2024 Incident Report) at 3 (attached to the Leung Dec. as Ex. 8).

11   Notably, Taylor explained that "he had read in the newspaper that Sheriff Corpus discussed safety but

12   that she had lied." *Id.*

13       35.    Then on February 18, 2025, the medical staff at Maguire Correctional Facility notified a

14   deputy that Taylor had, again, threatened Sheriff Corpus. *See* ECF 29-9 (February 18, 2025 Incident

15   Report) at 3 (attached to the Leung Dec. as Ex. 9). The deputy interviewed Taylor, who stated that he

16   "would assault Sheriff Corpus by hitting her" in the head with a utility cart or a tray rack. *Id.* This time,

17   Taylor explained that he was upset with Sheriff Corpus because he believed she was "'against the

18   LGBTQ+ community'" and repeatedly mentioned she was "against homosexuals." *Id.* Notably, one of

19   the allegations against Sheriff Corpus in the Cordell Report disclosed on November 12, 2024 was that

20   Sheriff Corpus used "racial and homophobic slurs."

21       36.    The medical staff at Maguire Correctional Facility was so concerned about Taylor's

22   threats that they sent a "Tarasoff Notification" to her, advising her that Taylor had "threatened to kill"

23   her. *See* ECF 29-10 (Tarasoff Notification) (attached to the Leung Dec. as Ex. 10).

24   **G.    Measure A is Approved and Results in § 412.5 of the San Mateo County Charter**

25       37.    Backed heavily by the Deputy Sheriff's Association (the union that represents San Mateo

26   County deputies), *see* "Early Results Show Ballot Measure to Oust Sheriff Appears Headed to Landslide

27   Victory," the *Almanac*, March 4, 2025, Measure A was approved – but, given the low voter turnout, by

28   only roughly 24.4% of registered voters, *see* March 4, 2025 Special Elections Results for San Mateo

County. Measure A's passage amended the San Mateo County Charter by creating § 412.5, empowering Defendants to remove the Sheriff for cause by a vote of four of the five Board members. Section 412.5 also allowed Defendants to promulgate procedures by which removal will be conducted. *See* ECF 29-11 (Section 412.5(c)) (attached to the Leung Dec. as Ex. 11). Tellingly, under § 412.5(e)'s sunset provision, absent further extension by voters, Defendants' authority to remove the elected Sheriff of San Mateo County will expire after December 31, 2028, *when Sheriff Corpus's term ends*.

**H.      Defendants Retreat from the Cordell Report and Shift to the Keker Report**

38.      Despite relying on the Cordell Report to attack Sheriff Corpus, push for her removal from elected office, and to justify Measure A, following the March 4, 2025 special election, Defendants stopped relying on it. Rather, Defendants retained several different law firms for the purpose of conducting further investigation of Sheriff Corpus. Given this retreat, Sheriff Corpus, through her counsel, repeatedly sought an unredacted copy of the Cordell Report and related documents and records from Defendants and the County, but these requests were repeatedly denied.

39.      The last of the parade of law firms that Defendants used to conduct further, post-Cordell Report investigation of Sheriff Corpus was Keker, Van Nest & Peters ("Keker"), which, by early June 2025, had prepared a new report of roughly 64 pages with approximately 600 additional pages of exhibits. *See* ECF 29-12 ("Keker Report") (attached without exhibits to the Leung Dec. as Ex. 12).

40.      The Keker Report differed from the Cordell Report because it did not suggest that Sheriff Corpus had a romantic relationship with Mr. Aenlle, but rather, characterized their relationship as a "close personal relationship." The Keker Report also abandoned the allegation that Sheriff Corpus made "racial and homophobic slurs." Otherwise, the Keker Report was a tribute to the Cordell Report, with some new but no more credible allegations, again based largely on the untested conclusory and hearsay statements of various witnesses, alleging broadly that Sheriff Corpus: (1) had a close personal relationship with Mr. Aenlle that led her to favor and protect Mr. Aenlle to the detriment of the Sheriff's Office; (2) acted unlawfully by authorizing the arrest of Deputy Carlos Tapia for timecard fraud and withholding material information from the investigator who conducted the criminal investigation of Deputy Tapia; (3) took retaliatory employment action against Deputy Javier Acosta, Assistant Sheriff Sean Monaghan, Captain John Philip, Lieutenant Jonathan Sebring, Sergent Jimmy Chan, and Captain

Rebecca Albin; and (4) interfered with and mismanaged the Sheriff Office's Public Standards Bureau (which is responsible for conducting internal investigations). *See id.* at 6-59. In response to inquiries from Sheriff Corpus's counsel, Keker advised that they did not place any of the witnesses they interviewed under oath, nor did they record or transcribe witness statements.

