KEKER, VAN NEST & PETERS LLP
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
FRANCO MUZZIO - # 310618
fmuzzio@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants DAVID CANEPA,
NOELIA CORZO, JACKIE SPEIER, RAY
MUELLER, and LISA GAUTHIER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIFF CHRISTINA CORPUS,<br><br>             Plaintiff,<br><br>        v.<br><br>DAVID CANEPA, President and Member of the San Mateo County Board of Supervisors, NOELIA CORZO, Vice-President and Member of the San Mateo County Board of Supervisors, JACKIE SPEIER, Member of the San Mateo County Board of Supervisors, RAY MUELLER, Member of the San Mateo County Board of Supervisors, LISA GAUTHIER, Member of the San Mateo County Board of Supervisors, and DOES 1-10,<br><br>             Defendants. | Case No. 3:25-cv-5962-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       November 6, 2025<br>Time:       10:00 a.m.<br>Dept:       Courtroom 4, 17th Floor<br>Judge:      Hon. Vince Chhabria<br><br>Date Filed: July 15, 2025<br><br>Trial Date: Not Yet Set |

3032542

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION ................................................................... VII

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ..................................................................................................2

    A.   Following allegations of serious misconduct, voters overwhelmingly passed a ballot measure allowing the Board to remove a sheriff from office..........2

    B.   The Removal Procedures provide robust procedural protections for Plaintiff. .........................................................................................................3

    C.   Plaintiff will remain in office until the Board has made a final decision. ...............4

    D.   Plaintiff filed this lawsuit after having twice failed to obtain the same relief in San Mateo Superior Court. ....................................................................4

        1.   Plaintiff filed a similar state court complaint to stop the removal proceeding and sought a temporary restraining order.................................4

        2.   After failing to obtain relief, Plaintiff filed a federal complaint before this Court. ...........................................................................................5

        3.   Plaintiff returns, once again, to state court. ...................................................5

III. LEGAL STANDARD...........................................................................................5

IV.  ARGUMENT ........................................................................................................6

    A.   This Court lacks subject matter jurisdiction because Plaintiff's claims are not ripe for review..............................................................................................6

    B.   The Court should abstain from exercising jurisdiction in this case. ........................7

        1.   The Court should dismiss the case under the *Colorado River* doctrine, in deference to on-going and overlapping state court proceedings. ....................................................................................................7

    C.   The amended complaint fails to state a claim for relief............................................9

        1.   The Sheriff fails to state a plausible procedural due process claim............9

            a.   *Plaintiff has not alleged a cognizable liberty interest.* .................10

            b.   *Plaintiff has not alleged inadequate process.* ...............................11

        2.   The Sheriff failed to state a substantive due process claim. ......................13

        3.   Plaintiff cannot show that Section 412.5 is an unlawful ex post facto punishment.......................................................................................14

       4.     Plaintiff cannot plausibly allege that Section 412.5 is a bill of attainder...................................................................................................14

V.     CONCLUSION.................................................................................................15

3032542

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amerco v. N.L.R.B.*,
   458 F.3d 883 (9th Cir. 2006) ........................................................................6

*Ash Grove Cement Co. v. F.T.C.*,
   577 F.2d 1368 (9th Cir. 1978) ....................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................6

*Ass'n of Am. Med. Colleges v. United States*,
   217 F.3d 770 (2000) ......................................................................................7

*Chaudhry v. Aragon*,
   68 F.4th 1161 (9th Cir. 2023) ....................................................................10

*Collins v. Youngblood*,
   497 U.S. 37 (1990) ......................................................................................14

*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) ..............................................................................6, 7, 9

*Conte v. Aargon Agency, Inc.*,
   2013 WL 1907722 (E.D. Cal. May 7, 2013) ..............................................8

*Does v. Wasden*,
   982 F.3d 784 (9th Cir. 2020) ....................................................................14

*Engquist v. Oregon Dep't of Agric.*,
   478 F.3d 985 (9th Cir. 2007) ....................................................................13

*Flaxman v. Ferguson*,
   2025 WL 2424420 (9th Cir. Aug. 22, 2025) ..............................................7

*Fouts v. Warren City Council*,
   97 F.4th 459 (6th Cir. 2024), *cert. denied*, 220 L. Ed. 2d 142 (Oct. 15, 2024) ......................10

*FTC v. Cement Institute*,
   333 U.S. 683 (1948) ..............................................................................11, 12

*Garner v. Bd. of Pub. Works*,
   341 U.S. 716 (1951) ....................................................................................14

*Hawker v. New York*,
   170 U.S. 189 (1898) ....................................................................................14

*Hernandez v. Oregon Legislature,*
    521 F. Supp. 3d 1025 (D. Or. 2021) ........................................................................10

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,*
    426 U.S. 482 (1976)...............................................................................................11, 12

*Jenks v. DLA Piper (US), LLP,*
    2014 WL 3381947 (N.D. Cal. July 10, 2014) ........................................................7, 8

*Kansas v. Hendricks,*
    521 U.S. 346 (1997).....................................................................................................14

*Killgore v. City of S. El Monte,*
    860 F. App'x 521 (9th Cir. 2021) ...............................................................................12

*Kissner v. Loma Prieta Joint Union Sch. Dist.,*
    2024 WL 347911 (N.D. Cal. Jan. 30, 2024) ..............................................................10

*Lee v. State of Or.,*
    107 F.3d 1382 (9th Cir. 1997) ..................................................................................5, 6

