Thomas P. Mazzucco - 139758
   TMazzucco@mpbf.com
James A. Lassart – 40913
   JLassart@mpbf.com
Christopher R. Ulrich - 271288
   CUlrich@mpbf.com
Matthew J. Frauenfeld - 336056
   MFrauenfeld@mpbf.com
Mariah S. Cooks – 333361
   MCooks@mpbf.com
W.S. Wilson Leung – 190939
   Wleung@mpbf.com
**MURPHY, PEARSON, BRADLEY & FEENEY**
550 California Street, Floor 14
San Francisco, CA 94104-1001
Telephone:    (415) 788-1900
Facsimile:    (415) 393-8087

Attorneys for Plaintiff
**SHERIFF CHRISTINA CORPUS**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERIFF CHRISTINA CORPUS,<br><br>            Plaintiff,<br><br>    v.<br><br>DAVID CANEPA, President and Member of the San Mateo County Board of Supervisors, NOELIA CORZO, Vice-President and Member of the San Mateo County Board of Supervisors, JACKIE SPEIER, Member of the San Mateo County Board of Supervisors, RAY MUELLER, Member of the San Mateo County Board of Supervisors, and LISA GAUTHIER, Member of the San Mateo County Board of Supervisors, and DOES 1-10,<br><br>            Defendants. | Case No.:<br><br>***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |

***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1.   Plaintiff Christina Corpus, Sheriff of San Mateo County, respectfully requests, pursuant

---

*EX PARTE APPLICATION* FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

to Fed. R. Civ. P. 65 and Civil L.R. 7-10 and 65-1, that the Court issue a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. This Application relies on the arguments set forth below, the accompanying Declarations of Christina Corpus and W.S. Wilson Leung in Support of TRO, and, pursuant to Fed. R. Civ. 10(c), Sheriff Corpus's previous Motion for Preliminary Injunction and Memorandum of Law (ECF 23) ("Motion for Preliminary Injunction") and its supporting Declaration of W.S. Wilson Leung and Exhibits thereto (ECF 24), filed on July 23, 2025, as well as to the documents referenced in these filings. As set forth in ¶ 8 of the Declaration of W.S. Wilson Leung in Support of TRO, by emails on October 6, 10, and 12, 2025, undersigned counsel provided notice to Defendants' counsel of the intent to seek emergency relief from the Court.

**NEED FOR TEMPORARY RESTRAINING ORDER**

2. Sheriff Corpus respectfully seeks a temporary restraining order to stay the execution of an upcoming vote by Defendants David Canepa, Noelia Corzo, Jackie Speier, Ray Mueller, and Lisa Gauthier, who are all members of the San Mateo County Board of Supervisors, to remove her as the duly elected Sheriff of San Mateo County via an unfair, unlawful, and defamatory process they created. Prior to her Removal Hearing, Sheriff Corpus sought a preliminary injunction from this Court seeking to prevent Defendants Corzo and Mueller from any further involvement in the effort to remove due to their bias, as well as to prevent all Defendants from continuing to seek her removal pursuant to the unconstitutional procedures they promulgated. *See* ECF 23 (Motion for Preliminary Injunction). After a hearing on August 7, 2025, the Court denied this motion on August 13, 2025. *See* ECF 45 (Order Denying Preliminary Injunction).

3. Since then, however, there have been significant developments in this matter that materially alter the balancing test for injunctive relief. Notably: (1) the Removal Hearing has been conducted and it and the resulting Advisory Opinion confirm the unlawfulness of the removal effort; (2) Defendants have signaled that they intend to remove Sheriff Corpus from office on Tuesday, October 14, 2025; and (3) Kim Pearson of San Mateo County's Human Resources Department has advised Sheriff Corpus that if she is removed from office on October 14, 2025, she will have to retire that day in order to preserve medical, dental, and vision coverage for her children and her, which forces Sheriff Corpus into a Hobson's choice of either losing benefits for her children and her or retiring to preserve these

benefits but -- given the unprecedented nature of her removal -- with uncertain impact on her ability further to challenge her removal from office.