**I.    Defendants' Removal Procedures**

41.    On June 6, 2025, Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER formally adopted the Keker Report as the basis for which to remove Sheriff Corpus, which was then served on Sheriff Corpus's counsel as the foundation of its "Notice of Intent to Remove." Included in the Notice of Intent to Remove were the procedures they adopted, per § 412.5(c), for her removal. *See* ECF 29-13 ("Removal Procedures") (attached to the Leung Dec. as Ex. 13).

42.    Although the Removal Procedures promulgated by Defendants theoretically provide Sheriff Corpus with two hearings – (1) a Pre-Removal Conference and (2) a Removal Hearing – in reality, the Removal Procedures provide no meaningful limiting principles on the Board's authority to remove Sheriff Corpus nor a meaningful opportunity to be heard.

(1)    The Pre-Removal Conference

43.    The first hearing, styled as a "Pre-Removal Conference," is to be presided over by someone specified by Defendants, *i.e.*, San Mateo County's Chief Probation Officer or, if the Chief Probation Officer is unavailable, the Coroner, or, if the Coroner is unavailable, by someone else selected by Defendant DAVID CANEPA. *See id.* I.3(A). There is little guidance as to how the Pre-Removal Conference is be conducted and no guidance on what evidentiary standard should apply. Rather, I.3(C) of the Removal Procedures merely provides that, "The individual presiding over the Pre-Removal Conference shall consider the information presented at the Pre-Removal Conference and issue a recommendation, in writing, to the Board regarding whether to remove the Sheriff." Period.

44.    Even more troubling, not only are there no evidentiary standards set for the Pre-Removal Conference, the recommendation that is supposed to result from it has no meaningful impact because the Removal Procedures allow Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER simply to ignore it and proceed however they wish by a four-

fifths vote: "Upon receipt of the recommendation from the Pre-Removal Conference, the Board shall, as soon as practicable thereafter, render its decision (subject to an appeal via Removal Hearing, as set forth below) to either sustain or reject the recommendation." *Id*. I.3(D).

       (2)   <u>Appeal via Removal Hearing</u>

45.    Under the Removal Procedures, following the Pre-Removal Conference, should Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER decide to proceed with the removal of Sheriff Corpus, they must then serve upon Sheriff Corpus a "Final Notice of Decision" to remove the Sheriff, which is to provide "[t]he specific ground(s) enumerated in Section 412.5 that the Board has determined constitutes the ground(s) to remove Sheriff." *Id*. I.4(1). Sheriff Corpus can then appeal the removal decision by requesting a "Removal Hearing" before a "Hearing Officer." *Id*. I.4(2).

46.    Although superficially, the Removal Hearing provides greater procedural safeguards than the Pre-Removal Conference, upon any inspection, the Removal Hearing is no less defective than the Pre-Removal Conference.

47.    First, as with the Pre-Removal Conference, Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER have unilateral authority to handpick the Hearing Officer for the Removal Hearing. Sections I.4(6) and II.1(A) of the Removal Procedures provide that the Board is to propose a list of at least three potential neutral Hearing Officers to Sheriff Corpus and the County (represented by Keker), who each are entitled alternatively to strike a potential Hearing Officer until only one remains. The one remaining potential Hearing Officer "shall be the Hearing Officer to preside over the Removal Hearing." *See id*. II.1(B). By unilaterally determining the universe of potential hearing officers, Defendants have guaranteed that any Hearing Officer will be someone of their choosing.