*Leite v. Crane Co.,*
    749 F.3d 1117 (9th Cir. 2014) ......................................................................................6

*Loc. Search Ass'n v. City & Cnty. of San Francisco,*
    2013 WL 450845 (N.D. Cal. Feb. 4, 2013) ..................................................................6

*McDonald's Corp. v. Villa Canterbury Corp.,*
    1990 WL 11919 (9th Cir. Feb. 5, 1990) .......................................................................8

*Mendocino Ry. v. Ainsworth,*
    113 F.4th 1181 (9th Cir. 2024) .............................................................................7, 8, 9

*Moody v. Cnty. of Santa Clara,*
    2018 WL 646686 (N.D. Cal. Jan. 30, 2018) ..............................................................11

*Murphy v. Goss,*
    103 F. Supp. 3d 1234 (D. Or. 2015) ...........................................................................11

*Mustafa v. Clark Cnty. Sch. Dist.,*
    157 F.3d 1169 (9th Cir. 1998) ..............................................................................10, 11

*Nakash v. Marciano,*
    882 F.2d 1411 (9th Cir. 1989) ......................................................................................8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003).......................................................................................................7

*Nixon v. Adm'r of Gen. Servs.,*
    433 U.S. 425 (1977).....................................................................................................15

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-5962-VC

3032542

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ............................................................................................2

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995)..........................................................................................................15

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011) ..............................................................................................8

*Ralston v. County of San Mateo*,
   2021 WL 3810269 (N.D. Cal. Aug. 26, 2021) ...............................................................6, 7

*San Francisco Police Comm'n v. Police Comm'n of City & Cnty. of San
   Francisco*, 1996 WL 251940 (N.D. Cal. May 9, 1996)..................................................13

*Say v. Umatilla Sch. Dist. 6*,
   364 F. App'x 385 (9th Cir. 2010) ....................................................................................12

*Scottsdale Ins. Co. v. Parmerlee*,
   2020 WL 1332146 (N.D. Cal. Mar. 23, 2020)..................................................................8

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
   309 F.3d 662 (9th Cir. 2002) ......................................................................................14, 15

*Shinault v. Hawks*,
   782 F.3d 1053 (9th Cir. 2015) ..........................................................................................11

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   446 F.3d 808 (8th Cir. 2006) ..............................................................................................6

*Silva v. City of Los Gatos*,
   2021 WL 5847885 (N.D. Cal. Dec. 9, 2021) ..................................................................13

*Simpson v. Office of Thrift Supervision*,
   29 F.3d 1418 (9th Cir. 1994) ......................................................................................12, 13

*Sinclair v. City of Seattle*,
   61 F.4th 674 (9th Cir.), cert. denied, 144 S. Ct. 88 (2023) ............................................13

*Smith v. Nebraska*,
   2024 WL 3200606 (D. Neb. June 27, 2024)....................................................................10

*Texas v. United States*,
   523 U.S. 296 (1998)........................................................................................................6, 7

*Turner v. City & Cty. of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) ............................................................................................6

*U.S. v. Lovett*,
   328 U.S. 303 (1946)..........................................................................................................15

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-5962-VC

3032542

*Ulrich v. San Francisco*,
    308 F.3d 968 (9th Cir. 2002) ....................................................................................10

*United States v. Munsterman*,
    177 F.3d 1139 (9th Cir. 1999) ..................................................................................15

*United States v. Ward*,
    448 U.S. 242 (1980)...................................................................................................14

*Withrow v. Larkin*,
    421 U.S. 35 (1975).....................................................................................................13

*Wittenburg v. Russo & Steele, LLC*,
    2013 WL 12190424 (C.D. Cal. Oct. 8, 2013)............................................................9

**State Cases**

*Penrod v. Cnty. Of San Bernardino*,
    126 Cal. App. 4th 185 (2005) ...................................................................................14

**State Statutes**

Cal. Gov't Code § 25303 ...................................................................................................11

**Federal Rules**

Fed. R. Civ. Pro. § 12(b)(1) ...........................................................................................6, 7

Fed. R. Civ. Pro. § 12(b)(6) ...............................................................................................6

**Other Authorities**

San Mateo County Charter § 412.5............................................................................ *passim*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-5962-VC

3032542

1

## NOTICE OF MOTION AND MOTION

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that on November 6, 2025, at 10:00 a.m. in Courtroom 4, 17th

4  Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince

5  Chhabria, Defendants of the San Mateo County Board of Supervisors ("Defendants") will and

6  hereby do move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for an order

7  dismissing Sheriff Christina Corpus's amended complaint.

8        The issues to be decided are as follows:

9        1.   Whether Sheriff Corpus's claims are ripe for judicial review under Fed. R. Civ.

10            P. 12(b)(1) even though she can identify only a speculative, potential future injury;

11       2.   Whether this Court should decline to exercise jurisdiction under the *Colorado River*

12            doctrine;

13       3.   Whether Sheriff Corpus has failed to state a claim for relief on each of her claims

14            under Fed. R. Civ. P. 12(b)(6).

15       This motion is based upon this Notice; the following Memorandum of Points and

16  Authorities; Defendants' request for judicial notice; the complete files and records in this action;

17  the argument of counsel; and such other matters as the Court may consider.