4. Accordingly, Sheriff Corpus respectfully asks the Court for an injunction not to prevent Defendants from voting to remove her but rather to stay the execution of their vote to remove her and to keep her in office, maintaining the *status quo* until her legal claims can be considered more fully.

## ADDITIONAL DEVELOPMENTS SINCE DENIAL OF PRIOR MOTION FOR PRELIMINARY INJUNCTION

5. As set forth in Sheriff Corpus's prior Motion for Preliminary Injunction, in November 2024, based on the dubious allegations of an investigation conducted by retired judge LaDoris Cordell, Defendants formally began their effort to remove Sheriff Corpus from office. *See* ECF 25 at 10-11.[1] They passed an ordinance calling for a special election on March 4, 2025 that amended the County Charter by creating § 412.5, giving them new power to remove the elected sheriff for "cause." *See id*. at 11, 14. Following the special election, Defendants promulgated Removal Procedures governing how Sheriff Corpus would be removed. *See id*. at 15. These Removal Procedures, *inter alia*, provided that Sheriff Corpus was entitled to a Removal Hearing, after which, the presiding Hearing Officer would issue a non-binding advisory opinion for Defendants' consideration. *See id*. at 16-17. Defendants would then vote to decide whether to remove Sheriff Corpus, requiring four out of five of the Defendants to remove. *See id.* at 17-19. If they vote to remove, Defendants would then have to vote to approve, again by a four-fifths vote, a "Final Decision After Removal Hearing" to be served on Sheriff Corpus. *See id*. at 18. Sheriff Corpus's removal will be "effective immediately" and "final" upon these votes. *See id*.

6. The Removal Hearing for Sheriff Corpus began on August 19 and ended on August 29, 2025. Retired Santa Clara County Judge James Emerson presided as the Hearing Officer. Judge Emerson issued his Advisory Opinion on October 6, 2025, finding by a preponderance of the evidence that there was cause to remove Sheriff Corpus because: (1) she and Victor Aenlle, her former Chief of Staff/Director of Administration, had a close personal relationship that constituted a conflict of interest; (2) she authorized the investigation and arrest of Deputy Carlos Tapia in retaliation for his position as

---

[1] Page citations to documents previously filed via ECF are to the ECF numbers in the upper right hand corner of the documents.

president of the deputy sheriff's union; and (3) she retaliated against former Captain Brian Philip when she transferred him from managing the Professional Standards Bureau ("PSB") to managing the Corrections Division. *See* Advisory Opinion (attached to Declaration of W.S. Wilson Leung in Support of TRO ("Leung TRO Dec.") as Exhibit 1) at 9; 19; 30-31. Judge Emerson rejected the remaining fifteen allegations against Sheriff Corpus, finding they did not meet even the low preponderance of evidence standard. *See id*. at 23-24 (Acosta allegations); 26-27 (Moynahan allegations); 33-34 (Sebring allegations); 34 (Albin allegation); 36-37 (Chan allegations); 41 (mismanagement of PSB allegations).

7.    During the afternoon of Friday, October 10, 2025, Defendants publicly noticed on their website a special Board meeting for 9 am, Tuesday, October 14, 2025 (Monday, October 13, 2025 being a holiday in San Mateo County), at which they will vote on Sheriff Corpus's removal. *See* October 14, 2025 Agenda (attached to Leung TRO Dec. as Exhibit 2).

8.    Along with the Agenda for this special meeting, Defendants also posted online several documents indicating they have already decided to remove Sheriff Corpus from office. One is a five-page "Resolution Pursuant to Section 412.5" (attached to Leung TRO Dec. as Exhibit 3) outlining the history of the removal effort and proclaiming Sheriff Corpus removed:

> WHEREAS, based on a review of the Advisory Opinion and the Administrative Record, the Board accepts the Hearing Officer's finding that there was and is cause, as defined by Section 412.5 of the Charter, to remove Sheriff Corpus from office.
>
> NOW, THEREFORE, IT IS HEREBY DETERMINED AND ORDERED that Sheriff Corpus is removed from office for cause.

*Id*. at 4-5.