48.    Second, the Removal Procedures require Sheriff Corpus, when seeking to appeal via Removal Hearing, to "provide written notice" that "must include in the request for a Removal Hearing a detailed statement of the facts and grounds for appealing the Final Notice of Decision; and that the Sheriff will be barred from raising any bases for appeal not contained therein." *Id*. I.4(3); *see* I.4(5)(A). This requirement for Sheriff Corpus to provide, in the first instance, a detailed statement of the facts and

grounds for appeal under pain of preclusion unfairly places the burden of proof on her, contrary to the Removal Procedures' own terms. *See id*. III.1(B). This burden-shifting is particularly problematic given that: (1) the allegations against her are jumbled in the long, non-specific 64-page narrative of the Keker Report; and (2) Sheriff Corpus denies the allegations and so is required affirmatively to prove negatives in order to appeal.

49.     Third, although the Removal Procedures provide some procedural safeguards for the Removal Hearing (*e.g*., right to present evidence, right to subpoena, right to impeach, *see id*. III.2(A)) as well as require the County to bear the burden of proving cause for removal by a preponderance of the evidence, *see id*. III.1(B), III.3, these safeguards ultimately mean nothing because Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER retain for themselves *absolute and final authority to remove Sheriff Corpus*. The Hearing Officer is limited only to providing an "advisory opinion" to Defendants. *See id*. I.4(8) and III.3. Ultimately, Defendants are free, with a four-fifths vote, to reject the advisory opinion of the Hearing Officer, and their "decision will be final and binding." *Id*. I.4(8). Thus, in the theater that Defendants have created, the Hearing Officer can find that the County failed to meet its burden of proving cause for Sheriff Corpus's removal, *but Defendants would still have absolute authority to ignore this finding and remove her anyway.*

(3)     The Board of Supervisors' Final Review

50.     Following the Removal Hearing and the issuance of the Hearing Officer's advisory opinion, Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER move on to their final decision. *See id*. IV.2. Without any further fact-finding, Defendants exercise plenary authority to decide whether a preponderance of the evidence supports cause for the removal of Sheriff Corpus. *See id*. IV.2(A) and (B). If Defendants choose to find cause for removal by a four-fifths vote, the Board will then prepare a "Final Decision After Removal Hearing," which, if approved by another four-fifths vote, will remove Sheriff Corpus, which will be "effective immediately and final." *Id*. IV.2(C).

**J.     The Pre-Removal Conference of June 11, 2025**

51.     Sheriff Corpus challenged the § 412.5 removal proceeding in San Mateo County Superior Court, but has, thus far, failed to get relief. To the extent that the San Mateo County Superior Cout has

1    weighed in at all, it has, without much analysis, concluded Sheriff Corpus's claims were unripe or – even

2    more erroneously – concluded that Sheriff Corpus must somehow exhaust some sort of "administrative

3    remedies" before the court will intervene.

4         52.    Accordingly, on June 11, 2025, Sheriff Corpus participated in the Pre-Removal

5    Conference, presided over by San Mateo Chief Probation Officer John Keene. During this proceeding,

6    Mr. Keene had no specific questions for Sheriff Corpus, but rather, simply directed her to tell him

7    anything she wanted him to consider in response to the Keker Report's narrative. *See* ECF 29-14

8    (Transcript of June 11, 2025 Pre-Removal Conference) at 1-2 (attached to the Leung Dec. as Ex. 14).

9    Sheriff Corpus's counsel noted that the allegations were vague and asked for a summary of the charges,

10   but neither Mr. Keene nor the attorney assisting him provided any clarification. *See id.* at 2-3. Despite

11   not being advised of the relevant issues nor being asked specific questions, over the next several hours,

12   Sheriff Corpus nevertheless endeavored to provide Mr. Keene with information for his consideration.

13        53.    Sheriff Corpus began with her background. She explained she chose to enter law

14   enforcement after being a victim of crime and being helped by law enforcement officers who "treated

15   me with respect, with dignity, with care, with compassion." *Id.* at 3. She noted the challenges of being a

16   woman in a profession populated predominantly by large white men, *see id.* at 4-5 – including the racist

17   and sexist jokes and hazing to which she was subjected, *see id.* at 5,7 – and of the difficulty of challenging

18   the political *status quo*, *see id.* at 5-7. She discussed her desire to "bring 21st century policing and . . .