18  Dated: September 29, 2025                    KEKER, VAN NEST & PETERS LLP

19

20                                    By:    *s/Andrew F. Dawson*

21                                           JAN NIELSEN LITTLE
                                             ANDREW F. DAWSON
22                                           FRANCO MUZZIO

23                                           Attorneys for Defendants
                                             DAVID CANEPA, NOELIA CORZO,
24                                           JACKIE SPEIER, RAY MUELLER,
                                             and LISA GAUTHIER
25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-5962-VC

3032542

# I.   INTRODUCTION

Having repeatedly failed to obtain relief from state court in a materially indistinguishable suit, Plaintiff Christina Corpus comes to this Court seeking a different outcome.  Plaintiff challenges the duly authorized procedures implemented by San Mateo County to exercise its Constitutional duty to oversee the Sheriff's office.  Pursuant to those procedures, Plaintiff has been accused of serious misconduct, and a neutral hearing officer has taken evidence and will render an opinion on those accusations.  Plaintiff would prefer that these processes cease, and she alleges that Defendants' lawful oversight obligations amount to a litany of constitutional violations.

Plaintiff is wrong, and for various reasons her amended complaint should be dismissed.

**First,** the dispute alleged in the amended complaint is not ripe, and this Court therefore does not have jurisdiction to hear it.  The ultimate injury that Plaintiff alleges—her removal as Sheriff—has not occurred and remains entirely speculative, as the administrative proceedings have not yet resulted in a final order.  Because the dispute is not ripe, the Court should dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

**Second**, even if this Court had subject matter jurisdiction, it should decline to exercise it here.  Long before filing an action in this Court, Plaintiff instituted proceedings in San Mateo County Superior Court, where she filed multiple requests for emergency relief (all denied), briefly pursued an appeal, sought reconsideration of one of that court's orders, and requested a stay.  Even after filing her amended complaint in this Court, Plaintiff continues to seek injunctive relief in state court.  Contrary to Plaintiff's allegations, the state court is actively engaged with Plaintiff's claims; in June, it denied Plaintiff's TRO request, in July it agreed (at Plaintiff's request) to specially set a motion for reconsideration of the June denial; in August, it issued an order upholding its June denial; and in September (thus far) the state court has held a case management conference, received supplemental briefing about its jurisdiction to issue interim relief, and held an hour-long hearing on Plaintiff's renewed TRO application in that forum.  Plaintiff's choice to toggle between state and federal court in search of a more favorable outcome is transparent forum shopping.  On these facts, this Court should decline to exercise jurisdiction in

this second-filed case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).

**Third**, each cause of action in the amended complaint suffers from pleading deficiencies and therefore must be dismissed under Rule 12(b)(6). Plaintiff's procedural due process claim fails because she has not alleged a cognizable liberty interest, and even if she had, the process outlined in the amended complaint is far more rigorous than the constitutional minimum. Her substantive due process claim fails because there is no due process right to be free from the threat of removal. Plaintiff's claims under the *ex post facto* and bill of attainder clauses fail because both clauses apply only to proceedings akin to criminal punishment, not local government oversight functions mandated by the California Constitution.

For these reasons, this Court should grant Defendants' Motion to Dismiss.

## II.    BACKGROUND

### A.    Following allegations of serious misconduct, voters overwhelmingly passed a ballot measure allowing the Board to remove a sheriff from office.

On January 3, 2023, Christina Corpus became the Sheriff of San Mateo County. Since assuming office, her tenure has been defined by controversy and allegations of wrongdoing. In late 2024, the Honorable LaDoris H. Cordell (Ret.) submitted a 92-page investigative report to the San Mateo County Board of Supervisors (the "Board") finding that Plaintiff had engaged in substantial misconduct. ECF 1-1 at 31, 97–98.[1]

On December 3, 2024, the Board submitted a measure to San Mateo County voters to amend the County Charter to allow the Board to remove a sheriff from office for cause ("Measure A"). On March 4, 2025, San Mateo County residents passed Measure A, adding Section 412.5 to the San Mateo County Charter, by a margin of 84% to 16%. ECF 1-2 at 126.

Section 412.5 specifies that the Board "may remove a Sheriff from office for cause, by a four-fifths vote" and states five grounds that can qualify as "cause" for removal. ECF 1-2 at 182.

---

[1] The Court may consider the Plaintiff's exhibits and declarations incorporated its complaint in resolving this motion. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.").

1   It also authorizes the Board to adopt procedures governing any removal proceeding to determine

2   whether such cause exists.  *Id.*  Assisted by outside counsel and with input from Plaintiff's

3   counsel, the Board adopted final removal procedures on May 6, 2025.  *See* ECF 1-2 at 182–90.

4       **B.**    **The Removal Procedures provide robust procedural protections for Plaintiff.**

5   On June 5, 2025, pursuant to the Removal Procedures, the Board approved and submitted

6   a statement of the alleged grounds for Plaintiff's removal—the "Notice of Intent to Remove the

7   Sheriff" ("NOI").  ECF 1-2 at 183 (§ I.2).[2]  The NOI is the product of an independent

8   investigation completed by the undersigned counsel based on interviews of more than 40

9   witnesses.  *Id.* at 116–180.  It describes in detail the factual allegations and legal grounds

10  supporting Plaintiff's removal under Section 412.5.  *Id.*  These allegations include that Plaintiff:

11  (1) engaged in a pattern of retaliation against Sheriff's Office personnel, including the false arrest

12  of the deputy sheriff's union leader and termination of an assistant sheriff after he agreed to an

13  interview with Judge Cordell; (2) violated conflict of interest laws by hiring and promoting an

14  unqualified civilian with whom she had a close personal relationship; and (3) mismanaged and

15  neglected internal investigations into allegations of misconduct within her office.  *Id.*  Although

16  the NOI reaches similar conclusions, it does not do so in reliance on Judge Cordell's report or any

17  of its findings.  *Id.* at 126.