9.    In addition to the Resolution Pursuant to Section 412.5, a letter titled "Letter of County Attorney" addressed to Sheriff Corpus was also posted, stating:

> I write at the direction of the San Mateo County Board of Supervisors and pursuant to the attached Resolution No. __, and the attachments thereto (collectively, the "Resolution").
>
> This letter and the Resolution collectively constitute the Final Decision After Removal Hearing under Section IV(2)(C) of the Removal Procedures Approved by the Board of Supervisors.
>
> As the Resolution, which is incorporated by reference, indicates, the Board of Supervisors, at its meeting on October 14, 2025, voted to remove you from office by at least a four-fifths vote and adopted, as its own, the rationale of the hearing officer set forth in his Advisory Opinion dated October 6, 2025 in finding cause to remove you.

> As the Resolution also indicates, the Board of Supervisors, at its meeting on October 14, 2025, reviewed and approved the Final Decision After Removal Hearing, making your removal from office final and effective immediately.

(attached to Leung TRO Dec. as Exhibit 4).

10. Prior to being elected Sheriff in June 2022, Sheriff Corpus had served as an employee of the Sherriff's Office in San Mateo County for more than two decades, rising to the rank of Captain. *See* Declaration of Christina Corpus in Support of TRO ("Corpus TRO Dec.") ¶ 1. Following issuance of the Advisory Opinion, in light of the unprecedented nature of her potential removal from office, Sheriff Corpus sought guidance from San Mateo County regarding how removal would affect her benefits, which accrued during tenure as a peace officer and as the elected Sheriff, and which she estimated were worth roughly $500,000. *See id*. ¶¶ 7, 8, 9, 10. Medical coverage was particularly important to Sheriff Corpus, given that she is the single parent of two children, one of whom is severely autistic. *See id*. ¶ 3. County Counsel John Nibbelin directed Sheriff Corpus to Kim Pearson of County Human Resources. *See id*. ¶ 7.

11. On October 10, 2025, Sheriff Corpus spoke with Ms. Pearson on the telephone, who advised her that if she is removed from office on October 14, 2025, she would be entitled to 13 years of 100% medical, dental, and vision insurance for her children and her, but only if she filed for retirement by October 31, 2025. *See id*. ¶¶ 8, 9. Sheriff Corpus sought confirmation and clarification of this conversation in an email later that day. In a response, Ms. Pearson explained that, in the event of removal from office on October 14, 2025, in order to qualify for the 13 years of 100% medical, dental, and vision insurance, Sheriff Corpus must file her retirement paperwork *on that same day*. *See id*. ¶ 9 and Exhibit A thereto (Oct. 10, 2025 email exchange with Ms. Pearson). Ms. Pearson explained that the October 31, 2025 date she referenced during the prior call is the last date of active coverage absent Sheriff Corpus's retirement. *See id*. Prior to this communication with Ms. Pearson, Sheriff Corpus had no intention or desire to retire in October 2025. *See id*. ¶ 11. Indeed, in addition to and independent of her elected role as Sheriff of San Mateo, Sheriff Corpus also remains a peace officer certified by the California Commission on Peace Officer Standards and Training. *See id*. ¶ 1. She also did not resign as a San Mateo deputy sheriff when she was elected. *See id*.

//

## DISCUSSION

12. The requirements for a TRO are the same as those for a preliminary injunction: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Blain* v. *California Dept. of Transportation*, 616 F. Supp.3d 952, 956 (N.D. Cal. 2022).

13. Sheriff Corpus respectfully adopts and reiterates the claims made in her prior Motion for Preliminary Injunction and offers the following additional facts and arguments in support of them.