19   justice to people that we are in charge of rehabilitating and taking care of." *Id.* at 8. She explained that

20   senior deputies leaked information, including personnel matters, and felt "emboldened because they feel

21   that they can go to the County Executive [Callagy]," which has "made it really hard for me to hold

22   anyone accountable. When I try to hold people accountable . . . retaliation is immediately . . . thrown out

23   there." *Id.* at 9; *see id.* at 9-10, 18. She noted that some deputies criticized her for "trying to shove woke

24   shit down people's throats," *id.* at 12, and she has not had the support of other County officials, with one

25   going so far as warning her that the County would not indemnify her if she were sued for her personnel

26   decisions, *see id.* at 13. She explained that the Sheriff's Office, as a law enforcement agency, followed

27   a strict chain of command, and that deputies were expected to follow lawful orders, even if they did not

28   like them. *See id.* at 19.

54.    Sheriff Corpus went on to explain some of the specific personnel decisions she made. She explained that she hired Mr. Aenlle to help manage the civilian employees of the Sheriff's Office, consistent with modern policing practices, because he was experienced in business, held a doctorate, and served as a reserve deputy and so was familiar with the Sheriff's Office, and because she had known him and his family for 18 years. *See id.* at 26-28. She denied any romantic relationship with Mr. Aenlle. *See id.* at 26.

55.    Sheriff Corpus also addressed some of the less vague allegations raised against her, *e.g.*: (1) she authorized the arrest of Deputy Carlos Tapia for timecard fraud only after Assistant Sheriff Matthew Fox had (a) investigated the matter, (b) conferred with Assistant District Attorney Shin-Mee Chang about it, and (c) signed a declaration attesting to probable cause; even then, she directed that Deputy Tapia be allowed to surrender discretely rather than be arrested, *see id.* at 34-38; (2) she reassigned Sergeant Jimmy Chan from the Professional Standards Bureau to the San Francisco Airport, and moved Captain Brian Philip to supervise Corrections (*i.e.*, jails), because of staffing needs, *see id.* at 39-41 (Chan); *see id.* at 43-44 (Philip); (3) she authorized an investigation of Deputy Javier Acosta because a former female intern accused him of inappropriate conduct, though Sheriff Corpus could not explain this matter fully due to concerns relating to Acosta's privacy rights, *see id.* at 38-39; and (4) she brought in Ryan Monaghan from outside the San Mateo Sheriff's Office to serve on her command staff based on the recommendation of Mike Callagy, but removed Monaghan simply because she lost confidence and trust in him, and because he failed effectively to carry out her reform agenda, *see id.* 44-47. [2] Sheriff Corpus denied engaging in any retaliation in any of these cases.

56.    Nine days later, the County provided counsel Sheriff Corpus with Mr. Keene's recommendation. *See* ECF 29-15 ("Keene Recommendation") (attached to the Leung Dec. as Ex. 15). Not surprisingly, given the lack of guidance in the Removal Procedures, the Keene Recommendation provided no clarification about the allegations against Sheriff Corpus, nor did it make any specific factual

---

[2] It is debatable whether Ryan Monaghan actually suffered any adverse personnel action. Monaghan somehow remained on the County payroll even after Sheriff Corpus removed him Assistant Sheriff until he was eventually made Chief Deputy Inspector with the San Mateo County District Attorney's Office overseeing human trafficking. Perhaps coincidentally, County funding for the human trafficking program was transferred from the Sheriff's Office to the San Mateo County District Attorney's Office this past fiscal year.

findings. *See id*. Rather, the one-page recommendation bizarrely seemed to fault Sheriff Corpus for not suggesting a resolution to the effort to remove her and merely rubber-stamped the decision to remove Sheriff Corpus:

> On June 11, 2025, I appeared at the Pre-Removal Conference . . . and the Sheriff and her representatives responded to the Notice of Intent. During the conference, I found portions of their presentation compelling; covering a diverse range of topics that they felt were relevant to the matter at hand. However, when asked to present a possible alternative resolution other than what is proposed in the Notice of Intent, none was provided. After considering the content of their presentation during the Pre-Removal Conference, and in accordance with the Removal Procedures, I found that the Sheriff's conduct, as described in the Notice of Intent, violated the for cause provisions in County Charter Section 412.5(b) as articulated in the Notice of Intent. Please consider this letter to serve as formal notice of my recommendation that the proposed removal of the Sheriff from her position as Sheriff of the County of San Mateo be upheld and sustained.
>
> In accordance with the Removal Procedures, it is my recommendation that the Board of Supervisors approve and adopt the Notice of Intent and move forward with the proposed removal action.