18  Pursuant to the Removal Procedures, Plaintiff attended a pre-removal conference on June

19  11, 2025, before the County's Chief Probation Officer, John Keene, and had "an opportunity to

20  respond to the allegations" in the NOI.  ECF 1-2 at 183 (§ I.3).  Plaintiff provided her own

21  (unsworn) testimony, which Chief Keene considered.  *Id.* at 192–251.  He found Plaintiff's

22  conduct "violated the for-cause provisions in . . . Section 412.5(b) as articulated in the [NOI]."

23  *Id.* at 253.  He recommended "the Board of Supervisors approve and adopt the [NOI] and move

24  forward with the proposed removal action."  *Id.*  On June 24, 2025, the Board passed a resolution

25  sustaining his recommendation to remove Plaintiff from office under Section 412.5, subject to the

26  Sheriff's right to appeal.  *See id.* at 255.

27

28  _____
    [2] Unless otherwise indicated, internal punctuation, footnotes, and citations were omitted from,
    and any emphases were added to, quotations.

On June 27, 2025, Plaintiff submitted an appeal of the Board's decision, triggering a two-week evidentiary hearing before a neutral hearing officer.  ECF 48, ¶ 57; ECF 1-2 at 186 (§ II).  Plaintiff agreed to the Honorable James C. Emerson (Ret.) to serve as the hearing officer, and the hearing occurred as scheduled from August 18 to 29, 2025.  ECF 48, ¶ 58.  The County bore the burden of proof, and Plaintiff was entitled to present and cross-examine witnesses at the hearing.  ECF 1-2 at 186 (§ III.1, III.2).  Judge Emerson has 45 days after the hearing to issue a written opinion on whether cause exists to remove Plaintiff.  *Id.* at 187 (§ III.3).  The Board must consider Judge Emerson's written opinion before it issues a "Final Decision" as to whether to remove Plaintiff.  *Id.* at 188 (§ IV).

**C.    Plaintiff will remain in office until the Board has made a final decision.**

Throughout the administrative process, Plaintiff remains in office and is receiving her full salary.  Only if the Board makes the "Final Decision After Removal Hearing," following the evidentiary hearing before Judge Emerson, would Plaintiff be removed from office.  *Id.* at 188 (§ IV.2.C).

**D.    Plaintiff filed this lawsuit after having twice failed to obtain the same relief in San Mateo Superior Court.**

**1.    Plaintiff filed a similar state court complaint to stop the removal proceeding and sought a temporary restraining order.**

On June 9, 2025, Plaintiff filed a petition for writ of mandate and a complaint for declaratory and injunctive relief in San Mateo Superior Court seeking a temporary restraining order ("TRO") or stay prohibiting "the Board from enforcing or acting under the Notice of Intent to Remove."  *See* Declaration of Andrew Dawson in Support of Motion to Dismiss ("Dawson Decl."), Ex. A.  In that complaint, Plaintiff raised identical federal law claims as she raises here, including that the Removal Procedures violate her purported federal due process rights under the Fourteenth Amendment and that Section 412.5 is an ex post facto law and bill of attainder under Article 1, Section 10, of the U.S. Constitution.  *Id.* at 5–7.  On June 9, as conceded by Plaintiff, the Honorable Nicole S. Healy heard Plaintiff's TRO application and denied it orally from the bench, ruling that the application was premature and not ripe because Plaintiff had not completed the administrative process.  ECF 23, at 15–16.

On June 27, 2025, undeterred by her initial failure, Plaintiff filed another TRO application in the San Mateo Superior Court, again seeking to enjoin the Board from scheduling or conducting any removal hearing." Dawson Decl., Ex. B. The second TRO request again relied on the same claims that she raises in this Court. *Id.* at 18-27. On June 27, the Honorable Nina Shapirshteyn, like her colleague Judge Healy a few weeks earlier, denied the application. Dawson Decl., Ex. C. Judge Shapirshteyn held the application was "not ripe, because an administrative appeal is available and [Sheriff Corpus] has not exhausted administrative remedies." *Id.*

On July 10, 2025, Plaintiff filed a motion for reconsideration of Judge Shapirshteyn's order, arguing that she need not exhaust the administrative process. Dawson Decl., Ex. D. Judge Shapirshteyn denied this motion in an uncontested tentative ruling on August 14, 2025. Dawson Decl., Ex. E.

### 2.  After failing to obtain relief, Plaintiff filed a federal complaint before this Court.

On July 15, 2025, having failed twice to obtain her desired injunctive relief in state court, Plaintiff filed this federal action. As in her state court petition, she once again alleges here that the Board's Removal Procedures violate due process under the U.S. Constitution, and that Section 412.5 constitutes an ex post facto law and bill of attainder. And, as in state court, Plaintiff's request for injunctive relief from this Court was denied. ECF 45.

### 3.  Plaintiff returns, once again, to state court.

On September 15, the same day she filed her amended complaint before this court, Plaintiff filed a Motion to Stay/Enjoin Enforcement of Removal to Preserve Status Quo Pending Judicial Review in state court. Dawson Decl., Ex. F.