### A. Likelihood of Success on the Merits

14. Sheriff Corpus respectfully submits that she is likely to succeed on the merits. As set forth in her prior Motion for Preliminary Injunction, she has a liberty interest protected by due process against Defendants' defamatory removal effort. *See* ECF 23 (Motion for Preliminary Injunction) at 18-22 (citing, *inter alia*, *Velez* v. *Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (holding that elected school board members challenging her removal for cause had a liberty interest actionable under §1983 for procedural due process)). In addition to this liberty interest, she also has a property interest in her medical, vision, and dental benefits, accrued from her tenure as both a peace officer and an elected official, for her children and her that are also protected by due process. *See Ostlund* v. *Bobb*, 825 F.2d 1371, 1374 (9th Cir. 1987) (recognizing that a police officer's property interest in disability retirement benefits "entitled the officer to the protections afforded by procedural due process"); *Hipsher* v. *Los Angeles County Employees Retirement Assn.*, 58 Cal. App.5th 671, 700 (2020) (holding that plaintiff/appellant's "retirement benefits are a property interest encompassed within [federal] Fourteenth Amendment protection" and subject to due process protection); *see also San Bernardino Physicians' Serv. Med. Group, Inc*. v. *County of San Bernardino*, 825 F.2d 1404, 1408 (9th Cir. 1987) ("Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'") (*quoting Board of Regents* v. *Roth*, 408 U.S. 564, 577 (1972)).

15. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). While there may be variations in the process that may be due,

"[w]hat the Constitution does require is an opportunity granted at a meaningful time and in a meaningful manner for *a hearing appropriate to the nature of the case*." *Boddie* v. *Connecticut*, 401 U.S. 371, 378 (1971) (emphasis added). In addition, "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McClure,* 456 U.S. 188, 195 (1982). "[A] biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal." *Clements* v. *Airport Auth. of Wahoe Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995) (internal quotation marks and citations omitted).

16. In her prior Motion for Preliminary Injunction, Sheriff Corpus argued that Defendants have violated her right to due process because: (1) Defendants Corzo and Mueller are unconstitutionally biased, having declared their intention to remove her since at least November 2024, and their past participation in the removal effort have already violated her right to an unbiased tribunal, while their continued participation will result in further violations, s*ee* ECF 23 (Motion for Preliminary Injunction) at 20; (2) the allegations contained in Defendants' Notice of Intent to Remove are unconstitutionally vague, *see id*. at 30; (3) the Removal Procedures promulgated by Defendants improperly shift the burden of proof to her by requiring her, in the first instance, to identify the facts and claims for the Removal Hearing, *see id*.; (4) the Removal Procedures allow Defendants to handpick the Hearing Officer, *see id*.; (5) the Removal Procedures provide no meaningful limitation on Defendants' authority to remove her because they are empowered to remove her regardless of the outcome of the Pre-Removal Conference and Removal Hearing, *see id.*; and (6) the Removal Procedures simply do not provide sufficient process "appropriate" for the very serious issue of nullifying the will of voters and removing an elected official (*e.g*., applying the lowest preponderance of evidence standard, prohibiting application of the rules of evidence), especially in contrast to the removal process via the Civil Grand Jury under California law, which provides the removal subject with all the procedural safeguards afforded in a criminal trial (*e.g*., trial by jury, burden of proof beyond a reasonable doubt, applicability of the rules of evidence), *see id.* at 31.

17. Judge Emerson's October 6, 2025 Advisory Opinion confirms that the Removal Hearing was merely performative and provided no "opportunity to be heard . . . in a meaningful manner." He explicitly stated that his role as the Hearing Officer was limited merely to inventorying the information

presented to him to determine "cause," as Defendants idiosyncratically defined the term in §412.5, rather than to assign significance to the information or to determine whether the information constituted "good cause" or "just cause" justifying removal, as understood under state law.

18.     Judge Emerson initially "grapple[d]" with "what standard to apply in order to comply with the [Removal] Procedure's directive to issue an advisory opinion as to whether the County had cause to remove the Sheriff." Leung TRO Dec. Ex. 1 (Advisory Opinion) at 3-4. He specifically considered *Cotran* v. *Rollins Hudig Hall Internat. Inc.*, 17 Cal.4th 93 (1998), which held that, in the employment context, "good cause" for termination required a finding not just that misconduct occurred, but that any termination was fair, *i.e.*,

> fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond.

Leung TRO Dec. Ex. 1 (Advisory Opinion) at 3-4 (quoting *Cotran*) (internal quotation marks omitted).