## K.    Appeal of the Pre-Removal Recommendation and the Removal Hearing

57.    On June 27, 2025, in accordance with the Removal Procedures, Sheriff Corpus filed her appeal and requested a Removal Hearing. In her appeal, she objected to the effort to remove her based on: (1) the explicit bias of Defendants NOELIA CORZO and RAY MUELLER; (2) the structurally flawed Removal Procedures that utterly failed to provide any meaningful due process; (3) the lack of sufficient notice, evidentiary standards, and fact-finding in the Pre-Removal Conference; (4) the denial of her rights as a peace officer under California law (*i.e.*, Gov. Code §§ 3300–3313), including her right to an administrative appeal before a neutral decision-maker empowered to issue a binding ruling; (5) the violation of the *ex post facto* prohibitions in the California and the United States Constitutions because Defendants were seeking to remove her for alleged misconduct that occurred prior to the creation of § 412.5; (6) the violation of the prohibitions against bills of attainder in the California and the United States Constitution because § 412.5 specifically targets her only and provides no judicial safeguards; (7) the vague terms and lack of specific definitions in the allegations against her; and (8) the continued denial of an unredacted copy of the Cordell Report and related documents. *See* ECF 29-16 (Sheriff Corpus Appeal) (attached to Leung Dec. as Ex. 16). Finally, given the jumbled narrative of the Keker Report, Sheriff Corpus also generally objected to "any and all allegations contained" in the Final Notice

of Decision to remove. *See id.*

58.     Sheriff Corpus also proposed four retired state court judges as potential hearing officers. Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER, however, declined to include any of them and instead, presented their own slate. Of their picks, Sheriff Corpus and the County agreed to select retired Santa Clara Superior Court Judge James Emerson as the Hearing Officer. The Removal Hearing spanned August 18-29, 20025. The parties submitted briefing on September 12, 2025, are awaiting the issuance of Judge Emerson's advisory opinion.

**L.      The Civil Grand Jury Proceeding Against Sheriff Corpus**

59.     Sheriff Corpus, however, is not facing removal from her office simply under § 412.5 by Defendants. During a Special Meeting of the Board of Supervisors on November 13, 2024, Defendants DAVID CANEPA, NOELIA CORZO, and RAY MUELLER, along with then-Board members Warren Slocum and Dave Pine, voted unanimously to refer Sheriff Corpus to the San Mateo County District Attorney's Office for criminal investigation and to the San Mateo County Civil Grand Jury for removal. *See* ECF 29-4 (Minutes of November 13, 2024 Board meeting) at 2.

60.     Normally, a California Civil Grand Jury is managed by the office of County Counsel. However, given that San Mateo's County Counsel was already pursuing Sheriff Corpus's removal under § 412.5, County Counsel Mr. Nibbelin declared his office conflicted and recused from the Civil Grand Jury proceeding. As a result – despite significant conflicts that are the subject of pending state court litigation – District Attorney Stephen Wagstaffe and his office took over management of the Civil Grand Jury and pursued a second, parallel effort to remove Sheriff Corpus via the Civil Grand Jury, pursuant to California Government Code § 3060.

61.     Thus, while defending against removal under § 412.5, Sheriff Corpus was also required to testify before the Civil Grand Jury twice, on June 20 and 23, 2025. On June 27, 2025, the Civil Grand Jury returned a four-count[3] "Accusation," ECF 29-17 (attached to the Leung Dec. as Ex. 17), seeking Sheriff Corpus's removal. These four counts essentially mirror some of the allegations set forth in the

---

[3] The Accusation appears to be misnumbered: the last count is numbered eight, when it should be seven. In addition, three of the seven counts are stricken with the word "No" written in the margin.

Keker Report but, in a pleasant surprise, actually provide more – though not necessarily sufficient – specificity, *to wit*:

> COUNT ONE: That on and between January 7, 2023 and November 13, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by committing acts that created a conflict of interest, to wit: using her position to hire and/or supervise and/or seek pay raises for Victor Aenlle with whom she had a close personal relationship that she failed to disclose, in violation of County of San Mateo's Charter Article V section 510.