## III.  LEGAL STANDARD

"In order to ensure that a federal court's Article III power has been properly invoked, the courts have developed several doctrines, including standing, mootness, and ripeness, each of which imposes a different requirement on the substance of a plaintiff's claim." *Lee v. State of Or.*, 107 F.3d 1382, 1387 (9th Cir. 1997). "The basic rationale of the ripeness doctrine is to

prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* A matter "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed . . . at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Plaintiff has the burden of establishing that a matter is ripe; an unripe claim must be dismissed under F.R.C.P. 12(b)(1). *See Ralston v. County of San Mateo*, 2021 WL 3810269, at *3 (N.D. Cal. Aug. 26, 2021); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Even if a plaintiff can establish subject matter jurisdiction, courts have acknowledged various circumstances in which a court should nevertheless decline to exercise jurisdiction. Under the *Colorado River* doctrine, federal courts may stay or dismiss a suit in deference to a parallel concurrent state proceeding to avoid wasting judicial resources. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).

Lastly, dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    This Court lacks subject matter jurisdiction because Plaintiff's claims are not ripe for review.

This Court lacks subject matter jurisdiction to hear the Sheriff's claims because they are unripe. Plaintiff remains in office as Sheriff during the pendency of the administrative proceedings.[3] It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Amerco v. N.L.R.B.*, 458 F.3d 883, 888 (9th Cir. 2006). Moreover, a plaintiff cannot

---

[3] "Jurisdictional issues such as standing and ripeness are determined at the time the lawsuit was filed." *Loc. Search Ass'n v. City & Cnty. of San Francisco*, 2013 WL 450845, at *3 (N.D. Cal. Feb. 4, 2013) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 814 (8th Cir. 2006)).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:25-cv-5962-VC

3032542

get relief for an injury that has not occurred and, indeed, may never occur.  A matter "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed . . . at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Flaxman v. Ferguson*, 2025 WL 2424420, at *3 (9th Cir. Aug. 22, 2025) ("Constitutional ripeness equates with Article III's injury-in-fact requirement for standing.").

Here, the amended complaint does not and cannot cite an actual injury because the administrative proceedings are still underway, and Plaintiff remains in her job.  As the amended complaint alleges, Plaintiff has exercised her right to an administrative appeal, and a two-week evidentiary hearing was conducted between August 18 and 29 before Judge Emerson.  ECF 48, ¶ 58.  Judge Emerson has not yet issued his opinion.  *Id.*  Only after the Hearing Officer issues his report, and *if* the Board makes a final decision to remove will Plaintiff's removal be "immediate[] and final."  ECF 1-2 at 188 (§ IV.2(C)); *see* ECF 48 ¶ 50.  Because the amended complaint cannot allege facts related to such a final decision, the dispute it articulates is not ripe for review.  *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 781 (2000); *see Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003).  Dismissal is therefore required under F.R.C.P. 12(b)(1).  *See Ralston*, 2021 WL 3810269, at *3.

## B.    The Court should abstain from exercising jurisdiction in this case.

### 1.    The Court should dismiss the case under the *Colorado River* doctrine, in deference to on-going and overlapping state court proceedings.

Even if this Court had subject matter jurisdiction, it should decline to exercise it and dismiss this second-filed case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).  Dismissal is proper under *Colorado River* when concurrent state and federal proceedings involve the same issues, and the plaintiff first filed in state court.  *See Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1188 (9th Cir. 2024); *Jenks v. DLA Piper (US), LLP*, 2014 WL 3381947, at *9 (N.D. Cal. July 10, 2014) (Chhabria, J.).  Courts consider an eight-factor balancing test to determine whether a dismissal or a stay is justified, including:

(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court

proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Mendocino*, 113 F.4th at 1188.  These factors are applied in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.*

These factors overwhelmingly favor dismissal here.  There are concurrent federal and state proceedings that involve the exact same subject matter.  Dawson Decl., Ex. A.  The parties are functionally identical—the plaintiff in both cases is Sheriff Corpus, and the defendants in both cases are the San Mateo County Board of Supervisors.  The relief sought is also identical: an injunction halting the Section 412.5 removal process on constitutional grounds.  Plaintiff continues to vigorously pursue this relief in both forums.  Dawson Decl., Ex. F.  Allowing "different tribunals [to] consider the same issue, thereby duplicating efforts and possibly reaching different results," would result in piecemeal litigation.  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011); *see also Scottsdale Ins. Co. v. Parmerlee*, 2020 WL 1332146, at *5 (N.D. Cal. Mar. 23, 2020) (where "both courts will address the same issue," the "significant risk of duplication of effort . . . weighs heavily in favor of deferring to the state court.").

Most significantly, Plaintiff has engaged in obvious forum shopping by first seeking relief in San Mateo Superior Court and then, only after being denied twice, filing a complaint in federal court asserting the same claims.  She does not hide her forum shopping, alleging in her amended complaint that her filings in state court have "failed to get relief," and (inaccurately) that the state court concluded "without much analysis" that her claims were not ripe given her failure to exhaust her administrative remedies.  ECF 48 ¶ 51.  Although Plaintiff "has become dissatisfied with the state court and now seeks a new forum for [her] claims," this Court should have "no interest in encouraging this practice."  *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989); *see also McDonald's Corp. v. Villa Canterbury Corp.*, 1990 WL 11919, at *3 (9th Cir. Feb. 5, 1990) (same); *Conte v. Aargon Agency, Inc.*, 2013 WL 1907722, at *5 (E.D. Cal. May 7, 2013) ("The 'reactive nature' of the federal litigation is quite clear" when the plaintiff has "filed her federal action shortly after the state court's [adverse] ruling.").  "[I]t would be unseemly under these circumstances for a federal court to jump into this litigation." *Jenks*, 2014 WL 3381947, at

3032542

*9 (dismissing under *Colorado River* and reasoning that the plaintiff had "put this dispute under the jurisdiction of the state court system at the outset").