19.     Tellingly, Judge Emerson explicitly rejected *Cotran* and concluded that determining "cause" for his Advisory Opinion was much more limited than what *Cotran* required:

> This advisory opinion's limited function and the undersigned Hearing Officer's goal is to sit as a trier of fact and apply an evidentiary standard to identify whether the alleged misconduct occurred, *i.e.*, whether "cause," (not good cause or just cause) as defined by Section 412.5 existed, (by making factual findings in support or against) and to give appellant Corpus a chance to respond. *Adequate notice; investigation; and a fair, good faith, and honestly reasoned conclusion is for the County/Board to provide. The sufficiency, adequacy, and/or propriety of notice, investigation, and the County/Board's final decision is beyond the scope of the undersigned Hearing Officer's purview.*

*Id.* at 4-5.

20.     Thus, as Judge Emerson himself explicitly admits, the Removal Hearing was merely a show. It was not intended to be fair and failed to provide a meaningful opportunity for Sheriff Corpus to be heard, let alone a meaningful opportunity to be heard by anyone with real authority over the decision to remove her. Rather, the Removal Hearing was merely a fig leaf to hide Defendants' arbitrary and unchecked authority to remove Sheriff Corpus from office. Throughout this entire removal ordeal, Sheriff Corpus has not been afforded a meaningful opportunity to be heard, in violation of due process.

//

**B.     Irreparable Harm**

21.     Defendants' effort to remove Sheriff Corpus violates her constitutional rights to procedural and substantive due process, as well as her protections against *ex post facto* punishment and bills of attainder. Because of their bias, each and every decision relating to removal that Defendants Corzo and Mueller have taken have violated Sheriff Corpus's constitutional right to an unbiased tribunal. Likewise, having to undergo Defendants' unlawful removal process also violates her constitutional rights to due process, as well as the prohibitions against *ex post facto* punishment and bills of attainder. Violations of these constitutional rights are inherently irreparable. *See Hernandez* v. *Sessions*, 872 F.3d 976-994-95 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (*quoting Melendres* v. *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), and citing *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976)); *see Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury.") (emphasis added); *see also Giglio* v. *Shipyard Supply Acquisition Corp.*, 2022 WL 4106454, at *3 (E.D. La. Sept. 8, 2022) ("Plaintiff alleges that he need not show irreparable harm in this case to be entitled to a preliminary injunction, pointing out that when a constitutional right is at issue or the conduct sought to be restrained is illegal, a plaintiff need not show irreparable harm to obtain injunctive relief. Given that the noncompete clause which Shipyard Supply seeks to enforce against Giglio is facially in violation of Louisiana law, and thus unlawful, the assertion that he need not show irreparable harm appears to be correct.") (citation omitted).

22.     In addition, Sheriff Corpus has been advised by Ms. Pearson of San Mateo County Human Resources that, in the event she is removed from office, she will need to file for retirement on the same day in order to ensure that she qualifies for medical, vision, and dental instance coverage for her children and her. It is uncertain, however, how filing for retirement will impact her ability to continue to challenge the legality of her removal. The County, thus far, has declined to apply California employment law protections to her in seeking her removal, and the removal process has been inconsistent with the process for terminating a peace officer. *See* Corpus TRO Dec. ¶ 2 (outlining termination procedure for peace officers, pursuant to which termination is decided by neutral officers, unlike the present removal effort). In addition, Sheriff Corpus is facing not just being removed from elected office, but also effectively

being forced into retirement -- or being constructively terminated -- as a peace officer in order to preserve the insurance benefits on which her children and she rely. *See id*. ¶¶ 8, 9, 10, 11 ("Prior to my communications with Ms. Pearson, I had no intention or desire to retire in October of 2025."). Thus, Sheriff Corpus is facing irreparable harm in being forced to choose between either (1) protecting the insurance coverage she needs for her children and her or (2) continuing her career as a peace officer and continuing her legal challenges to the unprecedented and fundamentally unfair removal process to which she has been subjected.

23. Sheriff Corpus also reiterates the irreparable harm to her reputation, her safety, and the tranquility in her home set forth in her prior Motion for Preliminary Injunction. *See* ECF 23 at 35-36. In addition, her elected term ends on December 31, 2028. Thus, if she is removed, the time she will be out of office not exercising the authority granted by voters to pursue the reform policies they supported cannot be addressed retroactively via damages. This harm too is irreparable.