> COUNT TWO: That on or about September 20, 2024, Chrisina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090 and/or Labor Code section 1102.5, to wit: terminating Assistant Sheriff Ryan Monaghan's employment for participating in Judge Cordell's investigation into complaints against Victor Aenlle by members of the Sheriff's Office.

> COUNT THREE: That on and between September 1, 2024 and November 12, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090 and/or Labor Code section 1102.5, to wit: transferring Captain Brian Philip from the Professional Standards Bureau to Corrections for refusing to serve a deficient internal affairs notice and/or ordering Captain Brian Philip to arrest Deputy Carlos Tapia.

> COUNT SIX: That on or about November 12, 2024, Christina Corpus, the duly elected Sheriff of the County of San Mateo, California, did commit willful or corrupt misconduct in office by violating San Mateo County Ordinance Code section 2.14.090, to wit: arresting Deputy Carlos Tapia in retaliation for (1) engaging in heated labor negotiations with Sheriff Corpus on August 15, 2024; and/or (2) submitting a declaration in support of a complaint filed by the Deputy Sheriff's Association against Sheriff Corpus with the Public Employee Relations Board; and/or (3) publicly announcing a no confidence vote against Victor Aenlle by the Deputy Sheriff's Association and Organization of Sheriff's Sergeants in September of 2024.

62.    The initial appearance to answer the Civil Grand Jury Accusation took place on July 15, 2025, before San Mateo County Superior Court Judge Garratt, but the matter was reassigned to Judge Mark McCannon for all further proceedings. The parties appeared before Judge McCannon twice for case management conferences, with the next appearance scheduled for September 24, 2025. Under established California law, the Civil Grand Jury Proceeding will be handled like a criminal case, *see* Cal. Government Code § 3070, including the right to a trial by jury in which the District Attorney's Office carries the burden of proving the allegations by admissible evidence beyond a reasonable doubt.

//

## VI.    *EX PARTE YOUNG*, 209 U.S. 123 (1908) AND 18 U.S.C. § 1983

63.    The Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), held that state officers may be sued in their official capacities for prospective declaratory or injunctive relief for their alleged violations of federal law. *See Coalition to Defendant Affirmative Action* v. *Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). "For *Ex parte Young* to apply, a plaintiff must point to threatened or ongoing unlawful conduct by a particular governmental officer." *Jamul Action Comm.* v. *Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020).

64.    Injunctive relief under *Ex parte Young* is a crucial tool to protect federal rights. "[T]he availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause," as "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green* v. *Mansour*, 474 U.S. 64, 68, (1985).

65.    Similarly, Title 18, United States Code, Section 1983, provides another important means to vindicate federal rights against the unlawful actions of state officials. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988).

66.    Defendants DAVID CANEPA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER, in their official capacities as officials of San Mateo County, California, have taken action under color of state law and thereby deprived, and continue to deprive, Sheriff Corpus of her federal constitutional rights.

## VII.    FIRST CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS (U.S. CONST. AMEND. XIV)

67.    Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

68.    Defendants, acting under color of state law, have violated and continue to violate Sheriff Corpus's right to procedural due process guaranteed under the Fourteenth Amendment to the United States Constitution.

//

**A.    *Sheriff Corpus Has a Liberty Interest Protected by Due Process***

69.    To bring a procedural due process claim under § 1983, a plaintiff must "show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Sandefur* v. *Lewis*, 937 F. Supp. 890, 894 (D. Az. 1996) (*quoting Zinerman* v. *Burch*, 494 U.S. 113, 125 (1990)).

70.    A plaintiff has a liberty interest against defamatory state action, that is, "if the charge [brought by the state] impairs a reputation for honesty or morality." *Matthews* v. *Harney Cnty.*, 819 F.2d 889, 892 (9th Cir. 1987). Such liberty claims are actionable under § 1983 via a procedural due process claim if the plaintiff was subjected to "stigma plus," *i.e.*, "if the state makes a charge against a plaintiff that might seriously damage his standing and associations in the community…." *Wenger* v. *Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002).

71.    Notably, the Second Circuit has held that an elected official removed for cause has a liberty interest subject to protection under procedural due process and may seek relief under § 1983. *See Velez* v. *Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (holding that elected school board member challenging her removal for cause had a liberty interest in a § 1983 claim for procedural due process).

72.    Defendants have very publicly and repeatedly accused Sheriff Corpus of engaging in corruption and misconduct, and they are seeking to remove her from her elected office as a result of these accusations. As a result of Defendants' allegations, Sheriff Corpus has been harassed, defamed, and humiliated, as well as threatened. Members of the deputies' union have threatened to protest at Sheriff Corpus's home. Defendants' actions have subjected Sheriff Corpus to stigma plus.

**B.    Defendants Have Violated and Continue to Violate Procedural Due Process**

73.    "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). Defendants' effort to remove Sheriff Corpus violates procedural due process.

74.    First, Defendants NOELIA CORZO and RAY MUELLER are biased and their participation in the removal process has already violated, and will continue to violate, Sheriff Corpus's due process rights. *See Clements* v. *Airport Auth. of Wahoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995) ("[A]

biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal.") (internal quotation marks and citations omitted); *see also Schweiker v. McClure,* 456 U.S. 188, 195 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.").

75.    Second, the allegations of misconduct brought by Defendants are unlawfully vague. Rather than present Sheriff Corpus with a specific list of allegations, like the Civil Grand Jury's Accusation, Defendants instead have simply taken the 64-page narrative of the Keker Report and presented its jumbled allegations *en masse*, without specificity.

76.    Third, the Removal Procedures require Sheriff Corpus in her appeal for a Removal Hearing to provide specific facts and grounds on which she intends to rely. Failure to provide such facts and grounds precludes claims based on those facts and grounds. This requirement effectively shifts the burden of proof onto Sheriff Corpus: in order to present her claims on appeal at the Removal Hearing, she is required, in the first instance, to muster evidence that disprove the allegations. She is placed in the Kafkaesque position of first proving a negative before she can seek to hold the County to its burden of proving the affirmative.

77.    Fourth, the Removal Procedures allow Defendants to handpick the Hearing Officer for the Removal Hearing by determining all the potential candidates. Although Sheriff Corpus is given the opportunity to strike potential Hearing Officers, the inevitable outcome is that someone unilaterally picked by Defendants will preside as the Hearing Officer.

78.    Fifth, the Removal Procedures provide no meaningful limitation on the authority of Defendants to remove Sheriff Corpus. Defendants' Removal Procedures empower them to remove Sheriff Corpus regardless of what evidence is adduced at the Removal Hearing, regardless of what the Hearing Officer finds. *Indeed, the Hearing Officer could find that the County has failed to meet its burden of establishing cause for removal, and Defendants can simply ignore such a finding and remove Sheriff Corpus anyway.* Nothing that occurs prior to Defendants' final decision matters, and so long as Defendants pay lip service to the "preponderance of evidence" standard they have set for themselves, they can do whatever they desire in the removal action that they initiated, under the processes they created, subject to no further review.

79. Sixth, even assuming that Defendants will honor in good-faith the burden of proof by a preponderance of the evidence that they have set for themselves, the Removal Procedures still fail to provide sufficient legal protections for Sheriff Corpus. California law already provides a well-established process by which to remove an elected official via the Civil Grand Jury. Under these laws, once a Civil Grand Jury returns an Accusation that sets forth with specificity the alleged misconduct of an elected official, the elected official then has a right to a jury trial applying the reasonable doubt standard before a state court judge. *See* Cal. Government Code §§ 3060 and 3070 (providing that a removal trial "shall be by a jury, and conducted in all respects in the same manner as the trial of an indictment"). In contrast, the removal process created by Defendants to wield specifically against Sheriff Corpus is simply insufficient when compared to the California Government Code. Defendants' removal process is merely window dressing for an end-run around the legal protections that California has established for the removal of elected officials.[4]

80. The entire removal proceeding apparatus set up by Defendants is a sham, is tainted by biased, provides no meaningful opportunity to be heard, and violates procedural due process.

## VIII. <u>SECOND CLAIM FOR RELIEF: VIOLATION OF SUBSTANTIVE DUE PROCESS (U.S. CONST. AMEND. XIV)</u>

81. Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

82. Defendants, acting under color of state law, have violated and continue to violate Sheriff Corpus's right to substantive due process guaranteed under the Fourteenth Amendment to the United States Constitution.

83. "To violate substantive due process, the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency." *Marsh* v. *Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (quoting *Rochin v. California,* 342 U.S. 165, 172–73 (1952)).

84. As set forth above, in their zeal to remove Sheriff Corpus from office, Defendants have set up a removal process that: (1) is tainted by bias; (2) provides inadequate due process, especially when

---

[4] Notably, Defendants could have also sought the removal of Sheriff Corpus via a well-established *political* process, *i.e.*, a recall election. For whatever reason, Defendants did not avail themselves of this path and chose instead to create a novel removal process over which they exercise total control.

compared to California Government Code §§ 3060 and 3070; and (3) is an utter meaningless sham. Regardless of the evidence adduced at the Removal Hearing, Defendants have ultimate and final authority to remove Sheriff Corpus, even if the County fails to meet its own insufficient burden of proof. This by itself shocks the conscience and offends any sense of fair play and decency.

85.    Moreover, Defendants have not been content with their own persecution of Sheriff Corpus under § 412.5. Rather, they also intentionally enlisted the aid of District Attorney Wagstaffe to pile on by using the Civil Grand Jury to pursue simultaneously her removal. Thus, Sheriff Corpus presently has to defend against not only Defendants' removal action but also against the trial initiated by the Civil Grand Jury.

86.    Defendants' campaign to remove Sheriff Corpus shocks the conscience, offends all sense of fair play and decency, and violates substantive due process.

### IX.    THIRD CLAIM FOR RELIEF: VIOLATION OF THE PROHIBITION AGAINST *EX POST FACTO* PUNISHMENT (U.S. CONST. ART. I, SEC. 10)

87.    Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

88.    Defendants, acting under color of state law, have violated and continue to violate Sheriff Corpus's right against *ex post facto* punishment under the United States Constitution.

89.    To the extent that the timing of Sheriff Corpus's alleged misconduct set forth in the Keker Report is identifiable at all, all the alleged misconduct pre-dates March 4, 2025, when § 412.5 was created via special election. Thus, none of the alleged misconduct for which Defendants now seek to remove Sheriff Corpus would have subjected her to removal at the time she allegedly committed it. Accordingly, Defendants' current effort to remove her violates the *ex post facto* prohibition of the Constitution.

### X.    FOURTH CLAIM FOR RELIEF: VIOLATION OF THE PROHIBITION AGAINST BILLS OF ATTAINDER (U.S. CONST. ART. I, SEC. 10)

90.    Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

91.    Defendants, acting under color of state law, have violated and continue to violate Sheriff

Corpus's right against being subjected to bills of attainder under the United States Constitution.

92.    "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *SeaRiver Mar. Fin. Holdings, Inc.* v. *Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (*quoting Nixon* v. *Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)).

93.    Because § 412.5 targets Sheriff Corpus specifically and no one else, and because it punishes her without the safeguards of a judicial trial, § 412.5 violates the prohibition against bills of attainder in the Constitution.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.    A declaration that the Removal Procedures promulgated by Defendants under § 412.5 are unconstitutional and invalid on their face;

2.    A declaration that Defendants' pending effort to remove Sheriff Corpus pursuant to § 412.5 is unconstitutional;

3.    A declaration that Defendants NOELIA CORZO and RAY MUELLER are biased and disqualified from any involvement in any effort by the San Mateo Board of Supervisors to remove Sheriff Corpus from office;

4.    A preliminary injunction and a permanent injunction enjoining Defendants from seeking to remove Sheriff Corpus under § 412.5;

5.    A preliminary injunction and a permanent injunction enjoining Defendants NOELIA CORZO and RAY MUELLER from any involvement in any effort by the San Mateo Board of Supervisors to remove Sheriff Corpus from office;

6.    Award Plaintiff reasonable costs and attorney fees; and

7.    Grant any other further relief that the Court deems fit and proper

//
//
//
//

---

DATED: September 15, 2025

MURPHY, PEARSON, BRADLEY & FEENEY

By: _____

W.S. Wilson Leung
Thomas P. Mazzucco
James A. Lassart
Christopher R. Ulrich
Matthew J. Frauenfeld
Mariah S. Cooks


MAYER BROWN
Tom Perez

Attorneys for SHERIFF CHRISTINA CORPUS