Plaintiff's forum shopping is particularly egregious given that, even after disparaging the state court's processes and seeking (unsuccessfully) injunctive relief in this Court, she has once again returned to state court to seek parallel injunctive relief.  Dawson Decl., Ex. F.

None of the remaining factors meaningfully affect the analysis.  There is no property at stake in the litigation rendering the first factor inapplicable.  *See Mendocino*, 113 F.4th at 1188. The San Mateo Superior Court and this Court are within 40 miles of each other, making the second factor neutral.  *Id.*  And while Plaintiff's claims arise under the federal Constitution, where "state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant."  *Id.* at 1190.  Balancing the factors in a "pragmatic, flexible manner," *id.* at 1188, the balance here clearly favors deference to the state proceeding and dismissal of the federal case.[4]

### C.    The amended complaint fails to state a claim for relief.

Even if this Court had jurisdiction and chose to exercise it, the amended complaint still must be dismissed for failure to state a claim.  The amended complaint alleges four claims arising under the U.S. Constitution.  Analysis of the elements of each of these claims reveals that Plaintiff has failed to allege sufficient facts to state a plausible claim for relief.

### 1.    The Sheriff fails to state a plausible procedural due process claim.

The amended complaint asserts a single theory of alleged due process violation: the so-called "stigma plus" doctrine related to alleged defamation by state actors.  ECF 48, ¶¶ 69–71. But as explained below, Plaintiff fails to allege sufficient facts establishing a protected liberty interest under this doctrine.  And even if she did, she does not and cannot allege that the process she has received is inadequate.  On the contrary, the amended complaint and the documents incorporated by reference reflect that Plaintiff has received far more process than the constitutional minimum.

---

[4] Although courts often stay cases rather than dismiss them under *Colorado River*, dismissal is appropriate where the plaintiff has engaged in forum-shopping.  *See Wittenburg v. Russo & Steele, LLC*, 2013 WL 12190424, at *9 (C.D. Cal. Oct. 8, 2013).

### a. *Plaintiff has not alleged a cognizable liberty interest.*

As developed by courts, the stigma-plus doctrine recognizes a cognizable liberty interest only in very narrow circumstances. The Ninth Circuit has held that a plaintiff asserting a liberty interest under the stigma-plus doctrine must satisfy three elements: (1) the government has disclosed a stigmatizing statement, (2) the plaintiff contests the accuracy of the statement, and (3) the statement is made in connection with the denial of "some more tangible interest such as employment." *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 (9th Cir. 2023). The third requirement is critical. "[H]arm to reputation alone is insufficient to implicate an individual's liberty interest." *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998); *see also Ulrich v. San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).[5]

First, Plaintiff cannot allege that the statements she cites in her complaint as defamatory were connected to a denial of a tangible employment interest. The bulk of the allegedly defamatory statements cited by Plaintiff were allegedly made by two supervisors in November and December 2024—several months before the Board even had state-law authority to initiate removal proceedings. These statements are too attenuated from a potential removal to support her claim. *See Kissner v. Loma Prieta Joint Union Sch. Dist.*, 2024 WL 347911, at *12 (N.D. Cal. Jan. 30, 2024) (disclosures months before termination too temporally attenuated).

Second, Plaintiff fails to allege denial of a tangible interest in employment. Plaintiff will continue as Sheriff of San Mateo County while her administrative appeal is pending. The complaint fails to plausibly allege evidence that four of the five Board members will "certainly" remove her at the end of the administrative process—which includes the two-week evidentiary hearing and factual and legal findings by a neutral hearing officer—and thus her claim fails as a matter of law. *See Hernandez v. Oregon Legislature*, 521 F. Supp. 3d 1025, 1036 (D. Or. 2021) (elected official had not suffered "denial of a tangible interest" where the legislature had not yet

---

[5] The only protected interest alleged in the amended complaint is a liberty interest under the stigma-plus doctrine. Courts have repeatedly held that an elected official has no protected property interest in remaining in office. *See, e.g.*, *Fouts v. Warren City Council*, 97 F.4th 459, 469 (6th Cir. 2024), *cert. denied*, 220 L. Ed. 2d 142 (Oct. 15, 2024) ("[F]ederal law confirm[s] that there is no property interest in holding public office."); *Smith v. Nebraska*, 2024 WL 3200606, at *7–*8 (D. Neb. June 27, 2024) (removed sheriff had "no protected property interest in his elected position").

10

3032542

1   voted to remove him and he had not shown removal was predetermined); *Murphy v. Goss*, 103 F.

2   Supp. 3d 1234, 1241 (D. Or. 2015) ("Because there was no termination of Plaintiff's

3   employment, he fails to plead a constitutionally-protected employment deprivation.").

### b.    *Plaintiff has not alleged inadequate process.*

5   Even if Plaintiff had alleged a cognizable interest, the amended complaint reflects that the

6   process afforded to her is more than adequate.  Due Process in this context affords a plaintiff

7   "notice and a hearing to clear [her] name," but there are otherwise "no hard and fast

8   requirements." *Moody v. Cnty. of Santa Clara*, 2018 WL 646686, at *7 (N.D. Cal. Jan. 30, 2018);

9   *see also Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) ("Due process is a flexible

10  concept that varies with the particular situation.").

11  The removal proceedings far surpass these requirements.  Plaintiff has participated in a

12  pre-removal conference before Chief Probation Officer Keene, and she has been afforded a two-

13  week public evidentiary hearing before Judge Emerson, during which she presented evidence,

14  subpoenaed witnesses, and cross-examined the witnesses who testified against her.  ECF No. 1-2

15  at 186, 192–251.  The media extensively covered the testimony of the Sheriff and of witnesses

16  who she called to testify.  She cannot claim that such a process failed to provide an **opportunity**

17  to clear her name.  *See Mustafa*, 157 F.3d at 1179 (no deprivation of liberty interest where public

18  employee was given opportunities at pre-deprivation hearing and arbitration to clear his name).

19  Additionally, Plaintiff's conclusory allegation that two supervisors are biased against her

20  is unavailing.  There is a presumption of "honesty and integrity in policymakers with

21  decisionmaking power," especially where the state legislature confers that authority.  *Hortonville*

22  *Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497 (1976).  Article XI, section 4

23  of the California Constitution requires charter counties to establish procedures for the

24  "compensation, terms and removal" of elected sheriffs.  California Government Code § 25303

25  tasks boards of supervisors with overseeing county officials.

26  The Board's prior statements regarding the Sheriff's performance following an initial

27  investigation were within its proper oversight role and do not prevent it from overseeing the

28  removal process.  The Supreme Court's decision in *FTC v. Cement Institute*, 333 U.S. 683 (1948),

11

is instructive.  There, the Court rejected claims of bias and prejudgment against FTC members who had previously testified before Congress that a cement pricing practice was illegal and later presided over an administrative proceeding on the same issue.  *Id.* at 700–01.  Because members' prior statements were based on "official investigations" conducted within the scope of their oversight duties, the members were not disqualified from acting as adjudicators in the administrative proceeding.  *Id.* at 701–03; *see also Hortonville Joint Sch. Dist. No. 1*, 426 U.S. at 491–92 (state school board's prior involvement in dispute with striking teachers did not bar it from making dismissal decisions related to strike).

Likewise, in *Say v. Umatilla Sch. Dist. 6*, 364 F. App'x 385 (9th Cir. 2010), the Ninth Circuit rejected a superintendent's due process claim based on the school board's alleged bias, explaining the board's "view about [his] performance"—which it developed before initiating termination proceedings—"was inevitable" because "it was [the board's] responsibility to monitor him."  *Id.* at 386; *see also Killgore v. City of S. El Monte*, 860 F. App'x 521, 522–523 (9th Cir. 2021) (councilmember's statements on plaintiff's criminal history before council vote on permit were relevant to vote and did not render council impermissibly biased).  The same is true here: the Supervisors' fulfillment of their public responsibility to monitor Plaintiff cannot render them improperly biased.

Moreover, the Removal Procedures interpose a neutral factfinder entirely independent of the Board to preside over the Removal Proceedings, which further bolsters the fairness of the procedures afforded to Plaintiff.  ECF 1-2 at 182–90.  As noted above, Judge Emerson is charged with preparing an initial recommendation regarding removal, and the Board is obligated to consider that recommendation before making a "Final Decision."  *See supra* Section II.B.  Courts have repeatedly approved of this structure as neutralizing concerns regarding bias.  For example, in *Ash Grove Cement Co. v. F.T.C.*, the Ninth Circuit rejected a due process challenge to a decision made by the FTC, relying in part on the fact that "[e]xtensive independent evidence was introduced before the administrative law judge and was available upon review by the Commission."  577 F.2d 1368, 1377 (9th Cir. 1978).  So too in *Simpson v. Office of Thrift Supervision*, the Ninth Circuit rejected a due process challenge to a decision made by the Director

3032542

1  of the Office of Thrift Supervision, noting that the plaintiff had been "entitled to a hearing before

2  an ALJ before it reaches the Director for review," and further observing that the plaintiff "makes

3  no claim that the ALJ was biased."  29 F.3d 1418, 1424 (9th Cir. 1994).

4        Nor do the Board's investigatory and adjudicatory functions render the Removal

5  Procedures constitutionally suspect.  The Supreme Court and Ninth Circuit courts have long

6  recognized that administrative bodies routinely incorporate both functions without violating due

7  process.  *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (holding that dual investigatory and

8  adjudicative role of administrative body did not violate due process); *San Francisco Police*

9  *Comm'n v. Police Comm'n of City & Cnty. of San Francisco*, 1996 WL 251940, at *6 (N.D. Cal.

10  May 9, 1996) (dismissing procedural due process claim challenging a police commission's

11  initiation of an investigation in a misconduct case that it ultimately adjudicated).

### 2.    The Sheriff failed to state a substantive due process claim.

13        The Sheriff also fails to plausibly state a substantive due process claim due to

14  infringement of a protected interest.  Generally, "only official conduct that shocks the

15  conscience" establishes a substantive due process violation.  *Sinclair v. City of Seattle*, 61 F.4th

16  674, 680 (9th Cir.), cert. denied, 144 S. Ct. 88 (2023).  Plaintiff alleges nothing that could

17  possibly meet this standard.

18        Application of the Due Process Clause to claims alleging wrongful loss of employment is

19  limited "to extreme cases, such as a government blacklist, which when circulated or otherwise

20  publicized to prospective employers effectively excludes the blacklisted individual from his

21  occupation, much as if the government had yanked the license of an individual in an occupation

22  that requires licensure."  *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997–98 (9th Cir.

23  2007).  The Sheriff's complaint fails to allege—nor could it plausibly allege—that the removal

24  proceeding will preclude her from securing future employment, and her substantive due process

25  claim fails as a result.  *See Silva v. City of Los Gatos*, 2021 WL 5847885, at *2 (N.D. Cal. Dec. 9,

26  2021) (dismissing where defendants had not "destroyed" the plaintiff's "freedom to take

27  advantage of other employment opportunities.").

28

1

2

### 3.     Plaintiff cannot show that Section 412.5 is an unlawful ex post facto punishment.

3

4

5

6

7

8

9

10

The U.S. Constitution's prohibition on ex post facto laws applies almost exclusively to criminal statutes. *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("[T]he constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender."); *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997) ("The *Ex Post Facto* Clause . . . has been interpreted to pertain exclusively to penal statutes."). The prohibition only applies to civil laws under rare circumstances where the law is intended to punish, or its effects are "so punitive" as to override legislative intent. *United States v. Ward*, 448 U.S. 242, 248–49 (1980). Section 412.5, a civil law with no punitive intent, does not satisfy either of these conditions.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Courts presume laws are constitutional, and "only the clearest proof" suffices to show otherwise. *Does v. Wasden*, 982 F.3d 784, 791 (9th Cir. 2020); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002). Oversight laws establishing a process to evaluate fitness for office do not constitute punishment. *See Garner v. Bd. of Pub. Works*, 341 U.S. 716, 722 (1951) ("We are unable to conclude that punishment is imposed by a general regulation which merely provides standards of qualification and eligibility for employment."); *Hawker v. New York*, 170 U.S. 189, 197 (1898) (rejecting an ex post facto challenge to law barring felons from practicing medicine). Section 412.5 does not determine guilt or impose punishment—it authorizes the Board to remove any sheriff for cause based on five enumerated categories of misconduct. Removal from office is not punishment at all, but rather implementation of the California Constitution's requirement that a county's charter "provide for the 'compensation, terms ***and removal*'** of the sheriff." *Penrod v. Cnty. Of San Bernardino*, 126 Cal. App. 4th 185, 190 (2005) (quoting Cal. Const. art. XI, § 4). The County's exercise of this Constitutional command falls squarely within its oversight function and has no criminal implication whatsoever. Plaintiff fails to allege facts to the contrary.

26

### 4.     Plaintiff cannot plausibly allege that Section 412.5 is a bill of attainder.

27

28

Plaintiff also claims that Section 412.5 is a bill of attainder because it "targets Sheriff Corpus specifically and no one else," and "it punishes her without the safeguards of a judicial

1    trial."  ECF ¶ 93.  The Bill of Attainder Clause forbids legislation that targets and imposes

2    punishment on a *specific* individual without a judicial trial, but a law does not become a bill of

3    attainder merely because it is applied to a single person; it must also determine guilt and impose

4    punishment.  *See SeaRiver*, 309 F.3d at 668; *U.S. v. Lovett*, 328 U.S. 303, 316 (1946); *Plaut v.*

5    *Spendthrift Farm, Inc.*, 514 U.S. 211, 238 n.9 (1995).  While the allegations of misconduct

6    surrounding Sheriff Corpus exposed the need for greater oversight of the Sheriff's Office, section

7    412.5 does not specifically target Sheriff Corpus.  It applies to *any person* occupying the office

8    who engages in serious misconduct.  If Sheriff Corpus resigns or is removed from office, the new

9    sheriff will also be subject to section 412.5.  Where, as here, a law applies to a generally defined

10   class, it is not viewed as targeting a specific individual.  *See SeaRiver*, 309 F.3d at 670-671

11   (2002) ("When a statute's retrospective impact on an individual or group is tied to a prospective

12   risk to a larger and more generally defined class, that prospective and generalized effect tempers

13   the concerns of "tyranny" by the "multitude" that motivated the inclusion of the Bill of Attainder

14   Clause."); *see also United States v. Munsterman*, 177 F.3d 1139, 1142 (9th Cir. 1999) ("[N]ot

15   every law the effect of which is to disable some persons or groups is a bill of attainder.").

16          Even if Section 412.5 targeted Sheriff Corpus specifically—and it does not—that fact

17   would not be dispositive because, as with ex post facto laws, a bill of attainder must also impose

18   punishment.  However, as discussed above, removal from elected office for misconduct does not

19   demonstrate legislative intent to punish, nor does a legislature punish a sheriff by establishing

20   removal procedures.  *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475–77 (1977) (finding

21   challenged law was not a bill of attainder because it did not enforce historically recognized

22   punishment).  The *SeaRiver* case Sheriff Corpus relies on in her amended complaint further

23   supports that Section 412.5 is presumptively constitutional and weighs against Plaintiff's

24   assertion that Section 412.5's sunset clause indicates it is a bill of attainder because it coincides

25   with the end of Plaintiff's term.  *See SeaRiver*, 309 F.3d at 669, 673 (finding the challenged

26   statute was not a bill of attainder because it "d[id] not inflict punishment" on the targeted entity).

27   **V.      CONCLUSION**

28          For the foregoing reasons, the Defendants' Motion to Dismiss should be granted.

3032542

1    Dated: September 29, 2025                    KEKER, VAN NEST & PETERS LLP

2

3                                          By:    s/Andrew F. Dawson
                                                  JAN NIELSEN LITTLE
4                                                 ANDREW F. DAWSON
                                                  FRANCO MUZZIO
5
                                                  Attorneys for Defendants
6                                                 DAVID CANEPA, NOELIA CORZO,
                                                  JACKIE SPEIER, RAY MUELLER,
7                                                 and LISA GAUTHIER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28