C.   **Balance of Equities and Public Interest**

24. The balance of equities and the public interest inquiries merge in cases involving a governmental party. *See*, *e.g.*, *Drakes Bay Oyster Co.* v. *Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). This inquiry favors Sheriff Corpus. The requested stay would merely preserve the *status quo* by keeping Sheriff Corpus in office. In contrast, Defendants have not articulated any harm arising from preserving the *status quo*. Even accepting them at face value, the three "causes" for removal set forth in Judge Emerson's Advisory Opinion have been addressed: Mr. Aenlle was terminated from the Sheriff's Office in November 2024, Deputy Tapia remains employed and uncharged (albeit subject to an administrative investigation), and Captain Philip voluntarily resigned rather than accept his reassignment overseeing the jails (which did not alter his rank, compensation, or benefits). *See* Corpus TRO Dec. ¶¶ 4, 5, 6. There is no threat to "public safety" nor are Sheriff's Office employees in "actual fear," as Defendants Corzo and Mueller declared in 2024. *See* ECF 23 (Motion for Preliminary Injunction) at 12-13 (setting forth Corzo and Mueller statements evincing their bias). Indeed, even applying the unconstitutionally low ponderance of evidence standard, Judge Emerson specifically rejected the all the other allegations of retaliation and mismanagement for which Defendants sought to remove Sheriff Corpus. *See* Leung TRO Dec. Ex. 1 (Advisory Opinion) at 23-24 (Acosta allegations); 26-27 (Moynahan allegations); 33-34

(Sebring allegations); 34 (Albin allegation); 36-37 (Chan allegations); 41 (mismanagement of PSB allegations).

25. Moreover, in litigation before Judge Shapirshteyn in San Mateo County Court, Defendants "stipulated" to not filling the position of sheriff for two weeks after removing Sheriff Corpus. *See* October 2, 2025 Order (attached to Leung TRO Dec. as Exhibit 5) at 2. This stipulation, of course, does not mitigate harm to Sheriff Corpus because the harm she suffers is removal from office. What it does establish, however, is that Defendants will not be burdened by a continuation of the *status quo*, because they intend not to fill the position of sheriff for two weeks anyway.

26. The rush to remove Sheriff Corpus is not only unlawful, but bizarre, given that crime in San Mateo County is down roughly 14% since she took office and that she has effectively addressed the staffing and recruiting problems she inherited when she took office. *See* Corpus TRO Dec. ¶ 12. Moreover, Sheriff Corpus's reforms are improving community relations, to which community advocate "RJ" Jennings testified when explaining at the Removal Hearing his support for Sheriff Corpus: "my experience growing up is very different, and so mine was to run from [the police] and I'm teaching my son to walk to [the police]. And that can't happen without this kind of change." Removal Hearing Transcript at 2511-12 (attached to Leung TRO Dec. as Exhibit 6) (citation to original page numbers).

//
//
//
//
//
//
//
//
//
//
//
//

**RELIEF SOUGHT**

27. Sheriff Corpus therefore respectfully requests that the Court grant this *ex parte* application by issuing:

    1. A preliminary injunction staying the execution of any vote by Defendants DAVID CANPEA, NOELIA CORZO, JACKIE SPEIER, RAY MUELLER, and LISA GAUTHIER to remove Sheriff Corpus and keeping Sheriff Corpus in office pending a further order of this Court or,

    2. If Defendants have already removed Sheriff Corpus from office, a preliminary injunction reinstating Sheriff Corpus as Sheriff of San Mateo County until a further of this Court; and

    3. Grant any other further relief that the Court deems fit and proper.

DATED: October 12, 2025　　　　　　　MURPHY, PEARSON, BRADLEY & FEENEY

By: /s/ *W.S. Wilson Leung*
    W.S. Wilson Leung
    Thomas P. Mazzucco
    James A. Lassart
    Christopher R. Ulrich
    Matthew J. Frauenfeld
    Mariah S. Cooks

MAYER BROWN
Tom Perez

Attorneys for SHERIFF CHRISTINA CORPUS

*EX PARTE APPLICATION* FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE